**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. 22-10261 (TMH) |
| | **Hearing Date: April 18, 2023 at 10:00 a.m. (ET)** |
| Debtor in a Foreign Proceeding. | **Objection Deadline: April 10, 2023 at 4:00 p.m. (ET)** |

**MOTION OF THE FOREIGN REPRESENTATIVES FOR ENTRY**
**OF AN ORDER ENFORCING THE AUTOMATIC STAY AND FOR DAMAGES**

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Kroll Bermuda Ltd. (the "Foreign Representatives"), in their capacity as the foreign representatives of Point Investments, Ltd. (the "Debtor") in respect of the winding up proceeding pending before the Supreme Court of Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300 (the "Bermuda Proceeding"), by and through the undersigned counsel, hereby move, pursuant to sections 362 and 1520 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) enforcing the automatic stay against FTI GP I, LLC (the "General Partner"), and (ii) ordering the General Partner to pay the Foreign Representatives' fees and costs (including attorneys' fees) in connection with this Motion, the Discovery Motion (as defined below), and the Adversary Proceeding (as defined below) in light of the General Partner's willful violation of the automatic stay. In support of this Motion, the Foreign Representatives respectfully state as follows:

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is c/o Kroll Bermuda, The Vallis Building, 4th Floor, 58 Par-La-Ville Road, Hamilton, HM 11, Bermuda.

## PRELIMINARY STATEMENT

1.     The Foreign Representatives bring this Motion to enforce the protections of the automatic stay and prevent a potential creditor from circumventing the Debtor's orderly liquidation in Bermuda to the detriment of the Debtor's other stakeholders. The General Partner is the general partner of Falcata Tech Investment Fund I, L.P. ("Falcata"), an investment fund for which the Debtor is the sole limited partner. The General Partner recently commenced an adversary proceeding against the Debtor seeking monetary damages and declaratory relief without first seeking relief from the automatic stay or any determination that the stay was not applicable. *See FTI GPI I, LLC v. Point Investments, Ltd.*, Adv. Proc. No. 23-50122 (TMH) (Bankr. D. Del.) (the "Adversary Proceeding"). The General Partner alleges that the Debtor is in breach of Falcata's LPA and MTA (each as defined herein) based on events that occurred in July 2020—well before the commencement of the Bermuda Proceeding or this Chapter 15 case. As such, the Adversary Proceeding falls squarely within the scope of proceedings that are expressly barred by section 362(a)(1) of the Bankruptcy Code.

2.     In Chapter 15 cases, the automatic stay serves to channel claims against the debtor to the debtor's foreign main proceeding—just as the automatic stay in a Chapter 11 case serves to channel claims against the debtor to the Chapter 11 case. Unlike in a Chapter 11 case, there is no bankruptcy estate in a Chapter 15 case and no process whereby creditors file claims and receive a distribution—that is supposed to occur in the foreign main proceeding. In clear violation of principles of cross-border insolvency and Chapter 15, the Adversary Proceeding is an attempt to circumvent the Debtor's foreign main proceeding (the Bermuda Proceeding)—a liquidation process which will afford the General Partner the opportunity to lodge any potential claims against the Debtor and receive a distribution should such claims be adjudicated in its favor. Indeed, as a matter of Bermuda law, the General Partner is required to seek the Bermuda Court's permission

before commencing any proceeding against the Debtor, such as the Adversary Proceeding. The General Partner failed to do so and thus is also in violation of foreign law.

3.      Despite this brazen violation, the General Partner has previously sought to (improperly) invoke Bermuda law when doing so would provide it with a litigation advantage. In particular, the General Partner has refused to produce documents to the Foreign Representatives in response to certain discovery demands, arguing that the Foreign Representatives are limited in what they can seek in discovery from the General Partner as a matter of Bermuda law. The General Partner is wrong that Bermuda law restricts the Foreign Representatives' ability to seek documents in this Chapter 15 case, as shown in the *Motion of the Foreign Representative for Entry of an Order to Conduct Discovery Pursuant to 11 U.S.C. § 1521, Fed. R. Bankr. P. 2004, and Local Rule 2004-1* (the "Discovery Motion") filed contemporaneously herewith. While the Court need not decide that issue to determine this Motion, the General Partner's litigation tactics, including its selective invocation of Bermuda law and attempt to evade the Foreign Representatives' valid discovery efforts by commencing the Adversary Proceeding, further support enforcing the automatic stay.

