# **EXHIBIT 1**

Subpoena

# **DEFINITIONS**

Unless otherwise indicated, the following definitions and instructions shall apply to each of the requests (the "Requests") and interrogatories (the "Interrogatories") set forth below and should be considered as part of each such Request and Interrogatory:

1. "Caplan Consulting" means Caplan Consulting LLC.

2. "Caplan Payments" means payments made by the Debtor to Caplan Consulting and/or Sherri Caplan between June 2017 and July 2018 totaling approximately ▮▮▮▮▮.

3. "Communications" or "communication" means any transmission or attempted transmission of information (in the form of facts, ideas, opinions, thoughts, inquiries, or otherwise, including all discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, text messages, electronic chats, third-party messaging applications, email families, attachments, notes, memoranda, telegrams, teletype, telex, telecopy, computer linkup, advertisement, transmission, and other forms of information exchanged, whether oral, electronic, or written) between two or more Persons or entities, by oral, written, electronic, or any other medium, and includes, without limiting the generality of the foregoing, any meeting, conversation, discussion, correspondence, message, or other occurrence whereby facts, thoughts, opinions, or data are transmitted between two or more Persons.

4. "Concerning" or "in connection with" means in whole or in part, directly or indirectly, and without limitation, relating to, related to, describing, reflecting, comprising, constituting, containing, arising from, embodying, evidencing, identifying, stating, dealing with, recording, evaluating, substantiating, referring to, alluding to, in connection with, commenting on, regarding, discussing, showing, analyzing, or reflecting.

5. "Debtor" means Point Investments, Ltd., and all officers, directors, entities, agents, or persons acting, or purporting to act, on behalf of such entity.

6. "Debtor's Representatives" means any affiliate, employee, officer, director, attorney, accountant, agent, financial advisor, or other person(s) appearing or purporting to act for or on behalf of the Debtor in any capacity (excluding the Foreign Representatives or their attorneys), including without limitation the following persons or entities: (i) Evatt Tamine; (ii) James Gilbert; (iii) Don Jones; (iv) James Watlington; (v) Belaid Jheengor; (vi) Glen Ferguson; (vii) Rod White and/or any other person(s) employed by Krypton Fund Services (Bermuda) Ltd. or its affiliates engaged on behalf of the Debtor; (viii) Katie Tornari, Mark Diel, and/or any other person(s) employed by Marshal Diel & Myers Limited engaged on behalf of the Debtor; (ix) Mathew Herrington, David Axelrod, and/or any other person(s) employed by Paul Hastings LLP engaged on behalf of the Debtor.

7. "Document" is used in the most comprehensive and inclusive sense permitted by Federal Rule of Civil Procedure 34 and includes information of any kind or description, fixed in any tangible medium, including originals, copies, all non-identical copies, and all drafts, whether created by handwriting, typewriting, printing, photo-stating, photographing, reproduction, magnetic impulse, mechanical recording, electronic recording, data retrieval system, or otherwise. These terms include but are not limited to correspondence, letters, reports, statements, pamphlets, articles, questionnaires, books, workbooks, diaries, journals, transcripts, receipts, invoices, bills, notes, numbers, words, letters, drawings, sketches, blueprints, diagrams, charts, telephone records, electronic mail, computerized information, audiotapes, videotapes, and digital video discs. A draft or non-identical copy is a separate document within the meaning of this term.

8. "DOJ" means the United States Department of Justice, as well as any agent, officer, manager, or any other employee or independent contractor of the United States Department of Justice.

9. "Foreign Representatives" means Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Kroll (Bermuda) Ltd., in their capacity as the duly-appointed Joint Provisional Liquidators and in their capacity as foreign representatives of the Debtor in its chapter 15 bankruptcy case pending in the United States Bankruptcy Court for the District of Delaware (Case No. 22-10261-JKS).

10. "Fund" means Falcata Tech Investments Fund I, L.P., a Cayman Islands exempted limited partnership, and all officers, directors, entities, agents, or persons acting, or purporting to act, on behalf of such entity.

11. "GP" means FTI GP I, LLC, a Delaware limited liability company, and all officers, directors, entities, agents, or persons acting, or purporting to act, on behalf of such entity.

12. "IRS" means the United States Internal Revenue Service, as well as any special agent, revenue officer, revenue agent, manager, or any other employee or independent contractor of the Internal Revenue Service.

13. "including" means including but not by way of limitation.

