## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| POINT INVESTMENTS, LTD. (IN LIQUIDATION),[1] | Case No. 22-10261 (TMH) |
| Debtor in a Foreign Proceeding. | **Hearing Date: April 27, 2023 at 10:00 a.m. (ET)** |
| | **Re: [D.I. 47]** |

## FOREIGN REPRESENTATIVES' OBJECTION TO MOTION OF FTI GP I, LLC ON BEHALF OF FALCATA TECH INVESTMENT FUND I, L.P. FOR DETERMINATION THAT THERE IS NO AUTOMATIC STAY, OR IN THE ALTERNATIVE, SEEKING RELIEF FROM THE AUTOMATIC STAY TO PROCEED WITH ADVERSARY PROCEEDING

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Kroll Bermuda Ltd. (the "Foreign Representatives"), in their capacity as the foreign representatives of Point Investments, Ltd. (the "Debtor"), in respect of the winding up proceeding pending before the Supreme Court of Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300 (the "Bermuda Proceeding"), by and through the undersigned counsel, hereby file this objection (the "Objection") to the *Motion of FTI GP I, LLC, on Behalf of Falcata Tech Investment Fund I, L.P., for Determination that there is No Automatic Stay, or in the Alternative Seeking Relief from the Automatic Stay to Proceed with Adversary Proceeding* [D.I. 47] (the "Relief from Stay Motion"). In support of this Objection, the Foreign Representatives submit (i) the *Declaration of Andrew Childe in Support of Foreign Representatives' Objection to Motion of FTI GP I, LLC, on Behalf of Falcata Tech Investment Fund I, L.P. for Determination that there is No Automatic Stay, or in the Alternative, Seeking Relief from the Automatic Stay to Proceed with Adversary Proceeding* (the "Childe Declaration"); and (ii) the *Declaration of Jayson Wood in Support of*

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is c/o Kroll Bermuda, The Vallis Building, 4th Floor, 58 Par-La-Ville Road, Hamilton, HM 11, Bermuda.

*Foreign Representatives' Objection to Motion of FTI GP I, LLC, on Behalf of Falcata Tech Investment Fund I, L.P., for Determination that there is No Automatic Stay, or in the Alternative, Seeking Relief from the Automatic Stay to Proceed with Adversary Proceeding* (the "<u>Wood Declaration</u>"), each filed contemporaneously herewith. In support of this Objection, the Foreign Representatives respectfully state as follows:

## <u>PRELIMINARY STATEMENT</u>

1.    Through the Relief from Stay Motion, FTI GP I, LLC (the "<u>General Partner</u>") asks this Court to hold that the automatic stay—one of the most fundamental protections afforded to a foreign debtor under Chapter 15—does not apply to the General Partner's commencement of an adversary proceeding that seeks to adjudicate the General Partner's pre-petition claim. Alternatively, the General Partner belatedly seeks relief from the automatic stay to permit it to prosecute the Adversary Proceeding to the detriment of the Debtor and other creditors that are abiding by the Debtor's liquidation process overseen by the Bermuda Court. The Relief from Stay Motion should be denied.

2.    As set forth in the Foreign Representatives' Stay Enforcement Motion,[2] the Adversary Proceeding is barred by the automatic stay because it is the exact type of proceeding—one that seeks to determine a foreign creditor's prepetition claim—that courts have long refused to adjudicate based on principles of comity. The General Partner asks this Court to adopt a tortured interpretation of section 1520 of the Bankruptcy Code, arguing (incorrectly) that the broad protection of the automatic stay somehow applies only to property of the Debtor in the United States but does not bar a proceeding against the Debtor in the United States that concerns foreign

---

[2] *See Motion of the Foreign Representatives for Entry of an Order Enforcing the Automatic Stay and for Damages* [D.I. 52] (the "<u>Stay Enforcement Motion</u>"). Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Stay Enforcement Motion.

property. This absurd reading runs contrary to the express terms of section 1520, which provides that the stay is applicable to both the Debtor *and* property of the Debtor located in the United States. The General Partner's position also conflicts with decisions interpreting section 1520—including cases the General Partner itself cites for support.

3. The General Partner's argument that the "home court" rule permits the filing of its adversary proceeding also misses the mark. The "home court" rule is a doctrine used in Chapter 7 and Chapter 11 cases. It provides that a creditor's commencement of an adversary proceeding against a debtor does not violate the automatic stay because an adversary proceeding under those circumstances is equivalent to filing a proof of claim. Unlike in Chapter 7 and Chapter 11 cases where creditors file proofs of claim against a debtor in the home bankruptcy court, there is no bankruptcy estate or claims process in a Chapter 15 proceeding. That process is overseen by the foreign court—in this case the Bermuda Court—which is properly considered the "home court." Thus, the "home court" rule does not permit the filing of the Adversary Proceeding.

4. Relief from the automatic stay is also unwarranted. The General Partner falls far short of satisfying its burden of demonstrating a *prima facie* case for lifting the automatic stay. Moreover, a balancing of the equities decisively weighs in favor of maintaining the stay. The Debtor would face significant prejudice if the stay were modified and the Foreign Representatives were forced to litigate prepetition claims in multiple jurisdictions worldwide, as opposed to claims being centralized in Bermuda. The General Partner will face no comparable harm by liquidating its claim through the Bermuda Proceeding—just like all other creditors of the Debtor. The General Partner's unfounded assertion that it has a likelihood of success on the merits is belied by a myriad of jurisdictional, factual, and legal issues—including complex issues of Cayman and Bermuda law—that would arise in litigating the Adversary Proceeding. Finally, the nascent nature of the

Adversary Proceeding (where motions testing the sufficiency of the complaint have not yet been filed and discovery has not been conducted) also weighs in favor of denying relief from the automatic stay. For all these reasons, and those set forth below, the Relief from Stay Motion should be denied.

