UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                              ) Case No. 22-10261-TMH
                                    ) Chapter 15
                                    )
                                    )
                                    )
POINT INVESTMENTS, LTD.             )
(IN LIQUIDATION),                   )
                                    )
                                    )
                  Debtor.           )
                                    ) Wilmington, Delaware
                                    ) May 25, 2023
                                    ) 10:07 p.m.


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


For the Foreign            JACOB R. KIRKHAM, ESQUIRE
Representatives:           STEPHEN ASTRINGER, ESQUIRE
                           KOBRE & KIM, LLP
                           600 North King Street, Suite 501
                           Wilmington, DE  19801

                           ADAM M. LAVINE, ESQUIRE
                           JOHN CONTE, ESQUIRE
                           KOBRE & KIM, LLP
                           800 Third Avenue
                           New York, NY  10022

For the General            EDWARD H. TILLINGHAST, ESQUIRE
Partner:                   SHEPPARD, MULLIN
                           30 Rockefeller Plaza
                           New York, NY 10112

For the United States      WARD W. BENSON, ESQUIRE
of America:                DEPT. OF JUSTICE, TAX DIVISION
                           Post Office Box 227
                           Washington, DC  20044

Audio Operator:            Leslie Murin

Transcribed by:          DIANA DOMAN TRANSCRIBING, LLC
                         P.O. Box 129
                         Gibbsboro, New Jersey  08026-0129
                         Phone:   (856) 435-7172
                         Fax:     (856) 435-7124
                         Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                         <u>I N D E X</u>

2    <u>ARGUMENT</u>:                                      <u>PAGE</u>

3    RE: ENFORCE AUTOMATIC STAY

4    By Mr. Lavine                          8, 23, 34

5    By Mr. Tillinghast                         16, 30

6    RE: MODIFY AUTOMATIC STAY

7    By Mr. Tillinghast                             35

8    By Mr. Lavine                                  43

9    By Mr. Tillinghast                             54

10   By Mr. Lavine                                  58

11   By Mr. Tillinghast                             63

12   By Mr. Benson                                  64

13   By Mr. Lavine                                  65

14   By Mr. Tillinghast                             66

15   RE: DAMAGES

16   By Mr. Lavine                              68, 75

17   By Mr. Tillinghast                         72, 76

18   RE: 2004 DISCOVERY

19   By Mr. Lavine                              77, 80

20   By Mr. Tillinghast                             79

21   <u>RULINGS:</u>

22   By the Court                                   83

23

24

25

1          (The following was heard at 10:07 a.m.:)

2          COURTROOM DEPUTY:  All rise.

3          THE COURT:  Good morning, please be seated.  We are

4   on the record in Point Investments, Case No. 22-10261.  I'd

5   just ask for Zoom participants, when you're not being heard,

6   please turn off your camera, and in the even that you'd like

7   to be heard, you can turn it on, and I will recognize you, so

8   thank you.  Good morning.  Good to see you.

9          MR. ASTRINGER:  Good morning, Your Honor.  Stephen

10  Astringer of Kobre and Kim, on behalf of the foreign

11  representatives.  With me today, from Kobre and Kim, are my

12  colleagues, Adam Levine and John Conte.

13         Also with us, Your Honor, is Andy Childe.  My Childe

14  is one of the founding members of the professional fiduciary

15  firm, FFP Cayman, Limited.  He is one of the joint liquidators

16  and foreign representatives in this case, who we represent.

17         THE COURT:  Okay, very good.  Thank you.

18         MR. TILLINGHAST:  Good morning, Your Honor.  Edward

19  Tillinghast from Sheppard, Mullin, and with me is Robert

20  Burnett --

21         THE COURT:  Good morning.

22         MR. TILLINGHAST:  -- the FTI GP 1, and Joe Day and

23  Damani Simms and Mr. Butz, our local counsel.

24         THE COURT:  Good morning, Gentlemen.

25         MR. TILLINGHAST:  Thank you.

1          THE COURT:  Okay.  Please step up to the podium.  I

2    have a couple of questions, and I'm not -- I'm not prejudging

3    anything or in no way do I want to dictate how the parties

4    present their cases.  But I do have a threshold question, and

5    that's whether the central issues that I have to decide today,

6    which, in my view, are whether the filing of the complaint

7    constituted a violation of the automatic stay, and relatably,

8    whether I have authority to adjudicate the claims presented in

9    the complaint.

10          Why aren't those legal issues?

11          MR. LAVINE:  Your Honor, we believe they are

12   predominantly legal issues, I think, and counsel and us met

13   and conferred about the conduct of the hearing today.  There

14   are predominantly legal issues.  I think there are just a

15   handful of potential fact issues, which would be prejudice to

16   the Debtor or prejudice to the creditor, here, in the event

17   that the automatic stay -- I'm sorry -- in the event you

18   determine that the automatic stay applies, and then the

19   question becomes whether it should be lifted or not, there

20   could be a threshold factual question about prejudice.

21          Having said that, we also tend to believe that the

22   prejudice is clear, from the papers that have already been

23   submitted, and, frankly, under the legal arguments,

24   themselves.  What we had discussed before coming here today is

25   that because, while there are many papers in front of you, and

1   there's three separate motions and three separate items on the

2   Agenda, there is really only three issues, as we see it, and

3   so, perhaps, we could proceed in oral argument in that order,

4   as opposed to in the order of the motions.

5           The issues, as we see it are, first, whether the

6   stay applies in this Chapter 15 case to the adversary

7   proceeding.  Assuming it does apply, the issue becomes -- and

8   so, we would be happy to present, if it's okay with you, that

9   issue as it's own separate oral argument.

10          The second issue would be, should the stay be

11  modified, and that is where Your Honor could, perhaps, give us

12  direction if Your Honor believes that that is not a factual

13  issue, and therefore, we don't need witnesses, but I think we

14  did both intend to submit declarations into evidence,

15  particularly on the prejudice point.

16          And then, third, there is the final motion, which is

17  Rule 2004 discovery, and then I think we would also want the

18  opportunity to explain why, under the circumstances of this

19  case, this violation of the stay actually warrants the

20  imposition of costs.

21          THE COURT:  Okay, thank you, and I appreciate that.

22  I do have one -- one factual question that I'd like to ask

23  now, and kind of get it out of the way, although I expect you

24  might get to it in your presentations.  In your reply in

25  support of a motion to enforce the automatic stay, you -- you

1  said that the parties had agreed, in principle, on a tolling

2  agreement.  Has that tolling agreement become memorialized?

3          MR. LAVINE:  Yes, it has, Your Honor.

4          THE COURT:  Okay.

5          MR. LAVINE:  And I know that, at least our side, has

6  executed it, and I don't -- I haven't been on my email for the

7  last couple of hours, so I'm not sure.

8          MR. TILLINGHAST:  Yes.  The simple answer is the

9  agreement, itself, has been agreed to.  We got it from counsel

10 this morning.  They've signed it.  We just have to sign it.

11         THE COURT:  Very good, okay.

12         MR. TILLINGHAST:  We don't expect any changes.

13         THE COURT:  Okay.  Thank you, Mr. Tillinghast.  I

14 appreciate that.  That's all I've got to say, at this point,

15 and I certainly don't mean to interfere with how you'd like to

16 present your cases, so I'll leave it to you from here.

17         MR. LAVINE:  Okay.  So, then, I do think we should

18 proceed, as I suggested, and as counsel agreed, which is to

19 begin the oral argument, effectively on the issue of, does the

20 stay apply to a Chapter 15 case.

21         THE COURT:  Very good.  Okay.  I appreciate that.

22 Thank you.

23         MR. LAVINE:  Your Honor, but, before we --

24         THE COURT:  And I'm sorry, just because we don't

25 know each other, you're Mr. Lavine?

1          MR. LAVINE:  Yes, apologies.

2          THE COURT:  Thank you.  Okay.

3          MR. LAVINE:  Adam Lavine of --

4          THE COURT:  It's good to meet you, Mr. Lavine.

5          MR. LAVINE:  -- of Kobre and Kim, for the record.

6          THE COURT:  Thank you.

7          MR. LAVINE:  And before I actually get to the legal

8    argument, I did -- you know, we're conscious that this case

9    was transferred to Your Honor fairly recently, and so, we

10   thought it would also be helpful to give a quick summary of

11   the events that led to the filing of the Chapter 15 case, as

12   well as some background concerning the foreign proceeding,

13   itself, if Your Honor thinks that would be helpful.

14         THE COURT:  Sure.  Thank you very much, Mr. Lavine.

15         MR. LAVINE:  So, prior to its winding up, the Debtor

16   acted as an investment vehicle for an entity by the name of

17   Spanish Steps.  Spanish Steps was the Debtor's sole economic

18   shareholder.

19         And in September, 2020, Spanish Steps filed a

20   petition to liquidate the Debtor in the Bermuda courts, and

21   that was due to mismanagement and misappropriation of Debtor

22   assets.  In short, Spanish Steps wanted to appoint independent

23   fiduciaries with court supervision to take over the affairs of

24   the company and wind it down and liquidate it, in accordance

25   with the Bermuda Winding-Up Act.

1           And so, that petition was highly contested, and it

2    took over a year to resolve, and it was resolved in October,

3    2021.  And that's when the Bermuda court granted the petition,

4    placed the Debtor into a winding-up -- provisional liquidation

5    and appointed provisional liquidators, including Mr. Childe.

6    And then, it was approximately four months later, in February

7    of '22 when the Bermuda court converted that provisional

8    liquidation into a permanent liquidation, and this Chapter 15

9    was commenced about a month after that.

10          And the Chapter 15 was commenced for a very specific

11   purpose or it had a very specific cause, and that was that a

12   single contingent creditor of the Debtor sought to immediately

13   levy and seize the Debtor's assets in the U.S.  That

14   contingent creditor was the Internal Revenue Service.  And the

15   IRS maintained that it could seize the Debtor's U.S. property

16   on the basis that the Debtor is an alleged alter-ego of a U.S.

17   taxpayer, and that U.S. taxpayer allegedly owes about 1.4

18   billion dollars to the IRS.

19          To this day, no court has ever found that the Debtor

20   is an alter-ego of this taxpayer, and to this day, no court

21   has ever made a finding as to the underlying alleged

22   liability, this 1.4 billion that I referenced.

23          And so, as this is an ancillary proceeding, the

24   Debtor only filed one first day motion.  The first day motion

25   was a motion to apply the automatic stay to the Chapter 15,

1   because, despite its name, in Chapter 15 world, an automatic

2   stay is actually not automatic.  It doesn't attach on the

3   first day.  And so, that motion was highly contested by the

4   IRS, and following a contested hearing, Judge Stickles granted

5   the Debtor's stay motion, and she held as follows, and I'm

6   going to quote from the Judge's ruling.

7        Judge Stickles said, "The Debtor's need to prevent

8   distribution of its assets to a creditor is an emergency

9   justifying relief because premature distribution of Debtor's

10  assets could negate the Bermuda insolvency proceeding.

11       The fact that the Debtor is liquidating does not

12  lessen the harm of seizure of the Debtor's assets because the

13  Debtor will need to distribute those funds to its creditors at

14  the direction of the Court in Bermuda."

15       And so, following that ruling, a few weeks later,

16  the IRS withdrew its levies, and Judge Stickles granted

17  recognition of the foreign main proceeding, at which point the

18  automatic stay became permanent by operation of Section 1520

19  of the Bankruptcy Code.

20       And since that time, this case has been relatively

21  quiet in the Chapter 15, at least.  Abroad, in Bermuda and

22  elsewhere, the foreign representatives have been exercising

23  their mandate, that is, investigating the Debtor's financial

24  affairs, collecting and preserving estate assets, and that

25  including seeking discovery from third parties, formally or

1    informally, and by obtaining, for example, recognition of the

2    Bermuda proceeding, also, in Switzerland, where the Debtor has

3    sizable assets.

4          And last Summer, the joint liquidators called what's

5    -- what's called the meeting of creditors, and it was at that

6    meeting that the creditors voted for the foreign

7    representatives to continue their service, and they went from

8    provisional liquidators to permanent liquidators.  And that

9    required 50 percent of the claims in number and 50 percent in

10   amount for voting purposes, as opposed to claims admission

11   purposes.

12         And just last week, the foreign representatives

13   commenced the process of calling for proofs of debt, which is

14   essentially like setting a bar date here in the U.S.  And so,

15   I think that brings us to today's matters, and the first

16   issue, as I mentioned, which was whether the automatic stay

17   applies.

18         This is docket index number, at least on the

19   Debtor's motion, 52.  The motion seeks to enforce the

20   fundamental protections of the stay and declare, as void, the

21   adversary proceeding that had been commenced.  The adversary

22   proceeding asserts claims, pre-petition claims that fall

23   squarely within the ambit of Section 362(a)(1).

24         The general partner advances two main arguments as

25   to why the stay is not barred -- sorry as why the adversary

1   complaint is not barred.  First, the general partner asserts

2   that the stay only to property of the Debtor located in the

3   United States.  This argument is clearly incorrect.  The plain

4   text of Section 1520 makes clear that the automatic stay

5   applies to both the Debtor "and the property of the Debtor"

6   located in the United States.  So, clearly, it applies to, not

7   just the property in the United States, but also the Debtor.

8         At bottom, we think this argument can be disposed of

9   fairly quickly, and I'm not sure if -- frankly, we think this

10  point has effectively been conceded by the general partner,

11  and it seems they have abandoned it by not further raising it

12  in their reply or in their objection to the Debtor's stay

13  enforcement motion.  And so, our understanding is that the

14  core issue is now the home court rule and whether that is an

15  exception to the filing of the adversary complaint.