4.      In an attempt to consensually resolve these issues, the Foreign Representatives notified the General Partner in writing of its violation of the automatic stay and Bermuda law on March 21, 2023, and demanded that the Adversary Proceeding be withdrawn by March 23, 2023. The Foreign Representatives also advised the General Partner that it would have the opportunity to assert a claim in connection with the Debtor's claim adjudication process that will be administered under Bermuda law. In response, the General Partner hastily filed a motion on March 23, 2023 [D.I. 47] (the "Relief from Stay Motion")[2] belatedly seeking a determination that the

---

[2] In addition to bringing this Motion, the Foreign Representatives will be filing an objection to the Relief from Stay Motion.

automatic stay does not apply or, in the alternative, modification of the automatic stay to allow the adversary proceeding to continue. By filing the Relief from Stay Motion, the General Partner has effectively conceded that it should have sought this Court's permission *before* commencing the Adversary Proceeding. As of the date hereof, the General Partner has not withdrawn the Adversary Proceeding.

5.       For all these reasons, and those set forth below, the Court should declare the Adversary Proceeding void *ab initio* and in violation of the automatic stay, consistent with the long-standing practice of courts in the United States to decline adjudicating creditor claims that are appropriately filed and litigated in a foreign bankruptcy proceeding.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2).

7.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.       Pursuant to Local Rule 9013-1(f), the Foreign Representatives confirm their consent to the entry of a final order or judgment by the Court with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

9.       The statutory predicates for the relief requested herein are sections 362 and 1520 of the Bankruptcy Code.

## BACKGROUND

### I.    General Background

10.    The Debtor is a private investment fund incorporated in Bermuda. On September 16, 2020, a petition with the Bermuda Court was filed seeking a winding up of the Debtor. The Foreign Representatives were appointed as joint provisional liquidators by the Bermuda Court on October 29, 2021 (the "Appointment Order"). On February 18, 2022, the Bermuda Court granted an amended petition and issued an order providing for the Debtor to "be wound up under the provisions of the Companies Act 1981 (Act)" (the "Bermuda Companies Act") and granted related relief (the "Winding Up Order").[3] Pursuant to the terms of the Appointment Order and the Winding Up Order, the Foreign Representatives were vested with certain powers, including investigating the affairs of the Debtor and obtaining information related to the Debtor's assets.

11.    On March 29, 2022, the Foreign Representatives, on behalf of the Debtor, filed a voluntary petition for relief under Chapter 15 of the Bankruptcy Code (the "Chapter 15 Case"). A detailed description of the facts and circumstances surrounding the Chapter 15 Case is set forth in the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* [D.I. 3] (the "Verified Petition"), the *Declaration of Lilla Zuill Pursuant to 28 U.S.C. § 1746* [D.I. 4] (the "Zuill Declaration"), and the *Declaration of Adam M. Lavine Pursuant to 28 U.S.C. § 1746* [D.I. 5] (the "Lavine Declaration"). Further support for this Motion is set forth in the *Declaration of Andrew Childe in Support of (I) Motion of the Foreign Representatives for Entry of an Order to Conduct Discovery Pursuant to 11 U.S.C. § 1521(a)(4), Fed. R. Bankr. P. 2004, and Local Rule 2004-1 and (II) Motion to Enforce*

---

[3] A copy of the Winding Up Order is attached as **Exhibit 1** to the Verified Petition.

*the Automatic Stay and for Damages* (the "<u>Childe Declaration</u>") filed contemporaneously herewith.