14. "LPA" means that certain Amended and Restated Exempted Limited Partnership Agreement dated April 20, 2018, between, *inter alia*, the Fund and the Debtor.

15. "Management Agreement" means that certain Management Agreement dated as of April 20, 2018, between the Debtor, the Fund, the GP, and the Manager.

16. "Manager" means Falcata Capital LLC, a Delaware limited liability company, and all officers, directors, entities, agents, or persons acting, or purporting to act, on behalf of such entity.

17. "Master Transaction Agreement" means that certain Master Transaction Agreement dated as of July 1, 2019, between, *inter alia*, the Debtor and the Fund.

18. "Person" means any natural person or business, legal or governmental entity or association, including but not limited to corporations, proprietorships, partnerships, trusts, estates, joint ventures, associations, firms, or other unincorporated organizations, or entities recognized in law, and includes the owners, officers, directors, agents, employees, trustees, parents, subsidiaries, affiliates, assigns, predecessors, and successors of such "Person."

19. "Sherri Caplan" means Sherri Caplan in her capacity as the managing member of Caplan Consulting, her individual capacity, and/or as an attorney at the law firm Greenberg Traurig LLP in connection with its representation of the Debtor.

20. █████████████████████████████████████████████████████████████████████████████████████████████████████████

21. "You", "you," "your" means the Manager.

22. To the extent not otherwise defined, all words shall have their usual and ordinary meaning in the context of the definitions set forth herein.

23. The preceding definitions and any applicable Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure, apply to each set of instructions set forth below and each of the Requests and Interrogatories.

# DOCUMENT REQUEST INSTRUCTIONS

1. These Requests are continuing in nature, and to the extent that your responses may be enlarged, diminished, corrected, or otherwise modified by information that you obtain, discover, or become aware of, subsequent to the production of your initial responses hereto, you are required, to the extent provided in Rule 2004 of the Federal Rules of Bankruptcy Procedure, to produce promptly supplemental responses in writing reflecting such changes.

2. In producing Documents, all Documents that are physically attached to each other (including attachments to emails or embedded Documents) are requested to be produced in that form regardless of whether the attached Documents are otherwise requested herein. Documents that are segregated or separated from other Documents, whether by inclusion in folders, binders, files, sub-files or by use of dividers, tabs, or any other method, are requested to be produced in that form.

3. Each of these Requests shall be construed independently and shall not be limited by any other Request, except that Documents responsive to more than one request need be produced only once.

4. As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of these Requests all Documents that might otherwise be construed to be outside its scope by another construction.

5. The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whichever is appropriate so as to bring within the scope of these Requests any information or Documents which might otherwise be considered to be beyond their scope.

6. If, in answering these Requests, you claim that any Request, or a definition or instruction applicable thereto, is ambiguous, do not use such a claim as a basis for refusing to respond, but rather set forth as part of the response the language you claim is ambiguous and the interpretation you have used to respond to the individual Request. Counsel for the Debtor is available at your convenience to discuss the meaning and scope of the Requests.

7. Each Document requested herein is to be produced in its entirety, without deletion or redactions (except for privileged matter, as set forth in Instructions below), regardless of whether you consider the entire Document to be relevant or responsive to these Requests.

8. The production in response to these Requests shall comprise all information in your possession, custody, or control. Possession, custody, or control includes constructive possession such that the Person need not have actual physical possession. As long as the Person has a superior right or practical ability to compel the production from a third party (including an agency, authority or representative), the Person has possession, custody or control.

9. If you have knowledge of Documents, objects, or other tangible things responsive to a request, you are requested to disclose that information to the requesting party, whether or not the actual Documents, objects, or other tangible things are in your possession, custody or control.

10. If a party to whom these Requests are directed is unable to fully answer any of them, it shall answer them to the fullest extent possible, specifying the reason(s) for its inability to answer the remainder, and stating whatever information, knowledge or belief it has concerning the answerable portion.

11. If any Document requested herein or referred to, or relied upon, in any answer to any Request, was, but is no longer in your possession, custody or control, or in existence, state whether it (1) is missing or lost; (2) has been destroyed; (3) has been transferred, voluntarily or

involuntarily, to others; and/or (4) has otherwise been disposed of, and, in each instance, state any information in your possession concerning the content and current location of such Document.