**BACKGROUND**

5.   Background information regarding the Debtor, the Bermuda Proceeding, the Chapter 15 Case, and the Adversary Proceeding is set forth in the Stay Enforcement Motion and incorporated by reference herein.

**ARGUMENT**

I. **The Automatic Stay Is A Fundamental And Broad Protection That Was Afforded To The Debtor Upon Recognition And Bars The Adversary Proceeding**

  A. **The Plain Text Of Section 1520 And Decisions Interpreting This Provision Make Clear That The Automatic Stay Bars the Adversary Proceeding**

6.   The General Partner incorrectly contends that "by virtue of the ancillary nature of a chapter 15 proceeding and the in rem nature of the court's jurisdiction, the stay afforded under section 1520(a)(1) of the Bankruptcy Code is limited to actions against property of Point within the territorial jurisdiction of the United States..." Relief from Stay Mot. ¶ 12. This argument ignores the express terms of the Bankruptcy Code and the Recognition Order, and likewise is at odds with cases applying section 1520. Therefore, it should be rejected.

7.   As set forth in the Stay Enforcement Motion, this Court entered the Recognition Order on April 22, 2022 [D.I. 34] recognizing the Bermuda Proceeding as a "foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code. *See* Recognition Order ¶ 3. As such, there can be no dispute that the protections of the automatic stay went into effect at that time pursuant to section 1520 of the Bankruptcy Code. *See* 11 U.S.C. § 1520(a)(1); *In re Irish Bank Resol. Corp. Ltd.*, No. 13-BK-12159 (CSS), 2014 WL 9953792, at *18 (Bankr. D. Del. Apr. 30,

2014), *aff'd*, 538 B.R. 692 (D. Del. 2015) ("Pursuant to § 1520, recognizing the Liquidation Proceedings as foreign main proceedings triggers the automatic stay of § 362").

8.     The express language of the Bankruptcy Code is clear that these protections apply not only to the Debtor's *property* located within the territorial jurisdiction of the United States but to *the Debtor itself. See* 11 U.S.C. § 1520(a)(1) ("Upon recognition…[section] 362 appl[ies] *to the debtor and* property of the debtor that is within the territorial jurisdiction of the United States") (emphasis added); *see also In re O'Reilly*, 598 B.R. 784, 790 (Bankr. W.D. Pa. 2019) ("[U]pon 'recognition' of a foreign 'main proceeding,' the automatic stay … applies with respect to *both* the debtor and property of the debtor that is within the territorial jurisdiction of the United States") (emphasis added).[3]

9.     Applying section 1520, courts have found that upon recognition, "the commencement of *any legal proceedings* against [the foreign debtor] within the territorial jurisdiction of the United States is barred." *In re Sibaham Ltd.,* No. 19-BK-31537, 2020 WL 2731870, at *1 (Bankr. W.D.N.C. May 4, 2020) (emphasis added); *see also In re Irish Bank Resol. Corp. Ltd.*, No. 13-BK-12159 (CSS), 2019 WL 4740249, at *4 (D. Del. Sept. 27, 2019) (affirming bankruptcy court's decision that the automatic stay applied to an adversary proceeding that did not assert claims against property of the debtor). At bottom, the General Partner's interpretation is wholly unsupported by the express terms of the Bankruptcy Code and "disregards the international origins and purposes of chapter 15 and leads to absurd consequences that could not have been

---

[3] The Recognition Order itself also makes clear that the automatic stay applies to both the Debtor and the Debtor's property located within the territorial jurisdiction of the United States, providing that:

> All relief and protection afforded to foreign main proceedings under section 1520 of the Bankruptcy Code is hereby granted to the Bermuda Proceeding, *the Debtor*, *the Debtor's property located in the United States*, and the foreign representatives, as applicable.

Recognition Order ¶ 5 (emphasis added).

intended by Congress or the international experts in insolvency law who drafted the Model Law on Cross-border insolvency on which chapter 15 is based." *In re JSC BTA Bank*, 434 B.R. 334, 336 (Bankr. S.D.N.Y. 2010).

10.     In an attempt to support its position, the General Partner relies on *In re JSC Bank*, where the United States Bankruptcy Court for the Southern District of New York considered whether the automatic stay arising under section 1520 barred a creditor from proceeding with arbitration in Switzerland. *Id*. at 334. But the Court in *JSC Bank* did not find that the automatic stay in a Chapter 15 case applies *only* to property of a debtor in the United States or make any findings that would support such interpretation. Instead, the Court held that the automatic stay in a Chapter 15 case "applies to [a] debtor within the United States for *all purposes*, and may extend to the debtor as to proceedings in other jurisdictions for purposes of protecting property of debtor that is within territorial jurisdiction of the United States, but does not apply globally to all proceedings against [a] debtor." *See id*. at 334 (emphasis added).