16        With respect to the home court rule, this is an

17  implicit, i.e. not express in the Bankruptcy Code, it's an

18  implicit exception to the automatic stay that some courts have

19  found exists where the adversary proceeding is the equivalent

20  of filing a proof of claim.

21        But the home court rule doesn't apply in Chapter 15.

22  And that's because the "home court" is the court overseeing

23  the foreign main proceeding, the Bermuda case.  And we think

24  the inapplicability of the home court rule is clear here.

25  It's clear from the structure of the Bankruptcy Code.  It's

1    clear from the legislative history of Chapter 15.  As

2    mentioned, the home court rule is an implicit exception.

3    Courts who have applied it, they reference Section 501 of the

4    Bankruptcy Code.  Section 501, as Your Honor knows, deals with

5    the submission of proofs of claim.

6            But Section 103 of the Bankruptcy Code makes clear

7    that 501 does not apply in Chapter 15 cases.  This makes

8    sense, because Chapter 15 is ancillary, and claims are

9    supposed to be submitted in the home court, i.e. the foreign

10   main proceeding.  So, given that 501 does not apply, there's

11   really no statutory basis to argue that the home court rule

12   should apply in this case.

13           Furthermore, there is another indication in the

14   statute that the home court rule does not apply, and we

15   reference this in our papers, and that is Section 1520(b) of

16   the Bankruptcy Code.  And this provision indicates -- sorry --

17   this provision is an exception to the automatic stay in a

18   Chapter 15 case.

19           And the exception says that, it is not a violation

20   of the stay for a creditor to commence a lawsuit in a foreign

21   country.  So, the general partner's argument that the home

22   court rule allows for the commencement of an adversary

23   proceeding in the U.S. to preserve its claim, that should just

24   be rejected as a matter of statutory interpretation, because

25   that argument, if accepted as true, would effectively void and

1  render meaningless the phrase found in Section 1520(b), which

2  says that there is an exception for creditors who commence a

3  case in a foreign country.

4          So, in addition to these statutory legislative

5  history points, we think case law is clear here, too.  As

6  detailed in our papers, multiple courts have found that the

7  automatic stay arising in a Chapter 15 case or the injunction

8  on proceedings arising under the old Section 304 of the

9  Bankruptcy Code, they stay the commencement of adversary

10  proceedings.

11          And the general partner does not cite any authority

12  from the Chapter 15 or from former Section 304 for its

13  argument that the home court rule applies.  Instead, it spends

14  pages citing cases from Chapter 7 and Chapter 11 that are all

15  distinguishable because they didn't involve a foreign

16  proceeding with the bankruptcy case being an ancillary

17  proceeding.

18          They do cite adversary proceedings filed in Chapter

19  15 cases, but these adversary proceedings do not involve the

20  adjudication of pre-petition claims, which is what is sought

21  here.  At most, they will sometimes cite cases where a

22  creditor seeks a threshold determination, and they come to the

23  court in advance and say, Judge, I want to bring this case;

24  does it violate the stay?  Of course, that wasn't done here,

25  and we'll get to that later.

1        Lastly, and this is the final point I'll make on the

2   application of the automatic stay, a lot is made in the

3   general partner's papers about how this seems unfair that they

4   need a place, they need an opportunity to bring their claim.

5   They shouldn't be forced to submit to the jurisdiction of a

6   foreign court in a foreign nation.

7        I would submit that there is -- not only is it fair

8   to require that, but it is the exact purpose of Chapter 15.

9   The enforcement -- stated otherwise, the enforcement of the

10  automatic stay, in these circumstances, is consistent with

11  principles of international commodity that underlie Chapter

12  15.  The entire purpose of Chapter 15 is to afford commodity

13  to the Bermuda proceeding and to channel claims to Bermuda to

14  promote an orderly and efficient liquidation in that court.

15       And so, for all of these reasons, declaring this

16  adversary proceeding void, in violation of the stay, and --

17  and, I guess, in this first threshold question, ruling that

18  the stay applies is entirely consistent with principles of

19  international commodity.

20       So, pending questions from Your Honor, I'll cede the

21  podium on this issue.

22       THE COURT:  Thank you.  I have no questions for you

23  now.

24       MR. TILLINGHAST:  Good morning, Your Honor.  Edward

25  Tillinghast from Sheppard, Mullin for the general partner.

1        In addition to the sort of background that counsel

2   has just laid out, there's a couple of things we would like to

3   point out.  In their recognition papers, they said that the

4   purpose of the filing was that the Debtor's corporate

5   structure was an -- this is a quote -- "was an untenable

6   situation that frustrated the Debtor's corporate purpose of

7   serving as an investment vehicle for Spanish Steps."

8        And Spanish Steps, it was alleged by the IRS, to be

9   an alter-ego for Robert Brockman on the tax levies for 1.4

10  billion dollars, which was the result of an indictment which

11  was attached by counsel for the Debtor as a massive tax fraud

12  scheme that was criminal nature.  Mr. Brockman died before the

13  trial started, so there was never a conviction.

14       And another thing that we think is important to

15  understand is that, in the Debtor's papers, they have attached

16  exhibits that show that the Debtor's assets are in excess of

17  3.2 billion dollars, and the claims are 6.8 million dollars.

18  And in the three years since the Bermuda case has been

19  proceeding, albeit, there was a period where the -- whether

20  there was going to be a liquidation was contested and one

21  thing or another.

22       Up until after all of the papers were due and filed

23  in this court for the motions before the Court today, they

24  never set a deadline for the proof of debt, which is the

25  equivalent of our bar date.  They then set it on May 19th,

Tillinghast - Argument                    17

1    several days after all of the papers were in, and they called

2    for claims to be filed in the Bermuda proceeding, I believe,

3    it's June 9th or 8th.

4          And that lack of a claims process is a point that

5    we've made in our papers.  And an important part of that is

6    the general partner nor the fund nor the manager have any

7    presence or ever have had a presence in Bermuda, so they're

8    not submit to Bermuda jurisdiction.  And something that I

9    understand from Bermuda counsel is that the claim process is

10   to adjudicate dollar claims against the Debtor in Bermuda.

11         The main thrust of the complaint is for declaratory

12   relief, which is an important difference, in terms of, as I'll

13   get to it, the lack of a forum for the general partner and to

14   have its claims adjudicated.  So, what we submit, and I'll get

15   to the specific arguments, that the Debtor is trying to do

16   here is argue that, unlike all of the other courts, where

17   there are adversary proceedings, and no one raises the issue

18   of the stay, because that -- the adversary proceeding in a

19   Chapter 15 is in front of -- just like this one -- in front of

20   the very court that administers the 362 stay.

21         And that's the whole purpose and background of the

22   362 stay and why the home court rule even exists, because it's

23   the very court, this court, one of its many responsibilities

24   is to administer the stay, the 362 stay.  And the home court

25   rule is premised upon, well, this court is administering the

1   stay, that is the bankruptcy case, that is the court that can

2   administer the stay.

3            And, although counsel seems to suggest that most --

4   that there are cases that are stayed or that the home court

5   rule doesn't apply, with very few exceptions, there are

6   adversary proceedings every day in this courthouse, in other

7   courthouse around the country where there are Chapter 15

8   debtors, and some party brings an adversary proceeding against

9   a debtor in a Chapter 15.  Granted, there are also ones in

10  Chapter 11 and Chapter 7, but I'll focus on the Chapter 15

11  ones, because that's the focus here.

12           So, what we would submit that the Debtor is trying

13  to do is create a new form of law that doesn't exist anywhere

14  else, and all the adversary proceedings in Chapter 15 would go

15  away, and that the distinction that they try to draw is not

16  factually accurate in all of the cases, but maybe more

17  importantly, it's, respectfully, a distinction without a

18  difference, because whether it's a pre-petition or whether

19  it's a declaratory judgment action, which ours is a

20  declaratory judgment action, the fact is, it's still an

21  adversary proceeding against a Chapter 15 debtor.

22           The 362 stay makes no distinction about -- the only

23  distinction it makes is as to post-petition things, but as to

24  pre-petition, it makes no distinction as to whether it's an

25  equitable relief or a law relief.  You know, is it for damages

1    or is it for declaratory judgment?

2             So, in getting to the home court rule and, I think,

3    the crux of the issue of whether the stay applies, 1520(a)(1)

4    says that 362 applies -- 362(a), where the stay is.  It

5    doesn't qualify it.  It just says, if there's recognition

6    under 1520(a)(1), 362 applies.  So, what we submit, as I am

7    sure Your Honor is well aware from our papers, is that once

8    you invoke 362, it's the whole 362.  It's the statute.  It's

9    the law that includes that, and it doesn't distinguish between

10   Chapter 7, Chapter 11, Chapter 9, Chapter 15.

11            So, it's well established with the 362 world, I'll

12   call it, that the home court rule exists.  And, as I said a

13   moment ago, the reason it exists is because, the very court

14   that's administering the case and the stay and whether there's

15   violations, whether there's not violations, the impact of it

16   and the exceptions to it and granting relief from the stay is

17   the court where the case is pending.  And essentially, an

18   adversary proceeding is a subpart of a bankruptcy case.  So,

19   we submit that it's this case, and it's Your Honor that

20   administers that stay, and therefore, the home court rule does

21   apply in a Chapter 15, just like in every other case.

22            And a second point is, is that the 362, under the

23   case law, as pointed out in our papers, is actually narrower

24   in a Chapter 15 than in a 7 and 11.  So, it would defy logic

25   to say that, somehow, it's not narrower in this case, and it's

1   broader, and it precludes all chapter -- all adversary

2   proceedings.  And we cite a number of cases, and by no means

3   do I intend the list in our papers to be exhaustive.  I mean,

4   we pulled up about 25 cases where there are adversary

5   proceedings in Chapter 15s brought against the debtor.  Some

6   of them are <u>Colonial Bankers</u>, <u>Wolverine Energy</u>, <u>Gyro Bank</u>,

7   <u>Volo Logistics</u>, <u>Aircraft Engine Lease</u>, <u>Duran</u>, <u>Peloton</u>, <u>CT</u>

8   <u>Investment</u>, <u>Hoch</u>, and they're all cited there in our papers as

9   examples of situations where adversary proceedings against a

10  Chapter 15 debtor have proceeded.

11         THE COURT:  Would it make a -- sorry to interrupt

12  you -- would it make a difference if the claims that you were

13  making in the complaint were purely declaratory in nature, and

14  you weren't seeking any legal relief, like, would that affect

15  the analysis at all?

16         MR. TILLINGHAST:  The way I would answer that, and

17  I've given a lot of thought to this, Your Honor, I think it

18  doesn't affect whether the home court rule applies, but it --

19  it -- the declaratory relief piece, when you look at it

20  holistically is probably stronger, if anything, if you follow

21  me, in terms of the fact that the home court rule applies.

22  Partially because, as I understand Bermuda law, the Bermuda --

23  and on its face, the notice for claims by June 9th is for

24  debt, and the declaratory relief is not really debt.  It's an

25  equitable remedy to determine, in this case, that there was a

1  default, that the Debtor has admitted in several places, and

2  that the partnership agreement provides certain rights, as a

3  result of being a defaulted partner.

4          So, I think it actually increases the -- or it

5  lessens the debatability, if you will, of the home court rule

6  applying.

7          THE COURT:  Right.  And maybe it's an issue to get

8  to when the evidence gets put on, and we have our Bermudian

9  experts, but the -- you know, the question to me of what sort

10 of relief may be available in a Bermudian proceeding to

11 determine equitable relief is something that I'm curious

12 about.

13         MR. TILLINGHAST:  Okay.  And, albeit, these are two

14 cases in the Ninth Circuit, and they are Chapter 11 cases --

15 one is Roxford Foods and one is North Coast -- where it talks

16 about -- and, granted, they are Chapter 11 cases -- but, as I

17 pointed out, whether it's Chapter 7, Chapter 11, chapter

18 whatever, Chapter 15, we submit it doesn't matter, because 362

19 doesn't differentiate between the chapters.

20         But the Ninth Circuit said, in Roxford Foods, the

21 stay does not operate against the court with jurisdiction over

22 the bankruptcy.  And, as I pointed out, we submit that this

23 court has jurisdiction over this case.  So, that's one point

24 that tries to -- we viewed it as Roxford Foods tries to

25 clarify, what is the home court.  And they follow -- Roxford

1  follows a case called <u>North Coast</u>, which is a Ninth Circuit

2  BAP decision, where it says, "it's illogical and would not

3  serve the purpose of the underlying automatic stay" to say

4  that the home court rule doesn't apply and that the stay

5  precludes adversary proceedings in the case.

6          So, when you take that all together, there is no

7  question that 362 incorporates this body of law, that 362 does

8  not stay adversary proceedings in the court that's

9  administering the case.  And, you know, for example, there is

10  -- there is a non-exclusion submission to jurisdiction in the

11  Cayman Islands.  If we had gone to the Cayman Islands --

12  that's not in this court -- presumably, we would have to come

13  to this court for relief from stay to proceed in the Cayman

14  Islands, and, but, we chose to commence it in this court

15  because of the home court rule.

16          So, those are the points on the home court rule and

17  the issue that we submit that the automatic stay does not

18  apply to preclude an adversary proceeding in the Chapter 15,

19  and I'll hold the rest for the second part of this --

20          THE COURT:  Okay.

21          MR. TILLINGHAST:  -- unless Your Honor has

22  questions.