12.     On April 22, 2022, the Court entered the *Order Granting Petition For (I) Recognition Of Foreign Main Proceeding, (II) Recognition Of Foreign Representatives, And (III) Related Relief Under Chapter 15* [D.I. 34] (the "<u>Recognition Order</u>"). Among other things, the Recognition Order recognized the Bermuda Proceeding as a foreign main proceeding and recognized the Foreign Representatives as authorized to act on behalf of the Debtor in the Chapter 15 Case and in the United States. The Recognition Order also provides: "All relief and protection afforded to foreign main proceedings under section 1520 of the Bankruptcy Code is hereby granted to the Bermuda Proceeding, the Debtor, the Debtor's property located within the United States, and the foreign representatives, as applicable." Recognition Order, ¶ 5.

13.     On August 15, 2022, the Bermuda Court appointed the Foreign Representatives as joint permanent liquidators of the Debtor. *See Status Report Regarding Appointment of Foreign Representatives as Permanent Liquidators of the Debtor* [D.I. 41].

14.     Further background information regarding the Debtor's affairs, the Bermuda Proceeding, and the basis for this Chapter 15 Case is set forth in the Verified Petition, the Zuill Declaration, and the Lavine Declaration.

## II.     Falcata Background

15.     Falcata is an exempted limited partnership organized under the laws of the Cayman Islands. *See* Adv. Comp. Ex. 1 (LPA) (Recitals). Falcata was created to acquire, hold, and dispose of securities in the emerging technologies industry and commenced operations after execution of that certain Amended and Restated Exempted Limited Partnership Agreement dated April 20, 2018 (the "<u>LPA</u>"), which governs the affairs of Falcata. *See id*. at Section 1.3. Under the LPA, the General Partner serves as the general partner of Falcata and its affiliate, Falcata Capital LLC

(the "<u>Manager</u>", and together with Falcata and the General Partner, the "<u>Falcata Parties</u>"), serves as manager of Falcata. *See id*. (Definitions).

16.     The terms of the partnership were amended pursuant to that certain Master Transaction Agreement dated July 1, 2019 (the "<u>MTA</u>"). According to the MTA, the MTA was executed because "[Falcata] and the [Debtor] desire[d] for [Falcata] to sell all of its assets and for [Falcata] to liquidate as soon as commercially practicable." Adv. Comp. Ex. 2 (MTA) Recital G.

17.     As set forth in greater detail in the Discovery Motion, the Foreign Representatives sought discovery from the Falcata Parties pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and section 1521(a)(4) of the Bankruptcy Code. The Falcata Parties resisted this discovery and commenced the Adversary Proceeding against the Debtor by filing a Complaint with this Court [Adv. Pr. D.I. 1] (the "<u>Adversary Complaint</u>"). The Adversary Complaint alleges that the Debtor breached its obligations under the LPA and MTA by allegedly failing to make a capital contribution payment requested by the Manager on June 16, 2020 (the "<u>July 2020 Capital Contribution</u>"). Adv. Compl. ¶¶ 36-41, 50-52, 59-61. The Adversary Complaint also seeks declaratory relief that the Debtor is a "Defaulting Partner" under the LPA as a result of the alleged failure to make the July 2020 Capital Contribution. *Id*. at ¶¶ 62-70.

18.     The General Partner did not seek this Court's permission to lift the automatic stay prior to filing the Adversary Complaint.

19.     On March 21, 2023, counsel to the Foreign Representatives sent a letter to the General Partner (the "<u>Stay Violation Letter</u>"), attached hereto as **Exhibit B**, warning that the commencement of the Adversary Proceeding constituted a willful violation of the automatic stay pursuant to sections 1520 and 362(a) of the Bankruptcy Code and demanding that the Adversary Complaint be withdrawn no later than March 23, 2023.

20.     On March 23, 2023, the General Partner filed the Relief from Stay Motion seeking a determination that the automatic stay does not apply to the Adversary Proceeding or alternatively, modification of the automatic stay to permit the Adversary Proceeding to continue.