12. If any Document is subject to a claim of privilege, immunity or otherwise, but such Document also contains non-privileged matter which is responsive to the Request, the Document should be produced with all privileged content redacted and the Documents shall also be placed on a privilege log (i) expressly claiming privilege, and (ii) describing the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

13. For purposes of interpreting or construing the scope of these Requests, all terms shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

   a. Construing "and" as well as "or" in the disjunctive or conjunctive, as necessary to make the interrogatory more inclusive and bring within the scope of the interrogatory any information that might otherwise be construed to be outside the scope of the Request;

   b. Construing the singular form of the word to include the plural, and the plural form to include the singular;

   c. Construing the masculine to include the feminine, and vice versa;

   d. Construing the term "including" to mean "including but not limited to" and construing the term "all" to mean "any and all," and vice versa;

   e. Construing the term "each" to include "every," and construing "every" to include "each";

   f. Construing the use of a verb in any tense as the use of the verb in all other tenses; and

   g. Construing and interpreting all spelling, syntax, grammar, abbreviations, idioms and proper nouns to give proper meaning and consistency to their context.

14. Each paragraph herein shall be construed independently and not with reference to any other paragraph for the purposes of limitation.

15. The Foreign Representatives reserves the right to amend the Requests and to propound additional document requests.

## DOCUMENT REQUESTS

**DOCUMENT REQUEST NO. 1**

Copies of management accounts for 2022 to date.

**DOCUMENT REQUEST NO. 2**

Copies of any amendments to the LPA, the Master Transaction Agreement, or the Management Agreement.

**DOCUMENT REQUEST NO. 3**

Copies of the latest limited partnership statement and investor report for the Fund.

**DOCUMENT REQUEST NO. 4**

Documents sufficient to identify FTI GP I, LLC's current officers, directors, and/or any other person(s) authorized to direct or manage the affairs of the Fund.

**DOCUMENT REQUEST NO. 5**

From January 1, 2016 to present, (a) all Communications sent or received by You, the GP, or the Fund to or from any Person (other than the Debtor, the Debtor's Representatives, and the Foreign Representatives), including any Communications with the IRS, the DOJ, or any other government agency of the United States, concerning the Debtor's assets, affairs, rights, obligations, or liabilities, and (b) all Documents concerning such Communications.

**DOCUMENT REQUEST NO. 6**

Copies of all Documents provided to the IRS, the DOJ, or any other government agency of the United States in response to the subpoenas served on the Fund on or around 19 December 2019 seeking documents and information relating to the Debtor and its investment in the Fund, among other things.

**DOCUMENT REQUEST NO. 7**

From January 1, 2016 to present, (a) all Communications sent or received by You, the GP, or the Fund, to or from the Debtor, excluding any Documents and Communications sent to or from the Foreign Representatives but including the Debtor and the Debtor's Representatives, and (b) all Documents concerning such Communications.

**DOCUMENT REQUEST NO. 8**

From January 1, 2016 to present, all Documents concerning the Debtor's assets, affairs, rights, obligations, or liabilities, including Documents concerning (a) amounts owed by the Fund to the Debtor or by the Debtor to the Fund, such as missed capital calls and amounts due on account

of penalties and/or interest; (b) any accounting of amounts owed by the Debtor in relation to the Fund, its affairs, or its investments; (c) any withheld distributions owed by the Fund to the Debtor; (d) any other funds that are being held by You, the GP, or the Fund for the benefit, or on behalf, of the Debtor; and (e) all capital call notices.

**DOCUMENT REQUEST NO. 9**

All Documents and Communications concerning the GP's purported decision to declare the Debtor a Defaulting Partner, and thereafter to refuse to permit the Debtor to cure any default and cease to be a Defaulting Partner, or otherwise to fully participate as the sole limited partner in the Fund.

**DOCUMENT REQUEST NO. 10**

[redacted]

**DOCUMENT REQUEST NO. 11**

[redacted]

**DOCUMENT REQUEST NO. 12**

[redacted]

**DOCUMENT REQUEST NO. 13**

[redacted]

**DOCUMENT REQUEST NO. 14**

All Documents and Communications concerning the Caplan Payments, Your relationship with Sherri Caplan and Caplan Consulting, and the scope of work relating to the engagement of

Sherri Caplan and/or Caplan Consulting, including all consulting agreement(s) and conflict waivers.

**DOCUMENT REQUEST NO. 15**



**DOCUMENT REQUEST NO. 16**

All Documents and Communications demonstrating Your and/or the GP's considerations of how to distribute assets from the Fund.