11.     In fact, the Court in *JSC Bank* acknowledges the distinction between the applicability of the stay to *property of the debtor* and to *the debtor itself. Id.* at 342 (finding that, with respect to property of the debtor, the automatic stay "applies only to property within the United States … [which] serves to eliminate any doubt as to the extent of the authority of the bankruptcy court over *property* of a foreign debtor" but finding that "[s]uch obvious precision appears to be lacking with respect to the application of the automatic stay in a chapter 15 case to the *foreign debtor itself*") (emphasis added). After undertaking a fulsome analysis of section 1520, the Court concluded that:

> [T]he best reading of section 1520(a)(1) … is that the stay arising in a chapter 15 case upon recognition of a foreign main proceeding applies to the debtor within the United States for *all purposes* and may extend to the debtor as to proceedings in other jurisdictions for

purposes of protecting property of the debtor that is within the territorial jurisdiction of the United States.

*Id*. at 343 (emphasis added). Accordingly, the General Partner's interpretation of Section 1520 is squarely at odds with *JSC Bank*.

12.     For all these reasons, the General Partner's flawed interpretation of section 1520 of the Bankruptcy Code should be rejected, and the Court should hold that the automatic stay applies to the Adversary Proceeding.

> **B.      The So-Called "Home Court" Rule Does Not Apply To An Adversary Proceeding In A Chapter 15 Case Because Bermuda Is The "Home Court"**

13.     The General Partner next argues that the Adversary Proceeding is not barred by the automatic stay because "[t]he majority of bankruptcy courts, including courts in this district, hold that 'the Code implicitly permits the filing of suit in the bankruptcy court against debtor without violating the automatic stay.'" Relief from Stay Mot. ¶ 19. The General Partner is wrong. While courts have adopted the so-called "home court" rule in Chapter 7 and Chapter 11 cases, that rule simply does not apply in Chapter 15 cases.

14.     The rationale underlying the home court rule is that the "filing of an adversary proceeding against a debtor in the home bankruptcy court is equivalent to the filing of a proof of claim in the Debtor's bankruptcy case and, therefore, does not violate the automatic stay." *In re Uni Marts, LLC*, 405 B.R. 113, 129 (Bankr. D. Del. 2009). Courts have thus permitted adversary proceedings brought in a Chapter 7 or Chapter 11 case because "[h]aving such litigation go forward in what can be termed the home court centralizes all actions against the debtor in one forum under the control of one court and thereby aids the home court in protecting the debtor and creditors and in efficiently administering the estate." *In re Bird*, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999).

15.     However, unlike in a Chapter 7 or Chapter 11 case, a Chapter 15 case is an ancillary proceeding to the foreign main proceeding. The bankruptcy court overseeing a Chapter 15

proceeding is *not* the debtor's "home court"—the court overseeing the foreign proceeding is. In this case, the Debtor's "home court" is Bermuda, where creditors will be permitted to file proofs of claim and receive distributions in a process overseen by the Bermuda Court. *See* Wood Decl. ¶¶ 13-19 (discussing claims process in Bermuda). As such, the rationale underlying the home court rule does not apply here. Indeed, the General Partner cites no cases (nor can it) where a bankruptcy court has applied the home court rule to permit an adversary proceeding in a Chapter 15 case. Accordingly, the "home court" rule does not provide a basis for the General Partner's commencement of the Adversary Proceeding in violation of the automatic stay.

## II.    The General Partner Has Failed To Meet Its Burden, And No Cause Exists To Lift The Automatic Stay

### A.    The General Partner Has Failed To Make A *Prima Facie* Case That The Stay Should Be Lifted

16.    The General Partner seeks relief under section 362(d)(1) of the Bankruptcy Code, which enables a party in interest to request relief from the automatic stay upon a showing of "cause." 11 U.S.C. § 362(d)(1). The party seeking stay relief under section 362(d)(1) of the Bankruptcy Code "must initially produce evidence establishing 'cause' for the relief he requests." *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). A showing of "cause" is a fact-specific inquiry, in which the movant must substantiate its case with an evidentiary showing of a factual and legal right to the relief it seeks. *See In re RNI Wind Down Corp.*, 348 B.R. 286, 299–300 (Bankr. D. Del. 2006) (denying stay relief motion where movant failed to move supporting declaration and documentation into the record and finding that, even if declaration and supporting documents had been admitted into evidence, such evidence was insufficient to make a *prima facie* case to lift the stay); *In re Touloumis*, 170 B.R. at 828 ("[T]he movant must initially produce evidence establishing 'cause' for the relief he requests.") (citations omitted).

17. Failure to prove a *prima facie* case requires denial of the requested relief. *See In re Aleris Int'l, Inc.*, 456 B.R. 35, 46-47 (Bankr. D. Del. 2011) (quoting *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d. Cir. 1990)) ("If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection."); *In re DBSI, Inc.*, 432 B.R. 126, 134 (Bankr. D. Del. 2010) (denying lift from stay motion where the bank failed to make a *prima facie* showing). Only after the moving party establishes a *prima facie* case for "cause" does the burden shift to the debtor to disprove its existence. *Burger Boys, Inc. v. South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.)*, 183 B.R. 682, 687 (S.D.N.Y. 1994) (citing 11 U.S.C. § 362(g)(1)); *In re Touloumis*, 170 B.R. at 828.