23          THE COURT:  I don't.  Thank you.

24          MR. TILLINGHAST:  Thank you.

25          MR. LAVINE:  Your Honor, can I have a brief

1    rebuttal?

2            THE COURT:  Yes.

3            MR. LAVINE:  Thank you.

4            So, I'll take some of the issues in the order in

5    which they were just presented, and it started with the IRS

6    history.  We agree that's critically important here.  That's

7    why we provided the background, including Judge Stickles'

8    ruling.  I think what was left out of the presentation, of

9    course, is that our clients are professional fiduciaries,

10   independent of Mr. Brockman, now deceased, or the Brockman

11   Trust and Spanish Steps.

12           Moreover, they're overseen by a court, and they take

13   direction, frankly, from no one, because they're independent

14   fiduciaries.  That's point one on the IRS history.  Point two

15   on the IRS history is, it's a wonderful example of the danger

16   of modifying the automatic stay, and I think we'll get to

17   this, I guess, in the second part of the presentation today on

18   prejudice to the Debtor, but the IRS's position, at least

19   before the Chapter 15 was commenced, was that it can levy U.S.

20   assets, and -- and in IRS land, and I had to be taught this

21   when I first joined this team, a levy is not a lien.  It is

22   effectively an order of seizure, and it requires the person

23   holding the Debtor's property to turn it over, within 45 days

24   or effectively risk sanction.  And I forget if those were,

25   like, criminal or civil penalties, but it is dangerous for

1    anyone to disobey that IRS levy.

2            If we are to believe what Falcata is saying or the

3    general partner that they presumably don't intend to go to

4    Bermuda to submit to that court's jurisdiction to have its

5    claims adjudicated there, and it wants relief from stay from

6    this court, the question becomes, so where are -- where will

7    Falcata recover on its claims, because it does assert damage

8    claims here.  It does have that minimum $625,000 that it is

9    asserting, because that's the number they put in their papers.

10            And the fear that we would have, and, frankly, the

11   fear that Falcata should have, and the fear that all

12   creditors, depending on this ruling, could have is that the

13   IRS will come in, seek similar relief and not just adjudicate

14   claims, but start seizing assets.  And that's the risk that

15   Judge Sickles sought -- you know, did not want to occur, and

16   recognized that that is the precise reason why you have

17   orderly liquidation processes based out of a home court, this

18   case, the Bermuda.

19            And -- and to be clear, right, again, the reason

20   it's in Falcata's interest, as well, is because, again, a

21   levy, if it doesn't go through the Bermuda process, allows the

22   IRS, which has a 1.4 -- they maintain, a 1.4 billion dollar

23   claim, to seize all of the Debtor's -- effectively, all of the

24   Debtor's assets in the United States before all creditors,

25   including Falcata.  And that was the risk, of course, that the

1  judge was protecting against, and that risk exists, but it is

2  made meaningfully worse if Your Honor were to modify the stay

3  in this case.  That's the first rebuttal on the IRS.

4         The second is the bar date.  There was a lot of time

5  spent in the papers about how it's taken the foreign

6  representatives three years to commence that process.  I mean,

7  that's just incorrect.  As was conceded, it was about a year

8  before the case actually commenced.  If you will, that's

9  almost equivalent to, like, a chapter -- an involuntary, when

10  the bankruptcy case doesn't actually get started until the

11  involuntary becomes, like, an actual case, a bankruptcy case.

12         But, moreover, it wasn't -- and I mentioned this

13  earlier -- it wasn't until last Summer when the liquidators

14  became permanent liquidators, as opposed to provisional

15  liquidators.  And only permanent liquidators can commence a

16  proof of claim process.  So, there's not some sort of, like,

17  grand plan here or intentional delay by any means.  There's no

18  gamesmanship in commencing the bar date process last week,

19  when the briefing was filed.

20         It was the natural progression of a process, which

21  could not even start until last Summer, so, less than a year

22  ago.  Another point, and we'll probably get to this again

23  later in the presentation, where we talk about prejudice, the

24  general partner repeatedly says they have no presence in

25  Bermuda.  But let's back up for a second.  This is a fund that

1    has a single investor.  The single investor is a Bermuda

2    entity.  So, this "inherent unfairness" of having to force

3    them to go to Bermuda, the concept that that was, somehow,

4    unforeseeable when, actually, the only party that they were

5    doing business with and taking money from was a Bermuda

6    entity, I just don't -- we've never understood that argument,

7    Your Honor.

8             And, finally, declaratory relief.  Your Honor

9    mentioned this, too, like, this is not a declaratory judgment

10   action.  That's one of three claims here.  But I would like to

11   provide my answer to your question about --

12            THE COURT:  I'd like you to.

13            MR. LAVINE:  Yeah.  Would it impact it if it is a

14   purely declaratory relief complaint, the answer to that is,

15   no, because the same concerns that I have described exist,

16   including the floodgates concern of modifying the stay.  But

17   there is more.  What I belief the Bermuda law experts will say

18   is that, in a proof of debt -- and here's our understanding of

19   how the proof of debt process could work.  Even in the event

20   that the proof of debt forms are typically for money, and so,

21   perhaps, the general partner submits a proof of debt form for

22   $625,000, but it could also assert things like legal fees, and

23   it could also assert a four percent interest on a $625,000.

24            The basis for those two additional searches would be

25   the alleged default and the Debtor's status as a defaulting

1    partner.  And it would be up to the foreign representatives,

2    in their capacity as liquidators, to say, well, wait a minute;

3    the only reason they're claiming those monetary damages is

4    because of an alleged default.  And we, the liquidators, don't

5    believe that this default was properly noticed or properly

6    executed, and therefore, that is a natural place and

7    opportunity for the issue to be resolved in the Bermuda court.

8         And so, even if there -- all of that is asserted,

9    our money damages claim, through the proof of debt process, it

10   is highly likely, if not inevitable, that the declaratory

11   relief would be necessarily intertwined with the question of

12   money damages.

13        I would also add that, if money damages were not an

14   issue, an we're thinking about, like, future Chapter 15 cases,

15   because there's not a ton of case law, of course, in the

16   Chapter 15 world, it would -- it would also not be

17   inconsistent with Chapter 15 policies.  In fact, it would

18   promote Chapter 15 policies to say, under these circumstances,

19   the proper thing that someone doing international business, a

20   Cayman fund with a Bermuda investor, with a Delaware general

21   partner should do is respect foreign stays and moratoriums,

22   the same way that we, in Chapter 7 and Chapter 11 cases, would

23   like foreign creditors to respect our stays, including

24   extraterritorially.

25        And so, they are free to go to Bermuda and seek

1  relief from the Bermuda stay, the Bermuda moratorium and

2  commence their case in whichever jurisdiction they see fit,

3  under those circumstances.  That might be Cayman, where Cayman

4  -- where these contracts are governed by.  And so, I think

5  denying their relief, in this case, or -- or granting the

6  Debtor's motion to enforce the automatic stay will not close

7  them out from multiple avenues to adjudicate the -- the actual

8  declaratory relief.

9          Now, I do want to pause here, for a second, to talk

10  more about the declaratory relief, and we started our very

11  first motion with this point, but I think it's important to

12  understand, like, what's actually happening here economically.

13  Our clients, again, they are limited partners.  They

14  contributed capital to this investment vehicle.  I don't have

15  the number at my fingertips, but it's something -- and I don't

16  know if this is confidential, so I won't -- I -- well --

17          THE COURT:  Maybe that's for you to discuss, but --

18          MR. LAVINE:  Yes.

19          THE COURT:  -- but I think that that was information

20  that was redacted --

21          MR. LAVINE:  Okay.

22          THE COURT:  -- in the affidavit, but I'm familiar

23  with what the number was.

24          MR. LAVINE:  So --

25          THE COURT:  That was represented in the papers.

1          MR. LAVINE:  Well, and I think the particular

2    redacted number is the number that we believe is being

3    withheld or -- let me get to that.

4          There is a slightly smaller number, but it's in the

5    tens of millions that was -- that was actually the capital

6    that was contributed.  And our understanding is that nobody

7    else has contributed capital to this fund.  And what the

8    declaratory relief that they are seeking is to say, because of

9    the foot fault, of $625,000 -- of course, not by my clients,

10   but by former management who was kicked out for defrauding the

11   Debtor -- because of that foot fault, they would like to now

12   exercise Cayman law-governed remedies, including to -- to

13   take, effectively, significant amounts of the invested

14   capital, as well as upside.

15         Whereas, under normal circumstances, this was a

16   typical two-and-20 type of arrangement or I think it became

17   30, where -- and what I mean by that is, oftentimes, in

18   private equity, the general partner, as the manager, they get

19   an ordinary management fee, and then they get upside on the

20   profit.  But what they're trying to accomplish here is not

21   just to maintain their upside and get paid their $625,000

22   management fee, they actually want the return of our client's

23   capital.

24         That has wild implications for the value of this

25   estate.  And we put the number in the paper that you referred

1    to say that that issue, by the way, which is a pure Cayman

2    law-governed issue, and which is unsettled under Cayman and

3    Bermuda law, should be litigated in this court as opposed to a

4    Bermuda court is just something -- that's really why we're

5    here, Your Honor.  I think that's the economic point of why

6    we're all here today, with a lot of lawyers.

7                This is not a $625,000 issue.

8                THE COURT:  Thank you.

9                MR. TILLINGHAST:  Your Honor, may I respond to the

10   points that were sort of outside what --

11               THE COURT:  Yes, I'd like you to do that, please.

12               MR. TILLINGHAST:  Thank you.

13               First, as to the IRS, while I can't confess to being

14   a tax dispute lawyer, it's my understanding from the papers

15   that are on the docket, where the IRS agreed to certain

16   things, and from the law that the -- they are allowed to

17   proceed with an adversary proceeding under the Tax Anti-

18   Injunction Act.  So, that's a fact, as I understand the

19   papers, as well as the law.

20               And, as a sort of aside, I mean, one of the things

21   the Debtor said in their papers that I found to be quite

22   interesting, I'll say, they say they have counterclaims

23   against the general partner.  A counterclaim is normally in a

24   lawsuit, so they're basically saying, the general partner

25   can't proceed here, but we can against them, in the same case

1    that we started, which, to me, doesn't make a lot of sense,

2    procedurally or otherwise, but that's for another day.

3         Second point is, while they -- the liquidators were

4    not appointed until last Summer, it's still basically a year

5    that they didn't start a claims adjudication process.

6         Another detail point is that counsel said that the

7    agreements are controlled by Cayman law.  That's not correct.

8    The limited partnership agreement is controlled by Cayman law.

9    The master transaction agreement, which the claims are under,

10   as well as the limited partnership agreement are controlled by

11   Delaware law.

12        Another point is that if -- if the Court sees that

13   there is a distinction between money damage claims, which

14   there are two in the complaint and a declaratory judgment

15   claim, which there is one, as we talked about in my comments

16   before, it's acceptable to FDI to just proceed under the

17   declaratory judgment piece and leave the damages, the money

18   damages, for either the Bermuda court or whatever is

19   appropriate and whatever the client -- whatever the general

20   partner decides.

21        And there is a fundamental piece of the liquidators'

22   argument that is seeking to force this Delaware General

23   partner out of the country to a place where it doesn't have an

24   office, doesn't do business, has no presence, to litigate

25   their claims there, and that's against the U.S. policy of

1    allowing U.S. citizens or entities to litigate in the United

2    States, because that's where they are.  And that's -- when you

3    go back historically, not to be a historian, but that was a

4    significant reason for the federal court system in its

5    inception was to allow U.S. parties to litigate against

6    foreign parties who were subject to U.S. jurisdiction.  Here,

7    they filed this Chapter 15 and availed themselves of the U.S.

8    Courts.

9           Much of counsel's arguments really go to what I

10   would call more the merits of the complaint.  I would submit

11   that's for another day.  The fact is, the liquidators have

12   acknowledged that they did not pay the capital contribution.

13   And -- and this concept that there is a windfall is really --

14   it has no place in the issue of whether there is a stay.

15          We submit there is not a windfall.  It's strictly a

16   contractual and legal issue as to what the results are.  The

17   liquidators do not step into some super right that throws the

18   partnership agreement away and the master transaction partner

19   agreement and applies equity to whatever they are.  This

20   entity, Point, entered into an agreement with certain rights

21   for both parties.  We submit that they're bound to those

22   rights, and that's the substance of the declaratory judgment

23   that there was a default, and that, as a result of that

24   default, whatever remedies apply, apply.

25          And this Court, as well as courts in this district

1    have routinely interpreted foreign law for relatively

2    straightforward things like this, be it a Delaware law -- I

3    mean, be it Cayman law or Bermuda law.  So, all those sort of

4    factual issues really aren't -- don't belong in the argument

5    about whether there is a stay or not.

6              Unless Your Honor has other questions, that was all

7    I had.

8              THE COURT:  Again, it's probably an issue for the

9    Bermudian law experts, but, Mr. Lavine made a point that you

10   could seek stay relief in Bermuda to commence an action,

11   wherever you need to commence it.  Is that your understanding

12   of the Bermudian proceedings, that there is a mechanism to

13   seek relief from their equivalent of the automatic stay to

14   proceed with litigation?

15             MR. TILLINGHAST:  My understanding is a slight

16   difference of that, actually.  My understanding of Bermuda law

17   -- and I'm not a Bermuda lawyer, but I've had a lot of

18   conversations with Bermuda counsel about this -- is the

19   Bermuda stay only applies to parties that are subject to

20   Bermuda jurisdiction, and it does not preclude a party from

21   litigating outside of Bermuda.  So, for us to proceed --

22   putting aside the Chapter 15, for the general partner to

23   proceed outside of Bermuda, it would not have to go to Bermuda

24   to get relief from the stay.