21.     As of the date hereof, the General Partner has not withdrawn the Adversary Complaint.

## III.     The Claims Process in the Bermuda Proceeding

22.     As detailed above, the Bermuda Court entered the Winding Up Order on February 18, 2022. Pursuant to section 167(4) of the Bermuda Companies Act, upon entry of the Winding Up Order an automatic stay of actions and proceedings against the Debtor was put into effect, similar to the automatic stay under section 362 of the Bankruptcy Code. *See* Zuill Decl. ¶ 16.

23.     On June 15, 2022, the Foreign Representatives noticed the first meeting of creditors and the first meeting of contributories in accordance with their statutory obligations under the Bermuda Companies Act. *See* Childe Decl. ¶ 5; *see also* Foreign Representatives' Status Report [D.I. 37]; Zuill Decl. ¶¶ 17, 21 (discussing the first meeting of creditors and contributories). As a potential creditor, the Foreign Representatives provided notice to Falcata, though its Cayman Islands counsel, of the first meeting of creditors. Childe Decl. ¶ 6. Falcata elected not to appear at the meeting. *Id*. Falcata likewise failed to submit a proof of debt for voting purposes in advance of that meeting. *Id*.

24.     In accordance with their obligations, the Foreign Representatives intend to give notice to potential creditors, including Falcata, requesting they file proofs of debt in the Bermuda Proceeding. *Id*. at ¶ 7. Should it wish to do so, Falcata will have the opportunity to assert any claim(s) against the Debtor in connection with the Debtor's claims adjudication process to be administered pursuant to Bermuda law. *Id*. The Foreign Representatives also intend to notice the deadlines for the claims adjudication process in this Chapter 15 Case. *Id*.

## RELIEF REQUESTED

25.     By this Motion, the Foreign Representatives respectfully request entry of the Proposed Order (i) declaring the Adversary Proceeding void *ab initio*, (ii) ordering the General Partner to pay the Foreign Representatives' fees and costs (including attorneys' and other professionals' fees) in connection with this Motion, the Discovery Motion, and the Adversary Proceeding, and (iii) granting related relief.

## BASIS FOR RELIEF

### I.     The Adversary Proceeding Violates the Automatic Stay

#### A.     The Adversary Proceeding Violates Sections 1520 and 362(a)(1) of the Bankruptcy Code

26.     Among the core purposes of Chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor" as well as the "protection and maximization of the value of the [foreign] debtor's assets." 11 U.S.C. § 1501(a)(3), (4); *see also In re ABC Learning Centres Ltd.*, 728 F.3d 301, 305 (3d Cir. 2013) (quoting H.R. Rep. No. 109–31(1) at 105)); *accord In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *3 (Bankr. D. Del. Nov. 20, 2012).

27.     To that end, Chapter 15 contains numerous provisions aimed at the protection of a foreign debtor and its assets. In particular, section 1520(a)(1) of the Bankruptcy Code provides that, upon recognition of a proceeding as a foreign main proceeding, the automatic stay of section 362 of the Bankruptcy Code applies "with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1); *see also In re Irish Bank Resol. Corp. Ltd.*, Case No. 13-12159 (CSS), 2014 WL 9953792, at *18 (Bankr. D. Del. Apr. 30, 2014), *aff'd*, 538 B.R. 692 (D. Del. 2015) ("[T]riggering the automatic stay upon filing of recognition is one of the fundamental purposes of recognition."); *In re ABC Learning*

*Centres Ltd.,* 445 B.R. 318, 336 (Bankr. D. Del. 2010), *on reconsideration in part* (Jan. 21, 2011)

("Recognizing [proceedings] as foreign main proceedings triggers the automatic stay of 362."),

*subsequently aff'd*, 728 F.3d 301 (3d Cir. 2013); *In re JSC BTA Bank*, 434 B.R. 334, 343 (Bankr.