# INTERROGATORY INSTRUCTIONS

1. These Interrogatories are continuing in nature, and to the extent that your responses may be enlarged, diminished, corrected, or otherwise modified by information that you obtain, discover, or become aware of, subsequent to the production of your initial responses hereto, you are required, to the extent provided in Rule 2004 of the Federal Rules of Bankruptcy Procedure, to produce promptly supplemental responses in writing reflecting such changes.

2. These interrogatories call for all knowledge, information or belief in your possession, custody, or control, as well as all knowledge, information or belief in the possession, custody or control of your attorneys, accountants, agents, representatives, and experts, and any professional or Person representing you. If you cannot fully respond to the following interrogatories after exercising due diligence to secure the information requested thereby, so state, and specify the portion of each interrogatory that cannot be responded to fully and completely. In the latter event, state what efforts were made to obtain the requested information and the facts relied upon that support the contention that the interrogatory cannot be answered fully and completely, and state what knowledge, information, or belief you have concerning the unanswered portion of any such interrogatory.

3. In responding to each interrogatory, you are to review and reasonably search all relevant files of all appropriate entities and Persons within your possession, custody, or control.

4. Each interrogatory shall be construed independently, and no interrogatory limits the scope of any other interrogatory.

5. If you object to answering all or any part of an interrogatory, the objection and the specified grounds for the objection must be stated in writing in the response. If only a portion of an interrogatory is objected to, you are required to answer the remainder of such interrogatory.

6. If any claim is made that any interrogatory requests information that is privileged, you shall submit a complete answer disclosing all non-privileged information and, further, in lieu of an answer that discloses privileged information, submit a written statement stating the legal and factual basis of the claimed privilege.

7. For purposes of interpreting or construing the scope of these interrogatories, all terms shall be given their most expansive and inclusive interpretation. This includes, without limitation, the following:

   a. Construing "and" as well as "or" in the disjunctive or conjunctive, as necessary to make the interrogatory more inclusive and bring within the scope of the interrogatory any information that might otherwise be construed to be outside the scope of the interrogatory;

   b. Construing the singular form of the word to include the plural, and the plural form to include the singular;

   c. Construing the masculine to include the feminine, and vice versa;

   d. Construing the term "including" to mean "including but not limited to" and construing the term "all" to mean "any and all," and vice versa;

   e. Construing the term "each" to include "every," and construing "every" to include "each";

   f. Construing the use of a verb in any tense as the use of the verb in all other tenses; and

   g. Construing and interpreting all spelling, syntax, grammar, abbreviations, idioms and proper nouns to give proper meaning and consistency to their context.

8. These interrogatories are continuing so as to require additional or amended responses promptly if new or further information is obtained or discovered subsequent to the time responses are served.

# INTERROGATORIES

## INTERROGATORY NO. 1

Describe and provide details concerning the current status of the Fund and the GP's proposals as to its future, in light of the provisions of the Master Transaction Agreement, and the GP's undertaking to use its reasonable best efforts to effect the sale of all or substantially all of the assets of the Fund as soon as commercially practicable.

## INTERROGATORY NO. 2

Provide details concerning the Caplan Payments, including the GP's proposals for repayment of sums advanced by the Debtor for the benefit of the GP and/or the Fund, or, if it is alleged that payment has been made or credit given to the Debtor for the Caplan Payments, details of the circumstances of such payments or credits.

## INTERROGATORY NO. 3

Provide a schedule of all capital calls made by the Fund to the Debtor and any upcoming capital calls within the next 12 months.

## INTERROGATORY NO. 4

Provide an accounting of all funds said to be owed to the Debtor or by the Debtor in relation to the Fund, its affairs, and its investments, including details of any missed capital calls and any amounts due (including any penalties and/or interest).

## INTERROGATORY NO. 5

Provide a list of all monies advanced by the Debtor for the benefit of the Fund, the GP, and/or the Manager.

## INTERROGATORY NO. 6

Describe Your position of the impact, if any, that the Debtor's continued designation as a "Defaulted Partner" under the LPA will have on distributions made by the Fund to the Debtor as the Fund winds down.

## INTERROGATORY NO. 7

[REDACTED]

**INTERROGATORY NO. 8**

Provide a list identifying each of the Debtor's Representatives that You have had Communications with from January 1, 2016 to present.

**INTERROGATORY NO. 9**

Identify all Persons who provided the information used, and all Documents reviewed or referenced, in answering these Interrogatories.