18. Here, the General Partner fails to submit evidence demonstrating why "cause" exists to lift the automatic stay. Indeed, the only attachments to the Relief from Stay Motion are the proposed form of order and notice of hearing, and the General Partner did not submit any supporting declaration. The Relief from Stay Motion itself contains only three perfunctory paragraphs attempting to explain why cause exists that rely on conclusory and unsubstantiated statements, which is plainly insufficient to satisfy the General Partner's burden. *See In re Texaco Inc.*, 81 B.R. 820, 829 (Bankr. S.D.N.Y. 1988) ("Conclusory statements that a continuance of the stay will cause irreparable harm or that injury will occur if relief is denied are insufficient to establish cause."). For these reasons, the Relief from Stay Motion should be denied based on the lack of support and the General Partner's failure to make out a *prima facie* case.

### B. The *Rexene* Factors Weigh Against Lifting The Automatic Stay

19. Separate and apart from its failure to provide any evidentiary support, the General Partner fails to show that "[the] balance of hardships from not obtaining relief tips significantly in its favor." *See In re Aleris Int'l, Inc.*, 456 B.R. at 47. "The three prongs of the balancing test are

(1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay, (2) whether the hardship to the non-bankrupt party by the maintenance of the stay considerably outweighs the hardship to the debtor if the stay is lifted, and (3) whether it is probable that the creditor will prevail on the merits of its case against the debtor." *Id.* at 47-48 (citation omitted).

20.     When applying these factors, courts place an "emphasis on whether lifting the automatic stay will imped[e] the orderly administration of the debtor's estate." *In re DBSI, Inc.*, 407 B.R. 159, 167 (Bankr. D. Del. 2009). Where, as here, "the movant is an unsecured creditor, the policies underlying the automatic stay weigh against granting the relief requested." *In re Residential Cap., LLC*, No. 12-BK-12020 (MG), 2012 WL 3249641, at *3 (Bankr. S.D.N.Y. Aug. 7, 2012); *In re Leibowitz*, 147 B.R. 341, 345 (Bankr .S.D.N.Y. 1992) ("[T]he general rule is that claims that are not viewed as secured in the context of section 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."); *see also* Wood Decl. ¶ 10 (discussing exceptional circumstances for lifting the stay under Bermuda law).

### (1)     Factor 1 – The Debtor And Its Other Creditors Will Suffer Great Prejudice From Lifting The Stay

21.     The General Partner contends that lifting the automatic stay to permit the Adversary Proceeding to continue "will not prejudice [the Debtor] because the relief sought against [the Debtor] will not materially impact or stall [the Debtor's] Chapter 15 recognition proceeding as [the Debtor] has already been granted recognition." Relief from Stay Mot. ¶ 26. This argument misses the mark. In the context of a Chapter 15 case, the question is not whether lifting the automatic stay will impact the Chapter 15 recognition process, but whether lifting the automatic stay will negatively impact the Debtor and its other creditors.

22.     Here, the prejudice to the Debtor of modifying the stay is clear. If the General Partner were allowed to prosecute its pre-petition claims against the Debtor ahead of other creditors, other parties would be more likely to file similar actions to adjudicate claims against the Debtor outside of Bermuda. This "floodgate" concern is "the very state of affairs the automatic stay was enacted to prevent." *See Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, No. 09-50026 (REG), 2010 WL 4630327, at *5 (S.D.N.Y. Nov 8, 2010); *see also In re Residential Cap., LLC,* No. 12-BK-12020 (MG), 2012 WL 3249641, at *2 (Bankr. S.D.N.Y. Aug. 7, 2012) ("The automatic stay is intended to 'allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.'"); *see also* Wood Decl. ¶¶ 9-10 (discussing importance of channeling claims to the Bermuda Proceeding).

23.     Further, the General Partner's argument that modifying the stay "will aid in a more expedient timeline to determine [the Debtor's] and Falcata's rights . . ." conflicts with the primary purposes of this Chapter 15 Case. Relief from Stay Mot. ¶ 26. The purpose of the automatic stay is to "prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *In re Irish Bank Resol. Corp. Ltd.*, No. 13-BK-12159 (CSS), 2014 WL 9953792, at *18  (quoting *Ass'nc. of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir.1982)).  In direct contravention of these purposes, Falcata effectively concedes that, by commencing the Adversary Proceeding, it is seeking special treatment not currently available to other creditors of the Debtor, precisely because it wishes to expedite the resolution of its claim.  This is not a sound basis for seeking relief from the stay, and, in any event, the Adversary Proceeding raises complex

issues of foreign law that can be more efficiently resolved in other jurisdictions as explained in Paragraphs 33-39, *infra*.

24.    In sum, authorizing the relief requested in the Motion would have a prejudicial effect on the Debtor and the Bermuda Proceeding, as it would allow a creditor to liquidate its claim outside of the Bermuda claims process, which may incentivize other creditors to do the same, resulting in increased costs to the Debtor. *See* Childe Decl. ¶ 5. On the other hand, maintaining the automatic stay merely keeps the General Partner on an equal footing with the other creditors in the Bermuda Proceeding and promotes an efficient claims process by channeling claims to Bermuda. Indeed, Courts in Bermuda have emphasized the importance of the automatic stay triggered under Section 167(4) of the Companies Act in channeling claims against a debtor into its winding up proceeding. *See* Wood Decl. ¶ 9.

25.    For these reasons, lifting the stay would impede the orderly liquidation of the Debtor being undertaken in Bermuda, thus causing prejudice to the Debtor and its other stakeholders.