25             But to your specific question, if it wanted -- and,

1   actually, if it wanted to litigate the -- the declaratory

2   relief aspect or any claim, it would have to go to the Bermuda

3   court and ask permission to start an action.  So it's

4   actually, the stay would preclude it from -- and that's one of

5   the points that we made in our argument is we are precluded,

6   and counsel made the argument that the Bermuda stay precludes

7   us from litigating anywhere in the world, and which, I would

8   agree, it precludes us from litigating in Bermuda, but not

9   outside of Bermuda.

10           So, part of our argument that we have no forum,

11  other than this court, to litigate is that we are stayed in

12  Bermuda from even commencing an action in Bermuda.  It's not

13  -- it's not like a bankruptcy case here, where you can come

14  in, and parties can litigate before the court that administers

15  the stay, and if it's an adversary proceeding in the case, we

16  would submit that you're free to do that without violating the

17  stay.

18           THE COURT:  Okay.  Thank you.

19           MR. TILLINGHAST:  Thank you.

20           THE COURT:  Yes.

21           MR. LAVINE:  Your Honor, this time I will actually

22  be quick.  The first was a reference to the counterclaims.

23  When we referenced counterclaims in our paper, we were

24  referring to the counterclaims that could be brought, not in

25  this adversary proceeding, which we don't think belongs here,

1    but in any proceeding in any jurisdiction, so that could be

2    Bermuda.  So it's totally consistent for us to say that we --

3    this is not a simple breach of contract claim.  There are

4    counterclaims and other matters.

5           The LP -- there's the LPA, governed by Cayman law,

6    the MTA, governed by Delaware law.  It is the LPA that they

7    are seeking this Court's approval for to exercise the

8    draconian remedies that I referenced, which is Cayman law

9    remedies, because it's in a Cayman law contract, and for which

10   we believe Cayman law doesn't allow them to exercise those

11   remedies.

12          THE COURT:  Okay.  Thank you.

13          MR. LAVINE:  I think with that, we can proceed to

14   the next phase of the case, and I think that is the general

15   partner's motion to modify the stay, and so I'm happy to cede

16   the podium for them to present on that issue first.

17          THE COURT:  That'd be fine.

18          MR. TILLINGHAST:  So, with respect to relief from

19   the stay, which we have a motion seeking relief, and this is,

20   obviously, assuming arguendo that there is a stay, we've

21   obviously taken -- take the position that there is no stay, so

22   relief from the stay wouldn't be necessary.  But, if the Court

23   was to view it that there is a stay, that needs to be

24   addressed whether it should be modified or not and

25   potentially, it sort of bifurcates things between money damage

1   claims versus declaratory judgment, which I commented on a

2   minute ago.

3           But, so if -- if there was to be a stay, the

4   standard -- and it's well established, obviously, the Court

5   looks to cause, whether there is cause to lift the stay.  And

6   the law in this district, as well as the circuit is very clear

7   that you look to the totality of the circumstances to

8   determine whether there is cause.  And, as we've alluded to

9   before, which I think the argument about whether there is a

10  forum for the general partner to litigate is, really, most

11  relevant to this -- to this cause piece.

12          We submit that there is no place for -- given the

13  existence of the Bermuda proceeding, and the existence of the

14  Chapter 15, if, in fact, there is a stay under 362, there is

15  no place to litigate the claim for this Delaware general

16  partner, other than before Your Honor, so it's deprived of the

17  forum, particularly as to the declaratory relief aspect, other

18  than forcing it to go outside the country.

19          And, as I pointed out before, that would violate the

20  strong and well established U.S. policy which is referred to

21  in our papers of not forcing U.S. entities to leave the 50

22  states to let everyone have jurisdiction or federal courts to

23  leave -- leave our -- its home country and litigate elsewhere.

24  And the -- as I also pointed out, the Bermuda proceeding, the

25  notice for this June 9th date, it specifically says, for a

1  claimed amount.

2          The declaratory relief is not for a claimed amount.

3  It's for declaratory judgment.  And the Third Circuit favors

4  lifting the stay when the non-debtor has no forum.  So, when

5  you look at it from our perspective, there's no place else to

6  litigate this claim, particularly the declaratory relief, so

7  to deprive the general partner of the option to litigate it

8  here, would basically discharge the claim or preclude it from

9  seeking relief.

10          And the other part of that is, in Delaware, there is

11  a three-year statute of limitations on this claim, and the

12  statute of limitations is viewed as procedural, although,

13  obviously, missing one is substantive, but the -- the Delaware

14  law, and in many states in the U.S., the applicable statute of

15  limitations is not, in this case, Cayman or Bermuda or

16  someplace else, it's the statute of limitations for the Court

17  that's hearing the case.  So, what we submit is the three-year

18  limitation is, in fact, what's applicable to a -- to a

19  contested proceeding or an adversary proceeding in this court.

20          So, and that -- that would run in July/August

21  depending on which notice letter you -- you take as the date,

22  because the notice of default and cure was July and August of

23  2020.  So, the general partner would be forced to miss the

24  statute of limitations, and thereby, on a statute of

25  limitations basis, be precluded from asserting it.  And --

1          THE COURT:  But is -- is that -- and I -- is that

2     true anymore, given that the parties have entered into a

3     tolling agreement?

4          MR. TILLINGHAST:  Well, I mean, the tolling

5     agreement actually contemplates a stipulation, so Your Honor

6     will see it, but what the tolling agreement does, and I guess

7     there's -- this gets into it a little more complicated, but

8     I'll explain it.  We have served Point in Bermuda in

9     accordance with Bermuda law.  And we filed a certificate of

10    service in this Court of that service.

11          The tolling agreement tolls the time to serve, which

12    actually is academic, at this point, because we've served, but

13    it also provides an extension of Point's time to respond, so

14    it's a mutual thing between both parties.  And it ties it to

15    when this Court makes a decision on the stay issue.  And it's

16    -- I would call it a very practical solution to a problem,

17    because we understood that, you know, it would probably be --

18    it would not be condoned by this Court, I'll say.  If the

19    Court was trying to decide the motion, and we were trying to

20    hold them in default for failure to answer, because the

21    complaint's been served, and we also didn't -- the other part

22    of the agreement -- which I have no objection to the Court

23    seeing the agreement, and Your Honor can sort of determine

24    what it means for itself, but I think it's pretty evident --

25    the other part of it is, is under the Federal Rules, you have

1    to serve a complaint within 90 days of filing.

2         Now, there is a carve-out for foreign -- for service

3    in a foreign country.  And, to be perfectly frank, we observed

4    that one of the liquidator's declarations were both signed in

5    the State of Utah.  We don't know where he is, and frankly,

6    the general partner, more importantly, doesn't want to risk

7    losing the statute of limitations or having the complaint

8    dismissed, as the Federal Rules would permit, if you go past

9    the 90 days without prejudice, and then we'd be outside the

10   statute of limitations, so we're sort of caught in a mess.

11        So, in a, maybe it's an abundance of caution or but,

12   just in a -- in a -- I would call it more of a prudence thing,

13   the tolling agreement tolls the time for the statute of

14   limitation.  It also tolls the time to effectuate service, and

15   it also extends the time for Point to respond and tying it to

16   when there is a decision on the stay, because counsel, as you

17   know, for Point has taken the view that the complaint is not

18   valid, so why would they answer it.

19        So, we wrapped it all into this agreement.

20        THE COURT:  That makes sense.  You know, relatedly,

21   what is the affect of 108(a) and, I guess, its Bermudian

22   counterpart on extending statutes of limitations, the pendency

23   of those proceedings?

24        MR. TILLINGHAST:  We understand Bermuda law to only

25   stay the claims that are asserted in Bermuda, and it doesn't

1   apply to a claim that there is a basis or is, in fact,

2   asserted here, so it's narrowed to Bermuda.  And, as to 108,

3   it's -- I don't have the statute in front of me -- but I think

4   it's 30 days after the -- there's a -- 108 has a limit of 30

5   days -- I'm looking for my copy of it -- but it doesn't solve

6   our problem.

7        (Pause)

8            MR. LAVINE:  Do you want to borrow my Code?

9            MR. TILLINGHAST:  Sure.  May I?

10           MR. LAVINE:  Yes, please.

11           MR. TILLINGHAST:  Thank you.

12           MR. LAVINE:  Here you go.

13       (Pause)

14           MR. TILLINGHAST:  So, it's 108(b), and it goes to

15  the later of, and sub-one is, "The end of such period,

16  including any suspension for such period occurring on or after

17  the commencement of the case or 60 days after the order for

18  relief."

19           Now, there is no -- I was going to say, about 30

20  days -- there is no order for relief in a Chapter 15.  So,

21  it's the end of the period, including any suspension of such

22  period occurring on or after the commencement of the case.

23  So, our concern is, is we're not protected by 108.

24           THE COURT:  I understand.

25           MR. LAVINE:  Your Honor, I think the appropriate

1  reference, though, is 108(c).

2           THE COURT:  Thank you.  I know it is.

3           MR. LAVINE:  I have a copy of the tolling agreement,

4  if that --

5           THE COURT:  Yes.

6           MR. LAVINE:  -- would be helpful.

7           THE COURT:  And I'll apologize, because I directed

8  Mr. Tillinghast to 108(a) and not 108(c), so he was answering

9  my question.  It was just the wrong question.

10           MR. TILLINGHAST:  I should have had my Code with me.

11           THE COURT:  If you want to pass up a copy of the

12  tolling agreement --

13           MR. LAVINE:  Sure.

14           THE COURT:  -- that's okay.

15           MR. LAVINE:  Yes.

16           THE COURT:  I'd be happy to have a look at that.

17           MR. LAVINE:  May I approach?

18           THE COURT:  Yes, please.

19           Thank you.

20      (Pause)

21           THE COURT:  I'm ready when you are, Mr. Tillinghast.

22           MR. TILLINGHAST:  Okay.  So, going back, if I may,

23  to the grounds and the totality of the circumstances to lift

24  the stay, if there is one, with Rexene which sets out the

25  factors for this district, we submit that Point has no great

1   prejudice.  That's -- one of the evaluations is whether there

2   is great prejudice to the Debtor.  And we submit that they --

3   they have little or no prejudice.  And actually, in a strange

4   way, there's an advantage because they specifically -- I know

5   counsel tries to change the use of the word counterclaim --

6   they specifically said they have counterclaims.

7           And to me, maybe I'm a procedural geek, but a

8   counterclaim is a very specific thing that is filed in an

9   existing action.  So, by having the adversary proceeding,

10  ironically, there is no prejudice, because it gives them the

11  forum to -- if they have one, not that we're saying they do --

12  but to assert any counterclaims.

13          And, secondly, as to prejudice, they submitted

14  themselves to the jurisdiction of this court, there is no

15  prejudice to them litigating a legitimate claim in the court.

16  And secondly, there is a severe hardship to the general

17  partner, because, as we've discussed before, there is the

18  statute of limitations at issue that we're very concerned

19  about, and the ramifications of missing that are draconian,

20  and there's no place else for them to litigate it, as we've

21  talked about before.

22          And then, the third factor in <u>Rexene</u> is probability

23  of success on the merits.  In at least three places, they've

24  acknowledged missing and not making a capital contribution.

25  In one place, they're actually -- and these are in their

1    papers that are filed in this court -- they've acknowledged

2    not making a capital call to Falcata, the partnership here.

3              So, we submit that there is actually a good

4    probability of the general partner prevailing, and when the

5    courts in this district are evaluating probability of success,

6    it -- the only standard is a so-called slight probability is

7    enough, so we think we're far above that, but just for

8    measuring purposes.

9              So, we submit that we've satisfied the cause

10   requirements of Rexene, and the requirements in this district

11   for a modification of the stay to allow the proceeding to

12   proceed.  And I think that's it on the relief from stay,

13   unless Your Honor has questions.

14             THE COURT:  No, thank you.

15             MR. LAVINE:  Your Honor, I do intend to go through

16   the Rexene factors, but first, I want to get back to the

17   fundamental point -- fundamental question, is there a forum

18   for these claims?  The answer is yes.  There is the Bermuda

19   proceeding, and despite counsel's entreaties that it is

20   somehow unfair or unjust or against federal court history in

21   this case, in this country for that to be required, I want to

22   read from a decision from Judge Silverstein.  This is In re:

23   Energy Coal SPA.  We cite it in our papers.  582 BR 629 from

24   2018.

25             And this is the quote, "U.S. bankruptcy courts have

1  not hesitate to require foreign creditors to file their claims

2  and to litigate in our courts, if they wish a distribution

3  from a U.S. debtor's estate.  It is equally appropriate to

4  expect U.S. creditors to file and litigate their claims in a

5  foreign-named bankruptcy case."  So, again, this is a false

6  premise that there is no forum but this court to adjudicate

7  the claim.

8          To the tolling agreement, and I guess we'll get to

9  the factors then, and this is -- I'm going to go out of order,

10 but factor two, whether the general partner will suffer

11 prejudice.  There is no prejudice, if they are required to

12 participate in the Bermuda claim adjudication process and to

13 seek recoveries in Bermuda just like every other unsecured

14 creditor of the Debtor.

15         They, nevertheless, argue three forms of prejudice,

16 but all of them are either moot or lack merit, and so, we'll

17 start with the tolling agreement and statute of limitations.