S.D.N.Y. 2010) (holding that "the stay arising in a Chapter 15 case upon recognition of a foreign

main proceeding applies to the debtor within the United States *for all purposes*") (emphasis

added).[4]

28.     The automatic stay provided under section 362 is "one of the most fundamental

protections granted to the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Products Co.*

(*In re Rexene Products Co.*), 141 B.R. 574, 576 (Bankr. D. Del.1992) (citing *Midlantic Nat'l Bank*

*v. New Jersey Dept. Of Envtl. Prot.*, 474 U.S. 494, 503 (1986) *reh'g denied* 475 U.S. 1090. It

serves several purposes, including providing "a debtor a breathing spell from creditors by stopping

all collection efforts and all foreclosure actions" as well as protecting creditors "by preventing

particular creditors from acting unilaterally to obtain payment from a debtor to the detriment of

other creditors." *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997) (citing

*Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)).

29.     Relevant here, section 362(a)(1) of the Bankruptcy Code operates as a stay of "the

commencement or continuation . . . of a judicial, administrative, or other action or proceeding

---

[4] In the Relief from Stay Motion, the General Partner adopts a tortured interpretation of section 1520, effectively arguing that section 362 only applies to actions against property of the debtor located in the United States but not actions against the debtor that concern foreign property. This argument should be rejected based on a plain reading of section 1520, which expressly provides that the automatic stay under section 362 applies "with respect to *the debtor and* the property of the debtor that is located in the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1) (emphasis added); *see also In re JSC BTA Bank*, 434 B.R. 334, 343 (Bankr. S.D.N.Y. 2010) ("the best reading of section 1520(a)(1) … is that the stay arising in a chapter 15 case upon recognition of a foreign main proceeding *applies to the debtor within the United States for all purposes* and may extend to the debtor as to proceedings in other jurisdictions for purposes of protecting property of the debtor that is within the territorial jurisdiction of the United States") (emphasis added).

against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Applying section 362(a)(1), courts have found that the commencement of an adversary proceeding in a Chapter 15 case against a foreign representative or foreign debtor is subject to the automatic stay. *See In re Irish Bank Resol. Corp. Ltd.*, No. BR 13-12159-CSS, 2019 WL 4740249, at *8 (D. Del. Sept. 27, 2019) (affirming bankruptcy court's decision that automatic stay prohibited prospective adversary proceeding to remove foreign representatives); *In re Nortel Networks UK Ltd.*, 538 B.R. 699, 704 (Bankr. D. Del. 2015) (automatic stay prevented adversary proceeding asserting prepetition claims against chapter 15 debtors).[5]

30.     In fact, the United States Bankruptcy Court for the Western District of North Carolina recently held that the protections of the automatic stay made applicable under section 1520 of the Bankruptcy Code barred the filing of a class action adversary proceeding against a Chapter 15 debtor. *See In re Sibaham Ltd*., No. 19-31537, 2020 WL 2731870, at *1 (Bank. W.D.N.C. 2020) ("As a result [of section 1520], the commencement of any legal proceedings against [the UK debtor] within the territorial jurisdiction of the United States is barred"). The Court went on to state that "the application of the automatic stay to the Class Action Lawsuit is consistent with the intended purpose of the automatic stay, which not only provides the UK Debtor respite from creditors and their collection efforts but also protects creditors by preventing particular creditors from acting unilaterally to the detriment of other creditors." *Id*. at *2.

---

[5] In each of the cases cited, the party seeking to bring an adversary proceeding appropriately requested relief from the automatic stay *prior* to commencing any proceeding against the foreign debtor or foreign representative. Here, the General Partner brazenly decided to not request relief from the stay prior to filing the Adversary Proceeding as it knew discovery deadlines were impending and the Foreign Representatives intended to move to compel.