### (2)    Factor 2 – The General Partner Will Suffer Minimal, If Any, Hardship If the Stay Is Maintained

26.    The General Partner fails to articulate—let alone substantiate with evidence—the potential hardship it would suffer if the stay is maintained and it were treated like any other creditor in the Bermuda Proceeding. Instead, the General Partner makes the conclusory statement that the "hardship to the General Partner that would result from the Adversary Proceeding not moving forward greatly outweighs any hardship [the Debtor] may experience by litigating the Complaint." Relief from Stay Mot. ¶ 27. Without specifying more, the General Partner plainly has failed to show how the continued maintenance of the automatic stay "considerably outweighs" the hardship to the Debtor if the stay is lifted. *See In re Aleris Int'l, Inc.*, 456 B.R. at 48 (finding that creditor

failed to show that its continued dispossession of equipment would cause it greater hardship than the hardship on the Debtor if the stay were lifted and the Debtor was dispossessed).

27.     As set forth in the Stay Enforcement Motion and the Wood Declaration, the General Partner remains free to pursue its claims against the Debtor through the Debtor's winding up proceeding in Bermuda. Stay Enforcement Mot. ¶ 24; Wood Decl. ¶ 10, 13-19. To that end, the Foreign Representatives will be noticing the deadline for creditors to file and prove proofs of debt. *Id*. Further, the Bermuda Proceeding is a fundamentally fair process that will afford the General Partner the opportunity to have its rights fairly adjudicated. *See* Stay Enforcement Mot. ¶¶ 37-39. Indeed, under Bermuda Law, the Foreign Representatives are required to examine any proof of debt submitted by the General Partner on behalf of Falcata and determine whether to admit or reject such debt in whole or in part. *See* Wood Decl. ¶¶ 14-17. Should the General Partner disagree with the Foreign Representatives' determination, it is permitted to make an application to appeal such determination to the Bermuda Court. *See id*. at 17. The General Partner has not articulated any specific reason why it would be prejudiced by pursuing its claims in the Bermuda Proceeding. Therefore, the second factor does not weigh in favor of modifying the automatic stay.

### (3)     Factor 3 – It Is Improbable That The General Partner Will Prevail On The Merits

#### a.     The Adversary Proceeding Is In Its Initial Stages

28.     Despite the Adversary Proceeding being in its nascent stages, the General Partner maintains that it has a strong likelihood of success on the merits. But the fact that the Adversary Proceeding was just recently commenced weighs heavily in favor of maintaining the automatic stay. *See In re Sonnax Indus., Inc.*, 907 F.2d at 1287 (affirming district court's decision to deny relief from stay due, in part, to the fact that "the litigation in state court has not progressed even to the discovery stage"); *Arnold Dev., Inc. v. Collins (In re Collins)*, 118 B.R. 35, 38 (Bankr. D.

Md.1990) (declining to lift stay when the parties in the state court proceeding had not yet begun discovery); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 2017 WL 7156341 (D.P.R. July 19, 2017) (denying relief from stay where "the Litigation is in its very early stages—an initial dispositive motion is pending, and no class certification or discovery proceedings have been initiated—and the parties are far from ready for trial."); *cf. with In re SCO Grp., Inc.,* 395 B.R. 852 (Bankr. D. Del. 2007) (finding cause existed to lift stay where litigation had been pending for *four years* and was *ready for trial* immediately prior to commencement of bankruptcy case).

29.     It is simply too early in the Adversary Proceeding for this Court to determine that the General Partner has a strong likelihood of success on the merits. *See Stevenson v. Beard*, No. 3:16-CV-3079-TWR-RBM, 2020 WL 7227210, at \*3 (S.D. Cal. Dec. 7, 2020) (denying motion for relief from stay because "[a]t this early stage of litigation, it is difficult to determine Plaintiff's likelihood of success on the merits of his claims."). Indeed, there has been no motion practice to test the sufficiency of the Adversary Complaint, discovery has not been conducted, and the Adversary Proceeding is nowhere near trial. *See In re Residential Cap., LLC*, No. 12-BK-12020 (MG), 2012 WL 3249641, at \*4 (Bankr. S.D.N.Y. Aug. 7, 2012) (denying motion to lift stay where "[t]here has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims, counterclaims or defenses ... [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done."). In fact, the Adversary Complaint is not even verified and, thus, the General Partner's assertion that its claims "without doubt have a strong likelihood of success" (*see* Relief from Stay Mot. ¶ 28) is based entirely on unsubstantiated allegations in the Adversary Complaint.

  *b. Jurisdictional Issues Make It Improbable That The General Partner Will Be Successful*

30. In determining likelihood of success on the merits, the General Partner must also demonstrate that this Court has jurisdiction over the claims asserted in the Adversary Complaint. *See In re Irish Bank Resol. Corp. Ltd.*, No. 13-BK-12159 (CSS), 2019 WL 4740249, at *7 (D. Del. Sept. 27, 2019) ("Issues of personal and subject matter jurisdiction … are proper considerations as part of assessing the third prong of this standard."). As a threshold matter, the General Partner concedes that its claims are "not against property [of the Debtor] 'within the territorial jurisdiction of the United States'" (Relief from Stay Mot. ¶ 18) and that the claims do not fall within the "in rem nature of the court's jurisdiction" (*id*. at ¶ 12). The General Partner further concedes that the Adversary Proceeding is a non-core proceeding. *See* Adv. Comp. ¶ 10 ("This adversary proceeding is a non-core proceeding under 28 U.S.C. § 157(c)"). Accordingly, the only basis for this Court's subject matter jurisdiction would be "related to" non-core jurisdiction.