18 And I'll just read from the tolling agreement on page three,

19 which says, "The parties" -- and, Your Honor, I don't know if

20 you --

21         THE COURT:  I've got it in front of me, yes.

22         MR. LAVINE:  -- you'd like to read along, but --

23         THE COURT:  Yeah.

24         MR. LAVINE:  -- I'm on page three, paragraph one,

25 towards the bottom third of the paragraph.  It says, "The

1    parties further agree that, in the event the Bankruptcy Court

2    rules that the automatic stay stays the adversary proceeding,

3    but grants the general partner relief from the stay to

4    continue the adversary proceeding, the time between the

5    general partner's original filing of the adversary complaint

6    on March 6th, 2023 and the date of the Bankruptcy Court's

7    order granting the general partner relief from the automatic

8    stay shall be tolled, and the general partner's adversary

9    complaint shall thereby be preserved."

10           And so, I honestly don't understand why we're

11   talking about statute of limitations here.  We made arguments

12   in our paper as to why they are covered, and the statute of

13   limitations is tolled under 108(c).  As a matter of statute,

14   we argue and explain that the statute of limitations is tolled

15   under Bermuda law by operation of the statute in Bermuda.

16   And, now, we have the foreign representatives agreement that

17   we are not seeking to prejudice their right to bring their

18   claim.  We just want it to be brought in the appropriate forum

19   in a way that won't disrupt the liquidation of this debtor.

20           The next argument made for prejudice to the general

21   partner is that there is no claims process in Bermuda.  I

22   mean, that's false, and I think we've covered this, and it's

23   moot, as well.  The foreign representatives commenced the

24   proof of debt process.  They provided notice to all known

25   potential creditors, including Falcata, and Falcata now has

1   the forums for which they may submit their claim.  They can

2   submit their damages claim, and we have submitted and stated,

3   on the record, that we believe that will necessarily invoke

4   the declaratory relief issue, as well.

5         We've also mentioned that they are free to go to

6   Bermuda, at any point in time, and they've been free this

7   whole time to seek relief from the stay in Bermuda.  And then

8   -- and then, I guess, and the same prejudice factor I read

9   from Judge Silverstein's opinion, and then <u>Energy Coal</u>, which

10  explains that there is no prejudice, particularly in Chapter

11  15 cases to force U.S. creditors to go to the foreign main

12  proceeding.

13        But let's, then -- so we submit that, on balance,

14  there is no prejudice, whatsoever, that can be established to

15  Falcata, but let's talk about the prejudice to the Debtor.

16  I'll start with the topic we haven't discussed, which is, if

17  the automatic stay is lifted, even for just declaratory

18  relief, there is a risk of inconsistent orders by courts of

19  different jurisdictions.

20        For example, if Falcata fails to submit a proof of

21  debt by June 9th, that could result in the Bermuda court order

22  -- a Bermuda court order expunging the general partner's

23  claim.  Or, if the Debtor seeks the foreign law equivalent of

24  a discharge, Falcata will be prohibited from collecting

25  against the Debtor, as a matter of Bermuda law.

1          Those types of orders would be difficult, if not

2     impossible, to reconcile with the continued pursuit by Falcata

3     of their claims in the adversary proceeding.  And this risk of

4     inconsistent judgments is the exact opposite of what is

5     intended by the enactment of Chapter 15.  Chapter 15 focuses

6     on cross-border cooperation and commodity among courts and

7     nations.  And, effectively, by modifying the stay to permit

8     litigation here, again, there's a risk of inconsistent

9     judgments, which can cause prejudice to the Debtor, because,

10    at that point, the Debtor will have to answer to two different

11    courts in two different jurisdictions.

12          You know, separately, there is some suggestion in

13    Falcata's papers that, because the Debtor's balance sheet is

14    solvent, there is a suggestion that the foreign

15    representatives should be less concerned with estate costs.

16    But we reject that premise.  The liquidators are mandated to

17    maximize the value of the estate for all stakeholders.  There

18    is no authority for the proposition that cost efficiencies

19    attendant to channeling claims to a single proceeding that

20    those savings -- cost savings are more important in a solvent

21    case than they are in an insolvent case or I think I had that

22    backwards.  But they're more important in the insolvent case

23    than a solvent case.

24          As this Court knows, solvency is not a prerequisite

25    to the application of the stay.  The other prejudice to the

1  Debtor would be the floodgates concern.  And, here, the record

2  reflects that the Debtor has an international mix of

3  creditors.  Some are located in the U.S.  Some are in

4  Australia.  Others are in Cayman.  In certain instances, there

5  are Cayman funds with U.S. investment managers.

6       The foreign representatives have a justifiable

7  concern that modification of the stay will encourage other

8  creditors to seek similar relief.  And while this is an

9  investment vehicle, and it's not an operating debtor, so it

10 doesn't have, you know, thousands of creditors, there are

11 significant creditors.  And there are hundreds of millions of

12 dollars at stake.  There are significant amounts at stake with

13 respect to Falcata, and as we've referenced before, there is

14 up to 1.4 billion at stake with respect to the IRS, which, at

15 this point in time, is a mere contingent creditor.

16      Finally, on the merits, we believe this adversary

17 proceeding, which has not even progressed beyond service is

18 doomed from the start.  So, the jurisdictional issues here are

19 substantial.  This is a non-core dispute, and as the foreign

20 representatives have set out in their papers, there are

21 serious questions as to whether this court can or should

22 assert jurisdiction under both the Mandatory and Permissive

23 Abstention Doctrines.

24      Relatedly, this is, because it's a non-core

25 proceeding, the parties, unless they consent, this Court could

1  not issue a final judgment.  And so, again, there is prejudice

2  here of the Debtor, who would not only be forced to litigate

3  in -- outside of its home court and that process, but also,

4  potentially litigate at multiple levels, effectively trial

5  court levels.

6           Relatedly, and we say this in our papers, this is

7  not a simple breach of contract case and particularly on the

8  declaratory relief.  First off, the damages claim, like, yes,

9  we have conceded that a payment was not made.  We have not

10  conceded that that constitutes a default or that we are a

11  defaulting partner as a result of that missed payment.

12          Falcata, or the general partner, has discretion to

13  declare a default or not, and our position is that by

14  exercising -- its actual exercise of its discretion under

15  these circumstances of declaring Point a defaulting partner is

16  actually a breach of fiduciary duty.  And that is a pure

17  Cayman law issue, a, frankly, unsettled Cayman law issue, as I

18  think both foreign law experts have stated, because as we

19  understand it, there's never been a case, under Cayman

20  Island's law involving an exempt limited partnership with a

21  single limited partner.

22          And so, it's hard to say that they have a

23  substantial likelihood of success on a Cayman law issue that's

24  never been litigated in any court.  It is -- but it is, you

25  know, also equally clear, from our perspective -- and this

1   goes to jurisdictional issues -- that I think, even if the

2   automatic stay were modified, that it is highly likely that

3   once this court got into the issues or had to assess these

4   Cayman questions, it would -- it would agree with our position

5   that the Court should be abstaining, because there are better

6   jurisdictions to grapple with these novel points of Cayman

7   law.

8           There is also a set-off issue, Your Honor, with

9   respect to the actual cash claim of the $625,000.  The

10  Debtor's books and records reflect that the Debtor paid

11  certain fund expenses in excess of the amount that's being

12  claimed here.  That's a set-off issue that is properly best

13  handled by the Bermuda court as part of that claims

14  proceeding, because as Your Honor knows from -- well, set-off

15  is a highly specific bankruptcy issue, at least in the U.S.

16  It is the same in Bermuda, where it's a core Bermuda

17  bankruptcy issue.

18          Finally, and separate from the Rexene factors, you

19  know, there are a number of other factors that courts

20  consider, like the Sonnax factors, and they, too, weigh in

21  favor of not modifying the stay.  First, and these are

22  repeating some of the themes that we've already hit, the

23  adversary proceeding would impede the Bermuda liquidation

24  process.  The Bermuda court has the expertise to determine

25  whether to admit or reject the claims.

1        This adversary proceeding could prejudice other

2   creditors.  Judicial economy here is undermined.  And far from

3   being ready for trial, Your Honor, this is a case that has

4   commenced, and all that's happened is an agreement as to

5   tolling and service of process.

6        And, again, the general partner has just not

7   provided any actual meaningful, specific examples of

8   prejudice.  So, with that, Your Honor, we would rest.  I do --

9   I do have a housekeeping item --

10       THE COURT:  Yes?

11       MR. LAVINE:  -- which is that we did submit a lot of

12   declarations, and we did submit a joint witness list, a

13   declarations list, exhibit list, and so, I think we might as

14   well move that into evidence, as it's relevant to these

15   issues.  First, the foreign representative submitted

16   declarations from Mr. Andrew Childe, who is one of the foreign

17   representatives.  That's at docket index numbers 54 and 67,

18   and the foreign representatives also submitted declarations

19   from Mr. Jayson Wood.

20       The foreign representatives proposed a foreign law

21   expert.  That's at docket index numbers 68 and 78.  So, we

22   would like to move those into evidence.

23       THE COURT:  It's consensual, but I'll just ask for

24   the record, does anybody object to the admission of those

25   declarations?

1              (No audible response)

2         THE COURT:  Okay, I hear no response.  They are

3    admitted, and where there be cross-examination of any of those

4    witnesses?

5              MR. TILLINGHAST:  No.

6         THE COURT:  No?  Okay.

7         MR. LAVINE:  So, the general -- I left out the

8    general partner's declarations, which, since it's consensual,

9    I'm happy to just make a record.

10        THE COURT:  Right.  I can -- I can say for the

11   record that I have read them.  They do appear on the docket,

12   and they are admitted.

13        MR. LAVINE:  Okay.  Thank you, Your Honor.

14        THE COURT:  Can I take one side on here?  I think

15   it's just important to note, especially because I am a new

16   judge, and everybody is becoming accustomed to my practices

17   and preferences?  In the event of witnesses who are not going

18   to be cross-examined, as long as we have Zoom available, I am

19   happy for them to appear by Zoom.  But it is an area where the

20   Court has to be apprised that this is going to happen, and

21   because the general rule and, certainly my chamber's

22   procedures, it says that all participants must be in-person

23   unless they're -- certain exceptions apply.

24             Those requests need to come to me in an explicit

25   way.  The requests that the witnesses who are abroad could

1  appear by Zoom was presented on page three, footnote two in

2  ten point font in the witness and exhibit list.  And we do

3  read things very closely, and we did note that it was there.

4  But I think the best way for you to get a response on such a

5  request would be to make it directly to chambers.  It could be

6  directed to my chambers' staff and in sufficient time so that

7  it really becomes a request, rather than a statement that the

8  witnesses are not going to be here.  But it does have to be

9  directed to us in an explicit way, rather than through a

10  footnote.

11         MR. LAVINE:  We apologize for that oversight.

12         THE COURT:  No, it's fine.  I just want to make sure

13  that everybody is familiar with my --

14         MR. LAVINE:  Yes.

15         THE COURT:  -- preferences and practices.

16         MR. LAVINE:  Thank you, Your Honor.

17         With respect to the general partner's witness, if

18  it's okay with Your Honor, I'd just like to confer with my

19  team and client about whether we intend to proceed with cross-

20  examination.

21         THE COURT:  Sure.  Take a moment.

22         MR. LAVINE:  Thank you.

23         MR. TILLINGHAST:  Your Honor, just while -- I have

24  some response to the arguments.

25         THE COURT:  Yes, of course.  Thank you.

1        (Pause)

2            MR. LAVINE:  Your Honor, we're not going to proceed

3   with any cross-examination.

4            THE COURT:  Okay.  Thank you.

5            Mr. Tillinghast?

6            MR. TILLINGHAST:  Thank you, Your Honor.  A few

7   points.  First -- I think they're in the order that counsel

8   addressed the Court -- first, as to inconsistent orders.  One

9   thing that I think is important to understand is, what I

10  understand from Bermuda counsel is that, in Bermuda in a

11  liquidation, there is no discharge or release.  And that sort

12  of completely negates the issue of inconsistent orders.

13           So, in other words, the way I understand Bermuda law

14  is that, if you don't file a claim, you don't get a dividend,

15  as we would call it, and interestingly, if you don't file a

16  claim by June 9th, you don't get a dividend, if one is made a

17  result of -- subsequent to that.  But if there is a subsequent

18  distribution, and you file a claim after June 9th, but before

19  the subsequent distribution, you get a distribution on that.

20           So, it's not like our system where it's kind of like

21  a statute of limitations, but most importantly, there is no

22  discharge on the liquidation, which is similar to our system.

23  And so, if, hypothetically, there is no claim filed in

24  Bermuda, because the general partner doesn't wish to submit to

25  jurisdiction and go through the expense and what not of

1   litigating in a foreign court, it doesn't -- the claim doesn't

2   get discharged, it just doesn't get a payment plan.  And then,

3   and obviously, it goes without saying that the general partner

4   has -- has made a calculated, thoughtful decision to litigate

5   in its home state, and the court that's in that state before

6   Your Honor, and it's not really a question of, if there a

7   better court; it's a question of, does the -- should the stay

8   be modified, not a question of what the Rexene factors aren't

9   looking at as, could it be litigated somewhere else that's

10  "better".  It's a question of, is there -- is there a basis to

11  modify the stay to allow this Court to hear it.