31.     Here, the Adversary Proceeding fits squarely within the type of proceedings that are subject to the automatic stay. Specifically, the General Partner seeks monetary damages and declaratory relief based on allegations that the Debtor breached its obligations under the LPA and MTA by failing to provide the July 2020 Capital Contribution. Given that these allegations relate to conduct that occurred prior to the commencement of the Bermuda Proceeding as well as this Chapter 15 Case, the Adversary Proceeding is barred by section 362(a)(1) of the Bankruptcy Code and should not be allowed to proceed. *See Nortel Networks UK Ltd.*, 538 B.R. at 703 ("It is equally clear that the automatic stay does, indeed, apply to the pre-Petition claims ...."). Staying the Adversary Proceeding is also consistent with the fundamental purposes of the automatic stay—to provide the Debtor with a breathing spell and to protect other stakeholders in Bermuda against unilateral action by a claimant.

32.     Accordingly, this Court should enforce the automatic stay in this Chapter 15 Case and declare the Adversary Proceeding void *ab initio*. *See Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992)*, opinion reinstated on reh'g* (Mar. 24, 1992) ("Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*.").

**B.      Principles of International Comity and Cross-Border Insolvency Law Reinforce the Applicability of the Automatic Stay to the Adversary Proceeding**

33.     Pursuant to section 167(4) of the Bermuda Companies Act, a statutory stay of actions and proceedings against the Debtor is currently in effect in Bermuda. *See* Zuill Decl. ¶ 16. By filing the Adversary Proceeding within the Debtor's Chapter 15 Case, the General Partner is: (i) violating Bermuda law to the detriment of the Debtor's other creditors; and (ii) effectively usurping the power of the Bermuda Court to adjudicate creditor claims.

34.     The Court should not permit the Adversary Proceeding to continue, as doing so would be inconsistent with the principles of comity that underlie the purposes of Chapter 15. *See* 11 U.S.C. § 1501 (listing as an objective of Chapter 15, "cooperation between courts of the United States . . . and the courts and other competent authorities of foreign countries involved in cross-border insolvency cases."); *see also In re Energy Coal S.P.A.*, 582 B.R. 619, 627 (Bankr. D. Del. 2018) ("Particularly in the bankruptcy context, American courts have long recognized the need to extend comity to foreign bankruptcy proceedings, because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited asset in a single proceeding…."); *In re Artimm, S.r.L.*, 335 B.R. 149, 161 (Bankr. C.D. Cal. 2005) ("Deference to foreign insolvency proceedings will often facilitate the distribution of the debtor's assets in an equitable, orderly, efficient, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion.").

35.     Indeed, citing principles of international comity, multiple courts have refused to adjudicate creditor claims in the United States against a foreign debtor that is the subject of a foreign bankruptcy proceeding. *See In re Energy Coal S.P.A.*, 582 B.R. 619, 629 (Bankr. D. Del. 2018) ("U.S. bankruptcy courts have not hesitated to require foreign creditors to file their claims and to litigate in our courts if they wish a distribution from a U.S. Debtor's estate. It is equally appropriate to expect U.S. creditors to file and litigate their claims in a foreign main bankruptcy case.") (quoting *In re Artimm, S.r.L.*, 335 B.R. at 165); *In re Marconi PLC,* 363 B.R. 361, 365 (S.D.N.Y. 2007) (former section 304 "does not permit the filing by domestic creditors of adversary proceedings to establish claims against a foreign bankrupt"); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly

held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.").

36.     More generally, courts in Chapter 15 cases routinely provide deference to foreign court and foreign proceedings, "so long as the foreign proceedings are procedurally fair and … do not contravene the laws or public policy of the United States." *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 114 (Bankr. S.D.N.Y. 2012) (citing *Altos Hornos*, 412 F.3d at 424); *see also Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) ("[W]e will afford comity to foreign bankruptcies only if those proceedings do not violate the laws or public policy of the United States and if the foreign court abides by fundamental standards of procedural fairness") (citations and quotations omitted).

37.     In determining whether the foreign proceedings are procedurally fair, bankruptcy courts have considered the following factors:

> (1) Whether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the rights to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to potential claimants; (5) whether there are provisions for creditors meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshalled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims.

*Id*. at 249.