31. Even assuming the General Partner can establish that this Court has "related to" jurisdiction (which the General Partner has not done, and the Foreign Representatives do not concede), the Court may be required to abstain from exercising jurisdiction or may exercise its discretion to do so. *See In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 689 (S.D.N.Y. 2011) ("The Court need not address whether 'related to' jurisdiction exists in these cases because even if it does, the Bankruptcy Court must reconsider abstaining from hearing these cases…"). Indeed, mandatory abstention is likely required under the circumstances, as would be set out by the Foreign Representatives in any motion to dismiss filed in the Adversary Proceeding.[4] *See generally*,

---

[4] Under 28 U.S.C. § 1334(c)(2), a court must abstain if (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a forum of appropriate jurisdiction. *See Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006), as

*Principal Growth Strategies, LLC v. AGH Parent LLC*, 615 B.R. 529, 539 (D. Del. 2020) (discussing mandatory and permissive abstention in relation to Chapter 15 case and granting motion for mandatory abstention). Alternatively, the Court may permissively abstain based on principles of international comity. *Id.*

32. Moreover, given the non-core nature of the Adversary Proceeding, lifting the automatic stay would not serve "the interests of judicial economy and the expeditious and economical resolution of litigation." *In re Sonnax Indus., Inc.*, 907 F.2d at 1286. This is because, absent consent of the parties, the Bankruptcy Court can only submit recommended findings of fact and conclusions of law to the District Court. *See e.g.*, *In re Nw. Airlines Corp.*, 384 B.R. 51, 57 (S.D.N.Y. 2008) ("With respect to non-core proceedings, unless the parties agree otherwise, the bankruptcy court can only recommend findings of fact and conclusions of law … [that] are subject to de novo review by the district court."). Accordingly, interests of judicial efficiency weigh against having this Court adjudicate the Adversary Proceeding because it cannot enter a final order absent both parties' consent.[5]

> c. *The Adversary Proceeding Raises Complex Foreign Law Issues And The General Partner Has Failed To Show A Likelihood Of Success Under Foreign Law*

33. Finally, the merits of the claims in the Adversary Proceeding are far more complex than the General Partner makes them out to be and implicate issues of foreign law. Further, even

---

amended (Mar. 17, 2006). All of these requirements appear to be present (or conceded) given that (1) the claims are based on non-bankruptcy law governing the LPA and MTA, including the law of Cayman Islands and Delaware, respectively; (2) the General Partner alleges "related to" jurisdiction; (3) diversity jurisdiction is not alleged to be present, and it likely cannot be established given that Falcata maintains the same citizenship of its partners (*i.e.*, the Debtor) (*see Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("[A] partnership, as an unincorporated entity, takes on the citizenship of each of its partners"); (4) an action is pending in Bermuda (*i.e.*, the Bermuda Proceeding); and (5) Falcata's claim can be timely adjudicated in the Bermuda Proceeding through the ordinary proof of debt process.

[5] For the avoidance of doubt, nothing in this Objection or the Stay Enforcement Motion shall be deemed to constitute the Foreign Representative's consent to the Bankruptcy Court entering a final order in the Adversary Proceeding.

if the General Partner were successful in the Adversary Complaint, this Court could not issue complete relief to the parties.

<blockquote>

(i) *As Cayman Islands Law Makes Clear, This Is Not a Simple Breach of Contract Case*

</blockquote>

34.     The Adversary Complaint alleges that the Debtor breached its obligations under the LPA, which is governed by the law of the Cayman Islands, and MTA by allegedly failing to make a capital contribution in July 2020 in the amount of $625,000 (the "<u>July 2020 Capital Contribution</u>"). Adv. Compl. ¶¶ 36-41, 50-52, 59-61. This capital contribution was requested on account of management fees, not for sums needed to fund or maintain Falcata's portfolio investments that have been in wind-down since July 2019. *See* Childe Decl. ¶ 6; MTA (Recital G) (providing that Falcata and the Debtor desire for Falcata to sell its assets and liquidate). Moreover, the amount of the Debtor's contribution to Falcata on the date of the request for the July 2020 Capital Contribution was well in excess of such requested capital contribution. *See* Childe Decl. ¶ 6. Thus, there was plainly more than adequate invested capital to cover such expenses. *Id.*[6] Nevertheless, the General Partner alleges that the Debtor is a "Defaulting Partner" by citing to provisions of the LPA, but without analyzing what the terms actually mean and how they operate in the specific context of the relationship between the General Partner and the Debtor.

35.     To determine whether the General Partner has properly designated the Debtor as a "Defaulting Partner," a court must consider not only the express terms of the LPA and the MTA, but also whether the General Partner acted in accordance with its duties to the Debtor—the sole limited partner of Falcata—under various sources of Cayman Islands law. Those sources include:

---

[6] As set forth in the *Motion of the Foreign Representatives for Entry of an Order to Conduct Discovery Pursuant to 11 U.S.C. § 1521(a)(4), Fed. R. Bankr. P. 2004, and Local Rule 2004-1* [D.I. 53, 58] (the "<u>Discovery Motion</u>"), the Foreign Representatives have sought information related to, among other things, Falcata's financial performance, which the General Partner has inexplicably refused to provide.