12          And as to the floodgates issue, the Debtor has been

13  quite clear in their -- in their filings and attachments that

14  -- and I've read them all.  The only thing that I see that

15  they have in the United States is an investment in Falcata,

16  which is a Cayman entity that the general partner is here in

17  the United States, and Falcata's place of business is in

18  Texas.

19          An entity called Vista, which is also in the United

20  States, and -- I mean creditors -- excuse me.  Let me rephrase

21  that.  The only creditors they have in the United States is

22  the IRS, which we've talked about, Vista and Falcata.  So,

23  this concept that thousands of cases are going to be filed or

24  hundreds or dozens, even, is just a misnomer.  It's just

25  hyperbole.

1        And as to abstention, which Point made this argument

2    kind of, in passing, I'll call it, in their papers, and we

3    have addressed it in our reply papers, there is obviously --

4    there is two types of abstention.  There is mandatory, where

5    the court must abstain, and that can only be done when there

6    is a pending action that's actually in existence and pending.

7    And there is no pending action that's pending, so mandatory

8    abstention is not an option.

9        The other option is permissive.  And, just going

10   back to mandatory, it's under 1334(c)(2).  And as to

11   permissive, which is 1334(c)(1), it specifically excludes

12   Chapter 15.  So, as we argued in our papers, this idea of

13   abstention isn't really an option for this situation.

14       THE COURT:  Well, on the issue of mandatory

15   abstention, wouldn't the foreign main proceeding be the

16   pending action?

17       MR. TILLINGHAST:  We would submit no, because there

18   is not an action to determine or, as we understand it, the

19   ability for declaratory judgment.

20       THE COURT:  Okay.  And then the issue about Cayman

21   law and the issues raised about it is complicated.  In our

22   foreign law expert opinion, and we have ones from Bermuda as

23   well as Cayman -- Point only has one from Bermuda -- they

24   address this issue of the default.  And it makes it very clear

25   that the first place to look is the agreement.  And then

1    Cayman law has, you know, there's other pieces of it, but the

2    first place to look is the actual agreement, which provides

3    the rights, so we would submit that it's not that complicated,

4    and this Court adjudicates Cayman law and other -- and Bermuda

5    law and other jurisdictions' laws on a regular basis.  And the

6    other thing is, and I believe it's in the Cayman law

7    declaration from Cayman counsel is that Cayman -- Cayman law

8    and judges often look to Delaware government's law as the

9    premier government's body of law.

10         So, we would submit that it's not such a big,

11   complicated issue.  It's reading an agreement, and evaluating,

12   to the extent Cayman law has applicability for the limited

13   partnership agreement, and then it's Delaware law for the

14   master transaction agreement, which are both referred to in

15   the complaint.  So, we don't think that's an issue, really.

16         And as to set-off, under Bermuda law, and, again,

17   the Bermuda law declaration covers this, under set-off in

18   Bermuda, as I understand it, it's something that automatically

19   is deemed to happen when the case is filed.  So, it's already

20   happened.  There's no argument, that the Court wouldn't have

21   to decide whatever set-off has to do with the case, if

22   anything at all.  And it's as to money damages only.  It's not

23   as to declaratory relief or equitable principles.

24         And, you know, much has been made in the papers and

25   in arguments about, well, the proceeding hasn't gone very far,

1    so it's going to take a long time.  That -- the proceeding was

2    filed in March, and we -- we're now in the end of May, and

3    we've been litigating this issue of the stay.  It's -- you

4    know, we're prepared to proceed as quickly as possible on it,

5    and I -- that's -- I would submit this issue of, well, it's

6    going to take a long time, and it really is in its infancy is

7    not an issue, there isn't even an action filed in Bermuda for

8    it.

9            So, it's even further behind.  At least it's framed.

10   The issues are framed before Your Honor in the complaint.  So,

11   that's what -- unless Your Honor has further questions?

12           THE COURT:  I don't.

13           MR. TILLINGHAST:  Thank you.

14           THE COURT:  Thank you.

15           MR. LAVINE:  Your Honor, we have a few rebuttal

16   points, and I'm going to stick largely to the Cayman and

17   Bermuda law declarations that were filed by the general

18   partner.  Before we get there, our -- we submitted a

19   declaration from a Cayman and Bermuda law expert.  It just

20   happens to be the same person, so I just wanted to correct the

21   record on that.

22           We stand by our position that this is not a simple

23   breach of contract claim, and that nothing about this case is

24   simple.  That is especially true under foreign law, and that

25   does go to the question of why it would be appropriate,

1  eventually, we believe, for this Court to abstain, but it also

2  goes to show that it's impossible for the general partner to

3  prove their likelihood of success on the merits, given the

4  scant case law on these issues.

5        And so, I'll read from the general partner's

6  experts.  The first is Bermuda law expert, Mr. Miles.  Counsel

7  has stated that set-off is clear cut and easy in Bermuda.  I

8  think that was a reference to an insolvent liquidation.  As

9  we've referenced, this is a solvent liquidation.  So, I'll

10  quote from Mr. Miles.  This is paragraph 23, "No reported

11  Bermuda authority that I have identified has determined the

12  question whether insolvency set-off applies in a solvent

13  liquidation."

14        So, this would be a -- if set-off issues arose in

15  the adversary in some sense, this would be an issue of first

16  impression in any court.

17        I'll turn to Cayman law issues.  Again, the critical

18  aspect of Cayman law is whether declaring the Debtor a

19  defaulting partner was a breach of fiduciary duty.  The second

20  issue will be -- and I don't think this has come up before.

21  It's critically important -- if Falcata or the general partner

22  seeks to exercise its draconian remedies, would that, too, be

23  a breach of the general partner's fiduciary duties since the

24  general partner has a fiduciary duty to our client, as the

25  only limited partner.

1          And I'll quote from Mr. Levers -- from his

2    declaration, where he states in paragraph five, "Case law in

3    exempted limited partnerships in the Cayman Islands is scant,

4    and those Cayman cases, on exempted limited partnerships that

5    are recorded in the CILR relate primarily to their winding-up

6    and dissolution.  There are, necessarily, no English cases

7    relating specifically to exempted limited partnerships since

8    English law has no equivalent to the ELP Act.  But where the

9    issues involved deals with matter of general principle,

10   English law may, nonetheless, assist with the interpretation

11   of the ELP Act."

12          And so the statements and the ultimate conclusion

13   reached by their foreign law expert, as to Cayman law, is

14   based, not on any reported Cayman law decisions, but it seems

15   to be based on analogies to English case law, when he's also

16   stating that English law doesn't even have exempt limited

17   partnerships.

18          I'll quote, further, paragraph 33, "Whilst this is

19   not a point which has arisen before the Cayman Islands courts

20   previously in the context of exempted limited partnerships, I

21   am confident that they would adopt a similar approach".  So,

22   again, an admission from their own expert that the Cayman

23   Islands courts have not dealt with these issues.

24          Paragraph 34, "For completeness, I note that while

25   there are no authorities in the Cayman Islands which have

1  considered the duties of a general partner in the context of

2  an exempted limited partnership with a sole limited partner

3  and as a general amount of legal principle, there is no reason

4  why the approach set out above should not be adopted in that

5  circumstance."

6          So, again, you have -- if this case were to proceed,

7  Falcata will be asking Your Honor to make new Cayman Island

8  law, and in some instances, make new English law.  Or, at

9  least, what they are saying is, you'd have to analogize the

10  English law, but there's no, even, case on point in England.

11  And, so, again, this goes to the permissive and mandatory

12  abstention -- abstention points.

13         I do -- following on, on permissive abstention,

14  there is an -- the general partner raises the argument that

15  permissive abstention does not apply here in the plain terms

16  of the statute.  They reference Section 1334(c)(1), which says

17  that it does not apply to a "case" under Chapter 15.

18         But then, this is not a case under Chapter 15 or, at

19  least, the adversary proceeding is not a case under Chapter

20  15.  What that statutory -- what that statute references is,

21  is that Congress wanted cases, i.e., the Chapter 15 main

22  proceeding to be a part -- to not allow courts to abstain from

23  those.

24         There is -- on this issue, too, I think, though

25  there is scant cases, but at least one case that they cite

1   holds precisely -- is on force with exactly with what I just

2   stated.  That case is the -- I think it's <u>Orams (ph) vs.</u>

3   <u>General Nutrition</u>, which confirms the view that I just

4   described, which is that case, under 1334(c)(1) can only be

5   read to mean, like, the ancillary case, not an adversary

6   proceeding or other proceeding that arises within that -- or I

7   guess in this case, that is related to that Chapter 15 case.

8           And we will -- again, I don't think it's an issue

9   for today that Your Honor has to decide issues of mandatory or

10  permissive abstention.  Your Honor need not write that into

11  any decision.  However, it clearly goes to the question of, is

12  it appropriate to lift the stay.  And when there are serious

13  jurisdictional questions, we submit that they cannot meet

14  their burden to show that it would be an efficient use of

15  resources and that cause would exist to lift the stay at this

16  time.

17          Thank you, Your Honor.

18          THE COURT:  Thank you.

19          MR. LAVINE:  I said thank you, Your Honor, as if we

20  were done for the day, but I don't think we are.

21          THE COURT:  We're not done for the day.  And I want

22  to check, first, to see if Mr. Tillinghast has anything he

23  would like to add in response to your recent comments.

24          MR. TILLINGHAST:  If I may have just a minute, Your

25  Honor?

1              THE COURT:  Yes, you may.  Yes.

2          (Pause)

3              MR. BENSON:  Your Honor, this is Ward Benson for the

4    Department of Justice, representing the IRS.  If possible,

5    could I be afforded the chance to speak on this issue?

6              THE COURT:  Yes, Mr. Benson.

7              MR. BENSON:  I'm happy to wait until everyone else

8    is done, but --

9              THE COURT:  Okay.  Let's just see.  We'll give Mr.

10   Tillinghast and his colleagues a moment to see if they'd like

11   to add anything else, and then we'll turn to you.

12         (Pause)

13             MR. TILLINGHAST:  Your Honor, really, I don't have

14   anything other than to just point out that under <u>Rexene</u>, and

15   this isn't to say that we don't think we have a high

16   probability of succeeding -- we actually do -- but the test is

17   a slight probability is sufficient.  And they have

18   acknowledged that they've missed a payment, and I would

19   respectfully submit that this Court determines difficult

20   issues all the time.  And just because that it might be --

21   which we don't think it's all that complicated -- but it may,

22   in argument, I'll say, be complicated, doesn't mean that this

23   Court isn't fully capable of doing that.

24             And to the extent it is complicated, it's going to

25   have to be adjudicated by a court.

1            THE COURT:  Thank you.

2            MR. TILLINGHAST:  Thank you.

3            THE COURT:  Mr. Benson?

4            MR. BENSON:  Thank you, Your Honor.

5        We haven't taken and aren't going to take a formal

6    position on any of the disputes regarding this adversary

7    proceeding, the stay issue, in part because we want to

8    preserve our right to seek relief at some point in the future.

9            But I just wanted to alert Your Honor that, as in

10   many Chapter 15 cases, in this case, there is an issue as to

11   whether the foreign main proceeding is happening in a forum

12   that is actually fair to the foreign creditors.  Mr. Lavine

13   referenced prior management being removed for mismanagement,

14   and part of the mismanagement referenced by the Bermuda court

15   was his cooperation with the Department of Justice in its

16   investigation of Mr. Brockman.

17           And so, I would just ask that however Your Honor

18   chooses to rule, and we're taking a position on that, Your

19   Honor recognize that U.S. parties need to be able to come to

20   U.S. bankruptcy courts in Chapter 15 cases and seek relief,

21   premised on arguments that the foreign main proceeding is not

22   going to treat them fairly, and whatever kind of relief is

23   permissible, I'd just ask Your Honor recognize that we, at

24   least, need, as a matter of due process, and a matter of

25   international commodity Section 1506 of Chapter 15, we need to

1  be able to come and, at least, ask for some kind of relief

2  that may be contrary to the general principles of commodity.

3          THE COURT:  Great.  Thank you very much, Mr. Benson.

4  I appreciate those comments.

5          Does anybody wish to respond to Mr. Benson's

6  comments?

7          MR. LAVINE:  Yes, Your Honor.

8          I would just respond as follows, which is that what

9  Mr. Benson just described is not what Falcata is stating

10  today.  They are not stating that they believe the Bermuda

11  process to be unfair.  They haven't submitted any evidence to

12  that effect.  This case was commenced and premised, and the

13  Court necessarily found that the process was fair and

14  deserving of recognition.

15          Instead, Falcata is saying, they just don't want to

16  participate.  That is different than what Mr. Benson, DOJ or

17  IRS may choose to say in the future, and we may have that

18  debate in the future, but it's really not before Your Honor

19  today.  And, again, that's not an argument being made by the

20  general partner.

21          The next topic on --

22          THE COURT:  Well, hold on just a second.  I see Mr.

23  Tillinghast conferring with his colleagues, and I just want to

24  see if he has anything he wants to add to that discussion

25  about the fairness.

1          MR. TILLINGHAST:  Thank you, Your Honor.

2      (Pause)

3          MR. TILLINGHAST:  Just a brief comment, Your Honor.

4          THE COURT:  Yes.  Why don't you approach the podium,

5  Mr. Tillinghast?

6          MR. TILLINGHAST:  Thank you.

7          As Your Honor can probably sense, we view this

8  largely as a U.S. bankruptcy law issue, whether there is a

9  stay, whether it should be lifted, so we've never raised it,

10  but my understanding throughout the whole process is Bermuda

11  has not been particularly friendly to the general partner, and

12  if Your Honor wishes to have a separate set of briefings on

13  issues about Bermuda, we could certainly do that.