38.     Here, there can be no question that the Bermuda Proceeding is anything but procedurally fair and having the claims asserted in the Adversary Proceeding adjudicated in the Bermuda Proceeding would not be manifestly contrary to public policy of the United States. To be sure:

a. The Foreign Representatives "are obliged to realize the assets of the company and apply them *pari passu* in satisfaction of the company's admitted debts. Where there is a surplus of assets, the assets must be distributed amongst the contributories in accordance with their rights and interests in the Company." Zuill Decl. ¶ 22.

b. The Foreign Representatives "are officers of the Bermuda Court and are subject to control and supervision of that court [and] are also fiduciaries and are required to be independent from the management of the company, as well as independent from the company's creditors and contributories." *Id*. ¶ 18.

c. The Foreign Representatives "will call for proofs of debt and any person claiming to be a creditor (including future and contingent creditors) may prove. The liquidators must notify all known creditors and must advertise notice of a date by which debts must be lodged…. In the event a proof of debt is rejected by the liquidators, the creditor may appeal to the Bermuda Court." *Id*. ¶ 22.

39.    Accordingly, declaring the Adversary Proceeding a violation of the automatic stay is supported by well-established principles of comity and cross-border insolvency law.

## II. The General Partner's Willful Violation of the Automatic Stay Necessitates an Award of Damages Equal to the Foreign Representatives' Fees and Costs

40.    Section 362(k) of the Bankruptcy Code provides, in relevant part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1);[6] *see also Duby v. United States (In re Duby)*, 451 B.R. 664 (B.A.P. 1st Cir. 2011) (finding that debtors do not need to suffer actual damages to be awarded attorneys' fees for willful violations of the automatic stay). "[E]ven innocent and well-grounded violations of the automatic stay should give rise to recovery of attorneys' fees when a debtor is required to resort to a court action to vindicate rights." *In re Rodriguez*, 2012 WL 589553, *4 (Bankr. D.N.J. Feb. 22, 2012) (quoting *In re McNeil*, 128 B.R. 603, 614 (Bankr. E.D. Pa. 1991)).

---

[6] The term "individual" in section 362(k) of the Bankruptcy Code includes corporate debtors. *See In re Atl. Bus. & Cmty. Dev. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) (citing *Budget Service Co. v. Better Homes of Va.*, 804 F.2d 289, 292 (4th Cir. 1985)).

Damages pursuant to section 362(k) of the Bankruptcy Code are available in Chapter 15 cases. *See, e.g.*, *In re Polymanov*, 571 BR. 24, 42 (Bankr. S.D.N.Y. 2017) (noting that Chapter 15 petitioner "has recourse under section 362(k) for any damages he may sustain in the event it is proven that [third party] willfully violated the automatic stay.").

41.    "To succeed on a 'willful' stay-violation claim, the debtor must prove: (1) a violation of the stay occurred; (2) the creditor had knowledge of the bankruptcy case when acting; and (3) the violation caused actual damages." *Marzullo v. Rubin*, 2014 WL 3844676, *2 (Bankr. D.N.J. Aug. 14, 2014) (citing *Lienhard v. Leighton Ambulance Assoc. (In re Lienhard)*, 498 B.R. 443, 450 (Bankr. M.D. Pa. 2013)). Willfulness "can be satisfied by showing simply that the offending party knew about a debtor's bankruptcy but proceeded with the stay violation nonetheless." *In re Miller*, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011). The Third Circuit has held that a willful stay violation occurs "when a creditor violates the stay with knowledge that the bankruptcy petition has been filed . . . [w]illfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional." *Lansdale Fam. Rest., Inc. v. Weis Food Svc. (In re Lansdale Fam. Rest., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992); *see also In re Montgomery Ward, LLC*, 292 B.R. 49, 57 (Bankr. D. Del. 2003) ("No specific intent requirement exists."); *In re Dean*, 490 B.R. 662, 673 (Bankr. M.D. Pa. 2013) ("A creditor who presumes to 'unilaterally determine the scope and effect of the automatic stay' does so at his peril.").