(i) the Cayman Island's Exempted Limited Partnership Act, attached as **Exhibit A** to the Wood Declaration, which governs exempted limited partnerships in the Cayman Islands, (ii) principles of equity and common law as they relate to exempted limited partnerships, and (iii) Cayman's law of trusts, given that the General Partner holds all property and rights of Falcata on trust for the benefit of the Debtor. *See* Wood Decl. ¶ 20. Such law should be analyzed in light of the Debtor's status as the *sole* limited partner of Falcata and thus the *only* entity to which the General Partner owes duties. *Id.*

36. The reason a court must look to these other sources of Cayman Islands law is because the General Partner is not a simple commercial counterparty to the LPA, but has substantially broader and more complex obligations. *Id.* at ¶ 21. As the general partner of a Cayman Islands exempted limited partnership, the General Partner acts as a statutory trustee for the benefit of the limited partners, such as the Debtor. *Id.* The General Partner also owes fiduciary duties to the Debtor, including a duty to act in good faith and in the Debtor's interests, and it owes other duties arising in equity and common law in accordance with Cayman Islands partnership law. *Id.* These duties include a duty of utmost good faith, a duty to account, a duty to avoid conflicts of interest, and certain irreducible core duties as trustee, for example a duty to exercise fiduciary powers for the benefit of the beneficiaries of a statutory trust. *Id.* These duties are enforceable by the Debtor as the sole limited partner. *Id.*

37. In this case, the Foreign Representatives submit that the purported designation of the Debtor as a "Defaulting Partner," was invalid and a breach by the General Partner of its fiduciary obligations to the Debtor under these various sources of Cayman Islands law. The Debtor is Falcata's sole limited partner and the General Partner is supposed to be acting for the benefit of the Debtor as the sole beneficiary of the statutory trust (*i.e.*, Falcata). The General Partner's

decision to default the Debtor cannot have been taken for the benefit of any other beneficiary (*i.e.*, other limited partners) because the Debtor is the only beneficiary. Thus, the General Partner has apparently disregarded the Debtor's interest (the sole interest that it is supposed to act on behalf of) and taken steps that benefit no one but itself. Moreover, the General Partner has completely shut out the Foreign Representatives from obtaining information regarding, amongst other things, the General Partner's efforts to liquidate its assets (as it is required to do pursuant to the MTA) and to disclose what it plans to do with any capital gains made on the assets acquired with the Debtor's capital. Accordingly, under Cayman Islands law, the designation of the Debtor as a "Defaulting Partner" is invalid because the General Partner failed to exercise its powers appropriately and—what's more—the Debtor has viable counterclaims against the General Partner for breaching its duties.

38.     In addition, even if its designation of the Debtor as a defaulting partner was valid, as a statutory trustee, the General Partner cannot simply surrender its discretion and decision making powers to this Court by filing for declaratory relief. *See* Wood Decl. ¶ 23. Indeed, should the Bankruptcy Court decide to lift the stay to permit the Adversary Proceeding to go forward, it would need to consider complex questions regarding Cayman's law of trusts to determine whether it even has authority to declare that the General Partner may seek rights and remedies under section 5.4 of the LPA. The Bankruptcy Court would have to consider, as a matter of Cayman law, whether it is a breach of the General Partner's duties to Falcata and to the Debtor to have sought to surrender its decision making powers to the Bankruptcy Court in the manner in which it has.

39.     At bottom, the General Partner's apparent selfish and capricious actions make it unlikely that it will succeed on any claims against the Debtor in light of various principles of

Cayman's exempted limited partnership, trust, and common law. The General Partner's reliance on mere principles of contract law paint only part of the picture.

> (ii)     *As A Matter of Bermuda Law, This Court Cannot Issue Complete Relief Because the Debtor's Setoff Rights Will Be Litigated in the Bermuda Proceeding*

40.     Lastly, to completely liquidate the General Partner's claim in the Adversary Proceeding, a court would need to consider, as a matter of Bermuda law, amounts that may be set-off against the General Partner's claims. *See* Wood Decl. ¶ 16. Indeed, the General Partner's claim is likely subject to set-off against certain amounts, including partnership expenses that the Debtor paid on behalf of the General Partner and/or Falcata in June 2017 and June 2018 that total more than the July 2020 Capital Contribution, among other expenses. *See* Childe Decl. ¶ 7; Wood Decl. ¶ 16. Ironically, this would require that the General Partner provide the Foreign Representatives with documents and information related to its claim and potential setoff amounts—documents that the Foreign Representatives have sought for months but the General Partner has refused to provide as set forth in the Foreign Representatives' Discovery Motion. Again, the proper forum for any liability and any set-off to be considered is the Debtor's claim process in Bermuda, where there is a mechanism for the General Partner to submit a proof of debt, have its claim evaluated by the Foreign Representatives, and appeal any decision to the Bermuda Court. Wood Decl. ¶¶ 14-15. There is simply no reason for this Court to step into the shoes of the Bermuda Court here.

41.     In sum, if the Adversary Proceeding were to go forward the Court would be required to resolve complex issues of Cayman and Bermuda law that are best left to foreign courts. Simply determining that the Debtor breached the LPA and MTA and is a "Defaulting Partner" as a matter of contractual interpretation would not resolve the issues between the Debtor and the General Partner. These facts unquestionably militate against lifting the stay. *See In re Residential*

*Cap., LLC,* No. 12-BK-12020 (MG), 2012 WL 3249641, at *4 (Bankr. S.D.N.Y. Aug. 7, 2012) (denying relief from stay where "lifting the stay would not bring about a resolution of the issues").