14          But, as we've said, we are firmly entrenched, and we

15  want this litigation decided in this court, where the general

16  partner is formed.

17          THE COURT:  Okay.  Thank you, Mr. Tillinghast.

18  Okay, Mr. Lavine?

19          MR. LAVINE:  Your Honor, would you be amenable to a

20  five minute recess?

21          THE COURT:  Yes.  Yeah.  Okay.  We're in recess.

22  We'll be back at 12:05.

23          MR. LAVINE:  Thank you.

24          (Recess, 11:57 a.m. to 12:06 p.m.)

25          COURTROOM DEPUTY:  All rise.

1              THE COURT:  Please be seated.

2              MR. TILLINGHAST:  Your Honor, if I may just clarify

3    one point, because I think I inferred something that's not

4    correct?

5              THE COURT:  Yes, please do.

6              MR. TILLINGHAST:  In sort of the tail end of my

7    statements, I think I suggested that that the Bermuda court

8    had -- had directed some unfairness to the general partner.

9    It wasn't to the general partner, because the general partner

10   has never been there, but what I was picking up on and

11   pointing out was, in the decision, I believe it was appointing

12   the provisional liquidators that became liquidators, which was

13   submitted by Point to Your Honor, there is discussion by the

14   Bermuda judge that they viewed it as, as essentially a breach

15   of fiduciary duty by the management of Point to cooperate with

16   the Department of Justice in the United States over the tax

17   claims they're billing for.

18             THE COURT:  Okay.  Thank you for clarifying that.

19   Okay, so I suspect your approaching the podium to talk about

20   what I'm about to ask you which is, where are we going?

21             MR. LAVINE:  Yes, Your Honor.  I think there are

22   still two issues which we haven't had oral argument on.  I

23   think they are significantly less complex and, hopefully,

24   easier -- quicker to get through than what we've had so far.

25   Those issues are, are the foreign representatives entitled to

1   damages for wilful violation of the stay, and then, finally,

2   the third item on the Agenda, which is the foreign

3   representatives' pending Rule 2004 discovery motion.

4            THE COURT:  All right.

5            MR. LAVINE:  So, if it's all right with Your Honor,

6   I can proceed on the damages point.

7            THE COURT:  Yes, let's do that.

8            MR. LAVINE:  Okay.  So, Your Honor, the procedural

9   history here is that we had served informal discovery -- the

10  foreign representatives had served informal discovery on the

11  general partner.  We were expecting -- we had received, months

12  earlier, responses and objections, which were, in our view,

13  deficient, but we were, nevertheless, in the process of

14  negotiating in what we believed to be good faith towards some

15  sort of consensual production.

16           On the same day that we were expecting more fulsome

17  responses to the discovery requests, we -- instead, the

18  general partner filed its adversary complaint.  Subsequent to

19  that, the foreign representatives, through counsel, sent a

20  letter to the general partner's counsel stating our belief

21  that the commencement of the adversary complaint was in breach

22  of the violation of the automatic stay, and we stated that,

23  unless you withdraw your complaint within 48 hours, we intend

24  to seek all remedies and relief that may be available to us,

25  including wilful violation of the automatic stay.

1       And we cited cases that we have continued to cite in

2  our briefing about how, you know, in Chapter 15 cases, it is

3  not appropriate to commence adversary complaints, and that one

4  should, instead, proceed through the foreign main proceeding.

5  Rather than respond to that letter, rather than narrow the

6  claims or seek to meet and confer, instead, they filed their

7  affirmative motion.  It wasn't a motion for relief from stay.

8  It was a motion to confirm that the stay doesn't apply or, in

9  the alternative, a motion for relief from stay.

10      We had, because we had been preparing it, we had our

11 motion for a stay violation ready to go, and then, subsequent

12 to their motion, we filed ours, and the reason you have two

13 pending motions is because there are slightly different

14 standards, one, and two, we needed our own relief.  And our

15 own relief was voiding of the actual adversary complaint, but

16 also damages for wilful violation.

17      The general partner has asserted a wilfulness

18 defense -- or a lack of wilfulness defense.  But to do that,

19 they must rely on statutory direction or "compelling,

20 persuasive authority that supports its position", and that

21 means that they can't simply rely on a lack of case law.  To

22 avoid a wilful violation of the stay, they need to actually

23 point to persuasive authority that justifies their position,

24 and we think that's particularly true in an instance where we

25 did not run to court to file a motion for violation of the

1    stay.  We actually gave them a warning via a stay violation

2    letter and put in our persuasive authority.

3           So, our view continues to be that the express terms

4    of Section 1520 and its legislative history make clear that

5    the automatic stay bars the adversary proceeding, and

6    moreover, every decision that the general partner cites for

7    support, with respect to the home court rule, those are cases

8    in either a Chapter 11 or Chapter 7 case.  That is not, in our

9    view, persuasive authority.

10          And so, that is the reason we are seeking our fees.

11   We are entitled to it under the statute and under the case

12   law, but also, you know, just, generally, Your Honor, it is

13   kind of doubly troublesome for our clients, as a practical

14   matter, because all of the fees that are currently being

15   incurred by the fund to defend this case and commence a

16   proceeding which we believe to be in violation of the statute.

17          All of their fees, meanwhile, get paid by the fund,

18   and, of course, who is the ultimate beneficiary of the fund?

19   It's the foreign representative, and so, by taking the actions

20   that they've taken, in violation of the automatic stay, they

21   are effectively charging us twice.  They are charging us our

22   legal fees to force them abide by the statute, and then

23   they're going to charge us again for their legal fees, because

24   there's no dispute that at the end of the day, once the asset

25   in the fund is sold, a significant -- and fees are undertaken

1    -- fees are netted, then we get the remainder.

2         And so, it's under those circumstances, too, that we

3    think it's appropriate to grant fees for this motion.

4         THE COURT:  Well, you know, on the issue of whether

5    they should have known or it should have been clear to them

6    that it would violate the automatic stay, I've got three of

7    these binders on my desk, most of which are dedicated to

8    arguing about this issue and evidence in support of that, and

9    we have been here for two hours discussing this.  How clear

10   can it be?

11        MR. LAVINE:  Well, frankly, Your Honor, I think 99

12   percent of -- well, maybe that number is exaggerated, but the

13   vast majority of time we've spent, all of the foreign law

14   issues that have arisen, all of the foreign declarations that

15   have been presented do not deal with the first issue that we

16   had oral argument on today, which is, does the stay apply.

17        Instead, we have spent most of the day talking

18   about, assuming it applies, should it be modified?  And so, I

19   think that's the response there, Your Honor.

20        THE COURT:  It's a good response.

21        MR. LAVINE:  Thank you.

22        THE COURT:  Thank you.

23        Mr. Tillinghast?

24        MR. TILLINGHAST:  Thank you, Your Honor.

25        First, to address the argument about so-called

1    informal discovery, yes, there was a document sent seeking a

2    very, very, very broad group of documents that covers

3    everything close to under the sun, including everything that

4    the general partner, the manager and the Falcata, the

5    partnership, gave to the Department of Justice.

6          It's very, very broad, far broader than anything

7    envisioned under Chapter 15-type discovery for the Debtor to,

8    what they claimed, was to find out what their assets were.  It

9    was -- it was seeking management decisions, on managing the

10   assets, all sorts of records.  And so, it was very, very

11   broad, and it's one of the exhibits.  And we could go into

12   specifics, but I don't think that's relevant to today.

13         And, secondly, it has to be put in the context of,

14   while much has been about the so-called unfairness and the

15   windfall and what not, Point entered into an agreement, and

16   that agreement provides a number of rights and obligations for

17   both parties, for all parties.  One of those things is, if

18   there is a -- if it's a defaulting partner, i.e., they default

19   on a capital call, as this -- as Point has acknowledged, their

20   information rights are cut off.  So, that was raised, as I'm

21   sure Your Honor probably saw that in the correspondence

22   between my firm and Point's counsel of -- of their information

23   rights contractually were cut off.

24         Now, that can be separate and apart from 2004, but

25   we were at what they have labeled as an informal phase.  There

1   was no 2004 order.  There was no -- under Delaware procedures,

2   you have an informal phase, and then, if you can't agree, you

3   come to the Court, and you seek a 2004 order.  But we weren't

4   at the phase of a 2004 order.  We, in good faith, worked

5   diligently to try to narrow the request and the production to

6   things that were relevant to value and things of that sort.

7          And we worked for several weeks on that, and

8   frankly, it seemed like it was going, it was one step forward

9   and three steps back.  It kept getting broad.  It would narrow

10  a little bit.  It kept getting broad, and the correspondence,

11  I would submit, suggests that.  And one thing that has been

12  left out is, throughout that whole process, all of -- both the

13  discussions that we had by phone and by Zoom and by email and

14  by letter were all without prejudice to everybody's rights.

15         So, I would submit that this whole piece about us

16  not operating in good faith is just false.  I mean, we

17  actually tried to come to a resolution of a rational amount of

18  documents to produce that addressed issues that were relevant

19  to the Estate and to Point, and we couldn't.  I mean, there's

20  -- you know, that's what courts are for, to be honest.  And we

21  knew that if they couldn't, inevitably, they would probably

22  seek a 2004.  We tried to work around that in good faith.  We

23  couldn't reach that Point, no pun intended.  And so, I would

24  submit that this bad faith argument doesn't really fly here,

25  and, also, keeping in mind here that the limited partnership

1    agreement, itself,  holds that once they default, they're not

2    entitled to information.

3          Now, whether they should have entered into that

4    agreement or not, that's not an issue for the Court, but the

5    agreement is the agreement.  They're a sophisticated party.

6    They had counsel.  They entered into the agreement, and it

7    says what it says.

8          Second, as to the letter where after we -- after we

9    filed the complaint, we sent the complaint and asked if they

10   would accept service.  They didn't answer.  We then -- I sent

11   another email saying, will you accept service.  They answered

12   with their letter saying they were shocked and appalled and,

13   please, withdraw the complaint.  We had done research.  We

14   said, no.  They left the fact out that we said, no.  I mean,

15   we actually felt then, and we still feel right that the stay

16   does not apply, and we looked at cases.  We looked at the

17   statute, and we felt, and objectively and in fairness and in

18   good faith that the stay does not apply.

19         And, you know, as part of that, there are dozens, if

20   not hundreds of adversary proceedings in Chapter 15 cases

21   against Chapter 15 debtors in various districts, including

22   this district.  So, to say that there is no basis -- or no

23   cases is just not correct.  We've gone through the arguments,

24   and I'm not going to, you know, burden the Court with going

25   over it again, but, under Chapter 15, 1520 and 362 and the

1    home court rule and everything else, there is nothing that

2    says that what they are trying to say, namely that there

3    cannot ever be an adversary proceeding in a Chapter 15 against

4    the Debtor.  That's what they want this Court to hold.

5              And, if you actually look at what they're saying and

6    the way that they interpret 362, it sounds preposterous, but

7    if they make a motion, we couldn't even object to it.  That

8    would be a violation of the stay.  That seems to violate due

9    process.

10             So, as to damages, we think there is no basis,

11   because there is clearly -- we believe that it's right -- the

12   right decision is that there is no stay or it should be

13   modified, but certainly, it was not wilful or improper to

14   proceed as we did.

15             THE COURT:  Thank you.

16             MR. TILLINGHAST:  Thank you, Your Honor.

17             THE COURT:  Any response to that, Mr. Lavine?

18             MR. LAVINE:  Yes, Your Honor.

19             On the last point that somehow the stay would -- if

20   the foreign representatives made a motion, and somehow the

21   automatic stay would prevent responses to that motion, I mean,

22   that's not true.  That's a different set of facts than the

23   facts we have here, which is a creditor seeking recovery of a

24   pre-petition claim.

25             With respect to timing, to the extent there is case

1    law about creditors commencing adversary proceeding within

2    Chapter 15 against the Debtor, they follow a motion for relief

3    from the stay, and those were the cases that we had cited.

4    And so -- so, we think that should have been the approach

5    here, and because it wasn't, it has caused increased costs.

6            That's all I have to stay on that topic, and I think

7    we could turn to the Rule 2004 discovery motion, if that's

8    okay with Your Honor?

9            THE COURT:  Yeah, I just want to see if Mr.

10   Tillinghast has anything else in response?

11           MR. TILLINGHAST:  I'd just point out that many, if

12   not all of the cases that we referred to as Chapter 15 against

13   the Debtor do not involve stay relief motions.  They're just

14   -- they did the same thing we did.  They filed a complaint in

15   the home court that administers the stay.

16           THE COURT:  Do you mind approaching the podium,

17   please, just so I can hear you a little better?  In any of

18   those cases -- you may not know offhand, but in any of those

19   cases, was there a determination by the Court that the stay

20   did not apply or are we talking about cases where an adversary

21   proceeding was commenced, and the foreign representative

22   didn't object on stay violation grounds so it just went

23   forward?

24           MR. TILLINGHAST:  I don't specifically recall the

25   stay issue coming up in procedural history or otherwise.

1          THE COURT:  Okay.  Thank you, Mr. Tillinghast.  I

2    appreciate that.

3          MR. TILLINGHAST:   Thank you.

4          THE COURT:  Okay.

5          MR. LAVINE:  So, Your Honor, I think the last Agenda

6    item, and now, we actually are getting back to the Agenda, is

7    contested matter number three, which is Rule 2004 discovery.