42.    Here, as set forth above, the General Partner has violated the automatic stay by filing the Adversary Complaint without first seeking a determination that the automatic stay does not apply or, alternatively relief from the stay. Such a violation was willful because the General Partner was aware of the Chapter 15 Case and did not seek this Court's permission to commence

the proceeding beforehand. Moreover, to the extent there was any doubt, the Foreign Representatives informed the General Partner that its actions violated the automatic stay by sending the Stay Violation Letter. Despite this warning, the General Partner has still failed to withdraw the Adversary Complaint.

43.     Instead, the General Partner has effectively conceded that it acted improperly by filing belatedly the Relief from Stay Motion. And while the General Partner has sought relief from the stay, it has not demonstrated in the Relief from Stay Motion why such relief should apply retroactively. *See In re Rupari Holding Corp.*, 573 B.R. 111 (Bankr. D. Del. 2017) (discussing circumstances necessary to obtain retroactive stay relief). Accordingly, the General Partner should still be liable for damages stemming from its willful violation of the automatic stay even if it prevails in obtaining relief from the stay.

44.     The Debtor has suffered damages by the filing of the Adversary Complaint as the Foreign Representatives[7] and their attorneys have been forced to, among other things: (i) analyze the Adversary Complaint and responses thereto; (ii) draft and prosecute this Motion; and (iii) draft and prosecute the Discovery Motion. Because the General Partners' actions constitute a willful violation of the automatic stay, the Foreign Representatives are entitled to an award of damages. In this case, those damages equal the Foreign Representatives' reasonable fees and costs (including attorneys' and other professionals' fees) related to the prosecution of this Motion and defending the Adversary Proceeding, at a minimum.  The Adversary Complaint also necessitated the filing of the Discovery Motion and, thus, the prosecution of the Discovery Motion has caused the Foreign

---

[7] The Foreign Representatives are professionals employed by FFP Limited and Kroll Bermuda Ltd. that bill on an hourly basis, and they are assisted by other professionals at FFP limited and Kroll Bermuda Ltd.

Representatives damages in the amount of their associated fees and costs for such Discovery Motion. Such damages should also be awarded.[8]

## NOTICE

45.    Notice of this Motion will be provided to the following parties, through their counsel, if represented: (a) counsel to the General Partner; (b) the Office of the United States Trustee for the District of Delaware; and (c) all parties requesting notice pursuant to Rule 2002.

## CONCLUSION

WHEREFORE, the Foreign Representatives respectfully request that the Court enter the Proposed Order (i) declaring the Adversary Proceeding void *ab initio*, (ii) ordering the General Partner to pay the Foreign Representatives' fees and costs (including attorneys' and other professionals' fees) in connection with this Motion, the Discovery Motion, and the Adversary Proceeding, and (iii) granting the Foreign Representative such other and further relief as the Court deems proper.

---

[8] In the alternative, the Foreign Representatives' fees and costs associated with the Discovery Motion may be awarded as punitive damages.  11 U.S.C. § 362(k).

Dated: March 27, 2023
        Wilmington, Delaware

Respectfully submitted,

/s/ Stephen J. Astringer
**KOBRE & KIM LLP**
Jacob R. Kirkham (No. 5768)
Stephen J. Astringer (No. 6375)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6451
Facsimile: (302) 518-6461
jacob.kirkham@kobrekim.com
stephen.astringer@kobrekim.com

-and-

Adriana Riviere-Badell (admitted *pro hac vice*)
Evelyn Baltodano Sheehan (admitted *pro hac vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: (305) 967-6100
Facsimile: (305) 967-6120
adriana.riviere-badell@kobrekim.com
evelyn.sheehan@kobrekim.com

-and-

Adam M. Lavine (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Telephone: (212) 380-2580
Facsimile: (212) 488-1220
Adam.lavine@kobrekim.com

*Counsel to the Foreign Representatives*