> **(4)   Other Factors Considered by Courts Weigh in Favor of Maintaining the stay.**

42.     In addition to the three factors discussed in *Rexene*, courts have considered several other factors in determining whether relief from the automatic stay is appropriate.[7] The factors that are relevant plainly weigh in favor of maintaining the stay for many reasons discussed above.  To summarize:

> (i)    *Adversary Proceeding Would Not Resolve The Issues Between the General Partner and the Debtor*

43.     As discussed in Paragraphs 33-41, *supra*, the Adversary Proceeding would not lead to a full resolution of the issues between the General Partner and the Debtor. Liquidating the General Partner's contractual damages claim is not as simple as the General Partner portrays it to be, and such claim implicates complex issues of Cayman and Bermuda law, including counterclaims for breach of duty and setoff, that are best decided holistically through the Debtor's ongoing liquidation in Bermuda.

> (ii)   *Interference With The Debtor's Winding Up Proceeding*

44.     As discussed in Paragraphs 21-25, *supra*, permitting the Adversary Proceeding to continue would impede the Debtor's ongoing liquidation process in Bermuda where claims are

---

[7] These factors include (i) whether relief would result in a partial or complete resolution of the issues; (ii) lack of any connection with or interference with the bankruptcy case; (iii) whether the other proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (v) whether the debtor's insurer has assumed full responsibility for defending it; (vi) whether the action primarily involves third parties; (vii) whether litigation in another forum would prejudice the interests of other creditors; (viii) whether the judgment claims arising from the other action is subject to equitable subordination; (ix) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; (x) the interest of judicial economy and the expeditious and economical resolution of litigation; (xi) whether the parties are ready for trial in the other proceeding; and (xii) impact of the stay on the parties and the balance of harm. *In re SCO Grp., Inc*., 395 B.R. at 857 (Bankr. D. Del. 2007) (citing *In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d at 1287).

being channeled and may incentivize other parties to bring actions against the Debtor outside of Bermuda. The General Partner has not provided any justification for why it should be excepted from following the Debtor's orderly process in Bermuda to resolve its claim against the Debtor.

*(iii)    Specialized Tribunal With Necessary Expertise*

45.    The Bermuda Court overseeing the Debtor's winding up proceeding has the necessary expertise to liquidate Falcata's claim. Should the General Partner submit a proof of debt on behalf of Falcata and disagree with the Foreign Representatives determination of whether to admit or reject such debt in whole or in part, the General Partner has the right to make an application to appeal such determination to the Bermuda Court. *See* Wood Decl. ¶ 14.

*(iv)    Prejudice to Other Creditors*

46.    As discussed in Paragraphs 21-25, permitting the Adversary Proceeding to continue would prejudice other creditors that are abiding by the claims process in Bermuda and may incentivize other creditors to bring actions against the Debtor outside of Bermuda. The Adversary Proceeding could have an impact on distributions to other creditors and the General Partner's claim should thus be determined by the Bermuda Court.

*(v)    Judicial Economy and Expeditious and Economical Resolution of Litigation*

47.    As discussed in Paragraph 32, *supra*, judicial economy concerns weigh against lifting the stay. The Adversary Proceeding is a non-core matter and the Court cannot enter any final orders without the parties consent, but instead can only submit proposed findings of fact and conclusions of law to the District Court for *de novo* review. Further, the claims brought in the Adversary Proceeding do not involve issues of United States bankruptcy law and lifting the stay would thus result in an inefficient use of judicial resources because it does not require specialized knowledge of the Bankruptcy Court. *See In re Money Centers of Am., Inc.*, 579 B.R. 710, 715

(S.D.N.Y. 2016) (holding cause existed to withdraw the reference because "it is a waste of judicial resources for a court of specialized bankruptcy knowledge to administer a case that does not require application of that knowledge.").

### (vi) *Whether the Parties Are Ready for Trial*

48. As discussed in Paragraphs 28-29, *supra*, the Adversary Proceeding was just recently commenced and has not progressed past its initial stages. The parties have not tested the sufficiency of the Adversary Complaint nor have they commenced discovery and are not close to being ready for trial.

### (vii) *Impact of the Stay and Balance of the Harm*

49. As discussed in Paragraphs 21-27, *supra*, the General Partner has not articulated specific reasons of why maintaining the stay would result in any hardship or provided any evidence. On the other hand, lifting the stay would impede the Debtor's liquidation in Bermuda and cause prejudice to the Debtor. The balance of harms weighs in favor of maintaining the stay.

## **CONCLUSION**

For these reasons, the Foreign Representatives respectfully request that the Court deny the Relief from Stay Motion.

Dated: April 14, 2023
      Wilmington, Delaware

Respectfully submitted,

*/s/ Stephen J. Astringer*
**KOBRE & KIM LLP**
Jacob R. Kirkham (No. 5768)
Stephen J. Astringer (No. 6375)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6451
Facsimile: (302) 518-6461
jacob.kirkham@kobrekim.com
stephen.astringer@kobrekim.com

-and-

Adriana Riviere-Badell (admitted *pro hac vice*)
Evelyn Baltodano Sheehan (admitted *pro hac vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: (305) 967-6100
Facsimile: (305) 967-6120
adriana.riviere-badell@kobrekim.com
evelyn.sheehan@kobrekim.com

-and-

Adam M. Lavine (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Telephone: (212) 380-2580
Facsimile: (212) 488-1220
Adam.lavine@kobrekim.com

*Counsel to the Foreign Representatives*