8    The main point we want to make on this is that, it appears

9    there is no dispute between the parties that if the foreign

10   representatives are correct with respect to the stay, and that

11   the adversary proceeding is void ab initio, then there is no

12   pending proceeding, and Point and the foreign representatives

13   should be permitted to proceed with Rule 2004 discovery.

14          Now, in the alternative, if Your Honor were to

15   permit the adversary proceeding to commence, and we haven't --

16   we haven't received any indication yet about how quickly Your

17   Honor may rule, our concern remains that, you know, we have

18   been seeking discovery about Point's assets for -- for over a

19   year, and some of that was informal, but at least since

20   December of last year, that discovery was memorialized in

21   actual document requests, which were provided to counsel.

22          And so, our concern is that, you know, we continue

23   to be at an informational disadvantage with respect to assets

24   of the Debtor's estate for which there is kind of no -- no

25   dispute that the requests that were made, either relate to the

1   adversary proceeding or the Debtor's assets and affairs, and

2   therefore, Rule 2004 is appropriate.

3        But I would say this, right, we -- in the event that

4   this Court were to rule quickly that the adversary case should

5   proceed, which we certainly would disagree with, you know,

6   we'd be prepared to slap a document request together with an

7   adversary -- with the case caption of an adversary proceeding,

8   right.  We understand that, like, there is clearly a mechanism

9   for us to do that, but what we do want to reserve our rights

10  is that, there have been statements made by counsel, in their

11  papers, that everything we've asked about relates to the

12  adversary proceeding.

13       Well, if that's true, then once we have an adversary

14  proceeding, it seems only fair that we get all of the

15  documents that we're asking for.  So I just -- whatever

16  happens today, we don't -- we do want to reserve our rights,

17  either to proceed with the discovery we have sought in the

18  adversary proceeding or, in the alternative, if Rule 2004 is

19  determined not to be appropriate at the time or not

20  appropriate because of a pending proceeding, if it turns out

21  that they don't actually provide -- that they didn't mean what

22  they said when they said everything that we have asked for is

23  about the adversary proceeding, we do want to reserve our

24  rights to, then, file the Rule 2004 route.

25       And, just as an example, if there are particular

1  requests that we have made, which the general partner, in an

2  adversary proceeding says, well, wait a minute, this is not

3  relevant to the adversary proceeding, again, we just want to

4  reserve our right to say, okay, that's fine, but, therefore,

5  we have a Rule 2004 -- here's a Rule 2004 proceeding, because

6  it's not related to the adversary proceeding; it's related,

7  nevertheless, to our assets and affairs.

8           THE COURT:  Okay.  I understand.  Thank you.

9           MR. TILLINGHAST:  I mean, it's fairly

10  straightforward, and it's, obviously, on the papers, but once

11  the adversary proceeding was filed, we have taken the position

12  that the pending proceeding rule applies, and we've never said

13  that they're not going to get any discovery at all.  Actually

14  quite the contrary.  They would get discovery that's permitted

15  under the Federal Rules as adopted by the Federal Rules of

16  Bankruptcy Procedure in the adversary proceeding, and we don't

17  contest that.  That's the law.

18           But it is also very clear, which is the reason for

19  the pending proceeding rule that 2004 discovery is much --

20  much broader -- many courts have referred to it as a fishing

21  expedition -- than the Federal Rules.  So, we have asserted

22  the pending proceeding rule as -- and we obviously believe

23  that the adversary proceeding is proper, so that whatever

24  discovery should be confined or book-ended, however you want

25  to put it, by what the Federal Rules provide for.

1      And something to keep in mind, it's not as if

2  nothing has been given.  In the course of the so-called

3  informal exchange of documents and requests, we did actually

4  produce a series of documents, and again, and in a showing of

5  good faith and trying to work with them on their stated

6  purpose of, we just want to find out what our investments

7  were.  But we believe that the requests go far, far, far

8  beyond that.

9      And, also, the general partner gave them the audit.

10  So, even though they contractually didn't -- they lost their

11  informational rights, we have given them some documents.  We

12  do intend -- you know, if either the stay is modified or the

13  stay is held to not exist, we would proceed like any other

14  proceeding.

15      And under Washington Mutual, the inquiry is whether

16  2004 would lead to discovery unrelated to the pending

17  proceeding, and, you know, that's what we expect to happen.

18  We never tried to say, we're not going to give them anything,

19  and we're not going to give them discovery.

20          THE COURT:  Okay.

21          MR. TILLINGHAST:  You know, unless Your Honor has

22  questions, this is really all I have to say.

23          THE COURT:  I don't.  Thank you.

24          MR. LAVINE:  Your Honor, there certainly was a

25  production.  There was 139 documents that included 55

1    duplicates.  That's not anywhere near what a dispute of this

2    size and the assets of this entity, not our entity, the fund,

3    would be sufficient for us, and that's why we continued to

4    press.

5          I also don't see why it can't be the case that,

6    while the parties were meeting and conferring previously on

7    things like search terms and an ESI protocol, that can't

8    continue, because I think it's clear from the party

9    submissions today that this -- regardless of the forum, the

10   dispute, itself, is not going away.

11         And so, we do prefer to push this forward.  Finally,

12   there was, you know, reference to the information rights under

13   the LPA and how that has been cut off.  Two points on that.

14   The first is, the documents we're seeking are in accordance

15   with statutory authority, like -- or bankruptcy law authority,

16   Rule 2004 has nothing to do with the LPA.

17         Secondly, that's a discretionary -- on the part of

18   the general partner, that's a discretionary limitation.  They

19   have the discretion to voluntarily give us documents that we

20   are asking for.  And, again, that just goes to the heart of

21   what I think we've been talking about today, which is that for

22   reasons that remain unknown to us, but we believe to be an

23   attempt to get a windfall of the foreign debtors capital

24   investment, we have been stonewalled when it comes to

25   discovery.  We have made entreaties to normalize the

1   relationship and meet capital contributions.  And that has

2   always been rebuffed.  And so -- and, yet, here we are

3   litigating, which is, you know, not the place that our clients

4   want to be in as fiduciaries.  And so, we would much prefer --

5   but if we are going to litigate, like, we have to get on with

6   it, and I see no reason why the general partner couldn't

7   negotiate with us on things, again, like search terms and ESI

8   protocol and the like.

9        Thank you.

10       MR. LAVINE:  Thank you.

11       THE COURT:  Anything else, Mr. Tillinghast?

12       MR. TILLINGHAST:  No, Your Honor.

13       THE COURT:  All right.  Okay.  So, is there -- there

14  is nothing else on the Agenda, right?  So, we can close the

15  record there.

16       Here's what we're going to do, I think I've been the

17  beneficiary of absolutely outstanding briefing and argument

18  today, and that's aided me a great deal in figuring out where

19  I want to go.

20       So, we're going to come back at 3:00, and I'll

21  deliver my rulings at that time.  Okay.  So, we are in recess

22  until 3:00.  Thank you.

23       (Recess, 12:34 p.m. to 3:06 p.m.)

24       THE COURT:  Please be seated.  First, if I keep

25  looking off to the side, that's where my notes are, so I

1    apologize if I seem to be looking away from all of you.

2    First, again, I want to emphasize how helpful I found the

3    briefing and today's arguments.  It really was outstanding

4    work, and made it -- all the issues very clear to me, and I

5    think really prepared me well to be able to rule speedily, as

6    has been my goal here today.

7         I don't think any of the relevant facts that are

8    material to my decision are in dispute, but I will note the

9    following facts for the record.  On March 29th, 2022, the

10   foreign representative filed this Chapter 15 petition for

11   recognition of a foreign main proceeding in Bermuda.

12        And on April 22, 2022, Judge Kate Stickles, who then

13   was presiding over the case entered an order granting

14   recognition of the Bermuda proceeding.  In the following 11

15   months or so, there was no substantive activity in this

16   bankruptcy case, or the Court is informed and understands that

17   the Bermuda proceeding progressed during that period.

18        On March 3rd, 2023, the general partner commenced an

19   adversary proceeding by filing a complaint in this court.  The

20   complaint contains three counts.  Two of the counts are breach

21   of contract claims under the limited partnership agreement and

22   the master transaction agreement, for which the general

23   partner seeks monetary relief.

24        The third count seeks declaratory relief regarding

25   the Debtor's alleged status as a defaulting partner under the

1    limited partnership agreement.  The general partner contends

2    that it filed the complaint in this court, because the proof

3    debt process had not yet commenced in the Bermuda proceeding,

4    among other reasons.  The statute of limitations on the claims

5    set forth in the complaint are expected to run by as early as

6    July of this year, therefore, the general partner reasoned

7    that this court provides the best venue to avoid forfeiture of

8    those claims that would be caused should the statute of

9    limitations expire, without the claims being asserted.

10           The foreign representative responded to the

11   complaint by sending a letter to the general partner, arguing

12   that the commencement of the adversary proceeding was a

13   violation of the automatic stay and demanding dismissal of the

14   complaint.  On March 23rd, 2023, the general partner filed its

15   motion for a determination that there is no automatic stay or,

16   in the alternative, seeking stay relief.

17           On March 27th of this year, this case was reassigned

18   to me, and later that day, the foreign representative filed

19   its motion to enforce the automatic stay and seeking damages

20   for the general partner for violation of the automatic stay.

21   Also, on March 27th, the foreign representative filed its

22   motion seeking a Rule 2004 examination of the general partner.

23           The parties have informed me that since the filing

24   of these three motions, the proof of debt process in the

25   Bermuda proceeding has opened, and that the proofs of debt are

required to be filed by later than June 9, 2023.  I would

further note that neither party contends that the Bermuda

proceeding is unfair, and I assume, therefore, that the

Bermuda proceeding is fair as to foreign parties, including

United States parties.  Each of the motions has been fully

briefed, and earlier today, the Court conducted a hearing on

the three motions.

As I see it, there are four issues that I need to

decide, and I'll take them in turn.  The first issue is

whether the automatic stay applies.  I will note that I found

the automatic stay issues to be relatively difficult and

unclear, and that there is a lack of guidance or an ambiguous

guidance in the statutes and a lack of helpful case law

regarding the application of the automatic stay under

circumstances such as the ones that are presented to us today.

However, although the issues are complex and

unclear, my ruling on this point is going to be brief and to

the point.  I find that the automatic stay does apply to bar

the filing of the complaint, and that the filing of the

complaint is void.  Section 1520, read together with Section

362(a) provides for an automatic stay in this case.

While in a Chapter 7 or 11 case, the home court rule

might provide a safe harbor, that is not the case in Chapter

15, because the foreign main proceeding provides the home

court, not this court.  In getting to this determination, it

1    is significant to me that Section 501 does not apply in

2    Chapter 15.  There is no process for this Court to determine

3    claims.  That is the exclusive domain of the Bermudian court.

4              While I find that the statues compel this finding, I

5    also did not find it to be unfair.  The proof of debt process

6    is underway in the Bermudian proceeding, and the general

7    partner may file its proof of debt there.  I would note that

8    the general partner appears to have been diligent about

9    preserving its claims and avoiding the lapse of the applicable

10   statutes of limitation, and that the purpose of this complaint

11   was just this.  And I think that's what any responsible lawyer

12   would do to do something to try to preserve those claims.  By

13   filing a proof of debt, I expect, though, that any applicable

14   statute of limitation concerns should be satisfied.

15             As to relief from the automatic stay, I am denying

16   the general partner's request for relief from the automatic

17   stay.  I find that the Bermuda proceeding is the only venue

18   for resolutions of the claim issues, and this Court lacks

19   authority to do so.  After all, Section 501 of the Bankruptcy

20   Code does not apply in this Chapter 15 case.  Therefore, I

21   cannot determine the claims -- the monetary claims.

22             In addition, I find that the declaratory relief

23   issue presented under the complaint can be addressed through

24   the proof of debt process in the Bermuda proceeding.  I also

25   do not find it prejudicial for the general partner to have to

1  pursue its claims against the Debtor in the Bermuda

2  proceeding.  Accordingly, there is no prejudice to the general

3  partner if it's required to move forward in the Bermuda

4  proceeding.

5        On the other hand, the Debtor would be prejudiced if

6  it were required to address claims issues in two different

7  countries, particularly when this proceeding here is under

8  Chapter 15, and claims matters are not resolved here.

9  Instead, that is the exclusive domain of the foreign main

10  proceeding in Bermuda.

11        As to sanctions, I find that sanctions are not

12  appropriate here.  There are sufficiently difficult legal

13  issues presented whether the automatic stay applied to bar the

14  filing of the complaint.  I also note that the general partner

15  moved promptly to file its motion for determination that the

16  automatic stay does not apply, therefore, damages are not

17  warranted.

18        On the 2004 examination, the foreign representative

19  has sought a Rule 2004 examination of the general partner.

20  The general partner objected on the grounds that the adversary

21  proceeding gives rise to application of the pending proceeding

22  rule.  However, because I am finding the complaint to be void,

23  there is no pending proceeding, and therefore, I will grant

24  the motion for a Rule 2004 examination.

25        And that concludes my ruling.  Are there any

1    questions?

2          (No audible response)

3              THE COURT:  Okay.  I hear no response, so with that,

4    we are adjourned.  I wish everyone a good afternoon.

5              (Proceedings concluded at 3:14 p.m.)

6                              * * *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

89

# C E R T I F I C A T I O N

I, Jacqueline Mullica, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter on May 25, 2023 from 10:07 a.m. to 3:14 p.m.

_/s/Jacqueline Mullica_        May 28, 2023

JACQUELINE MULLICA

DIANA DOMAN TRANSCRIBING, LLC