UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE


IN RE:                           ) Case No. 22-10261-TMH
                                 ) Chapter 15
                                 )
                                 )
                                 )
POINT INVESTMENTS, LTD.          )
(IN LIQUIDATION),                )
                                 )
                                 )
             Debtor.             )
                                 ) Wilmington, Delaware
                                 ) July 27, 2023
                                 ) 9:59 a.m.


TRANSCRIPT OF MOTIONS HEARING
BEFORE THE HONORABLE THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


For the Foreign          STEPHEN ASTRINGER, ESQUIRE
Representatives:         KOBRE & KIM, LLP
                         600 North King Street, Suite 501
                         Wilmington, DE  19801

                         ADAM M. LAVINE, ESQUIRE
                         KOBRE & KIM, LLP
                         800 Third Avenue
                         New York, NY  10022

For the Falcata          ERIC D. SCHWARTZ, ESQUIRE
Parties:                 EVANTHEA HAMMER, ESQUIRE
                         MORRIS NICHOLS ARSHT & TUNNELL, LLC
                         1201 North Market Street, Suite 1600
                         Wilmington, DE  19801


For the General          EDWARD H. TILLINGHAST, ESQUIRE
Partner:                 DAMANI C. SIMS, ESQUIRE
                         SHEPPARD MULLIN
                         30 Rockefeller Plaza
                         New York, NY 10112


Audio Operator:          Leslie Murin

Transcribed by:                    DIANA DOMAN TRANSCRIBING, LLC
                                   P.O. Box 129
                                   Gibbsboro, New Jersey  08026-0129
                                   Phone:    (856) 435-7172
                                   Fax:      (856) 435-7124
                                   Email:    dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

1                        I N D E X

2

3    FALCATA'S MOTION FOR CLARIFICATION:           PAGE

4    By Mr. Sims                            6, 18, 28

5    By Mr. Lavine                             11, 24

6    Re: Should not be compelled to produce

7         privileged documents

8    Re: Should not be required to comply with

9         improper document requests

10   Re: Response to document requests would not

11        be triggered until served with the subpoena

12   Re:  Falcata parties will be in compliance

13         with discovery order on a rolling basis

14   Re: Search terms

15

16   GUIDANCE ON SEARCH TERMS:                      PAGE

17   By the Court                                    30

18

19   RULING BY THE COURT:                           PAGE

20   Re: Falcata motion                              31

21

22

23

24

25

1                (The following was heard at 9:59 a.m.)

2                COURTROOM DEPUTY:  All rise.

3                THE COURT:  Good morning, please be seated.  Good

4      morning.

5                MR. ASTRINGER:  Good morning, Your Honor.  Stephen

6      Astringer from Kobre & Kim, on behalf of the foreign

7      representatives, and I'm here today with my colleague, Adam

8      Lavine.

9                Your Honor, we filed our agenda at Docket Number

10     117, and the only item on the agenda is Falcata's motion for

11     clarification at Docket Number 103.  Your Honor, I am pleased

12     to report that we've narrowed the issues since the motion was

13     filed based on productive meet and confers.

14               Certain disputes still remain and we expect others

15     on the horizon which is why we're here today.  Because it is

16     their motion, I will hand the podium off to counsel for the

17     Falcata parties --

18               THE COURT:  Okay.

19               MR. ASTRINGER:  -- and Mr. Lavine will argue on

20     behalf of the foreign representatives.

21               THE COURT:  Very good.

22               Mr. Schwartz, good morning.  It's good to see you.

23               MR. SCHWARTZ:  Good to see you also, Your Honor.

24     May it please the Court, Eric Schwartz of Morris Nichols.  I

25     think this is the first time I've appeared before Your Honor

1  so --

2            THE COURT:  It is, it is --

3            MR. SCHWARTZ:  Yes.

4            THE COURT:  -- and it's great to have you here.

5            MR. SCHWARTZ:  Thank you, Your Honor.  I appear on

6  behalf of FTI GP 1, LLC on behalf of Falcata Tech Investment

7  Fund 1 LP, and with me in the courtroom today are Damien (sic)

8  Sims of Sheppard Mullin and he'll be handling the hearing --

9            THE COURT:  Good morning.

10           MR. SCHWARTZ:  -- along with Ed Tillinghast, and my

11 colleague, Evie Hammer.

12           THE COURT:  Good morning.

13           MR. SCHWARTZ:  Thank you, Your Honor.

14           THE COURT:  Okay, you can approach the podium.  I --

15 I have a few comments that I thought I'd start out -- start

16 out with.  You know, it -- it seems to me that this dispute is

17 really more in the nature of a discovery dispute than anything

18 else.  I'm not sure that it's really a clarification issue.

19 And the way I understand it, at least based on the reply and

20 there may have been developments since then, but as the time

21 of the reply, I understood there to be two issues.

22           One is the -- the timing on the production, and the

23 other one is whether you're required to respond to any request

24 that, in your view, exceed the scope of -- of Rule 2004(b),

25 and I -- I view those both as really more in the nature of

1   discovery issues rather than clarifying the order because I

2   don't see -- see, I'm -- I'm new to this, I've been on the

3   bench for four months, but I don't see the -- the Court's role

4   as necessarily taking a red pen to a set of discovery requests

5   that are attached to a 2004 motion, but rather to say either,

6   you know, okay, go ahead and all objections are preserved, or

7   I say no, there's no 2004 exam.

8            But I'm not foreclosing any presentation that you

9   want to make, but those are my initial observations on -- on

10  where we are.

11           MR. SIMS:  Thank you, Your Honor, and -- and good

12  morning.  First, just one point of correction.  My esteemed

13  colleague, Mr. Schwartz, introduced me as Damien.  It's

14  Damani --

15           THE COURT:  Right.

16           MR. SIMS:  -- D-A-M-A-N-I.

17           THE COURT:  I caught that from the sign-in sheet.

18           MR. SCHWARTZ:  And I apologize.  I apologize.

19           MR. SIMS:  Not -- not an issue.  Not -- not an

20  issue.

21           THE COURT:  Okay.

22           MR. SIMS:  To Your Honor's points, we do agree that

23  these issues have been narrowed.  We actually do agree with

24  Mr. Astringer that the parties have productively met and

25  conferred.  We presented a motion for clarification under four

1    issues: the first issue was that we should not be compelled to

2    produce privileged documents; (2), we should not be required

3    to comply with improper document requests, as Your Honor

4    properly framed as a discovery issue or discovery dispute;

5    (3), that the ten days that we had to respond to the subpoena

6    or specifically the document requests therein would not be

7    triggered until we were served properly with the subpoena; and

8    then (4), the Falcata parties will be in compliance with the

9    discovery order by producing documents on a rolling basis

10   within ten days of service of the foreign representatives'

11   subpoena.

12           So to Mr. Astringer's point, we have sufficient or

13   significantly narrowed the scope really to one issue that Your

14   Honor identified.  The foreign representatives are not

15   compelling us, are not seeking to compel us to produce

16   privileged documents.  They've conceded that in their

17   objection to our motion for clarification.

18           The ten days triggering issue, that's been mooted

19   because in our estimation, we've completed our production.  We

20   produced documents within ten days of service of the subpoena,

21   so we've complied with the Court's order with respect to that.

22   And there was a supplemental production that we made.

23           We've also produced the privilege log, so we can

24   clear the slate on a lot of those issues and really focus on

25   the issue of discovery.  And really that issue from a 30,000

1  foot view is we were seeking the Court's -- or clarity from

2  the Court rather as to whether or not we have to respond to

3  requests or produce documents to requests that we deem to be

4  improper.  Now, I can anticipate Mr. Lavine's arguments.  I

5  don't want to steal his thunder.

6          The arguments were -- were set forth in the

7  objection, and I -- I just want to take a moment to address

8  one of them.  And one of the arguments was that because we did

9  not interpose specific objections to the specific requests in

10  our papers, we're now precluded from interposing those

11  objections now, and we would submit to Your Honor that that's

12  just false.

13          It's not true because the scope of the motion for

14  discovery was just that.  They moved for a Rule 2004

15  discovery.  We opposed it saying that Rule 2004 discovery was

16  not appropriate, it's an adversary proceeding, and Your Honor

17  ruled in the manner Your Honor ruled.  The motion for

18  clarification was just that.

19          We want clarity or we're seeking clarity as to

20  whether or not we needed to produce documents to requests that

21  we deemed to be improper.  So we've met and conferred multiple

22  times with the foreign representatives' counsel about some of

23  those document requests, and really, Your Honor, it's really

24  one document request that is at issue at this point, and

25  that's Document Request Number 6.

1      We've essentially worked out where we would be

2   producing and have produced documents responsive to the other

3   requests that the foreign representatives enumerate in their

4   objection.  The Document Request Number 6 specifically deals

5   with documents that were produced to the IRS and the

6   Department of Justice in connection with an investigation they

7   had into Robert -- the -- the former principal of Spanish

8   Steps Holding, which was a sole shareholder in -- in Point

9   Investments.

10      And we believe that that's beyond the scope.

11   However, what we have said in meet and confers is that if any

12   of the documents in that production to the DOJ and the IRS are

13   responsive to other document requests that the foreign

14   representatives propounded, we would produce those and -- and

15   we believe we have.

16      There were certain financial statements that we

17   produced, and the financial statements really go towards

18   certain acquisition targets that the fund had, and

19   specifically Xpressdocs, which is the only asset in the fund.

20   So we -- we've met the requirements of both the Court's order

21   and we've met the requests of opposing counsel by producing

22   those documents.

23      We don't believe that the broad scope -- because the

24   -- the scope of Number 6 is extremely broad, we don't believe

25   that's appropriate for purposes of this proceeding.  Rule 2004

1   is understandably a fishing expedition.  However, there are

2   limitations.  And if I can use an analogy, I don't profess to

3   be a fisherman, but if it's a fishing expedition, it's

4   appropriate to use a rod, but not a troller.

5          And -- and it seems to us as though the foreign

6   representatives are seeking to use the latter by including and

7   incorporating that request into their set of requests,

8   especially when we've already conceded that we're going to

9   produce certain documents that are responsive thereto, but

10  we're just not going to take the DOJ and IRS production and

11  hand it over to the foreign representatives.

12         We don't believe that that's appropriate.  We

13  believe that's completely beyond the scope.  It doesn't

14  necessarily deal with the assets, liabilities and affairs of

15  the Debtor, and that's what -- that's what the scope is of

16  Rule 2004, period, full stop.

17         Your Honor, I invite you to -- if you have any other

18  questions before I sit down, but I do make a request though

19  that we be afforded an opportunity to reply to whatever Mr.

20  Lavine's arguments are on these issues.  But --

21         THE COURT:  Of course, Mr. Sims.

22         MR. SIMS:  But I maintain the -- the scope of this

23  issue -- the scope of this motion is really just that, it's

24  literally can we object to improper requests, and we believe

25  that we can and we do agree that -- with Your Honor that this

1   is a discovery dispute.

2          THE COURT:  Okay.  And I don't have any questions at

3   this point, Mr. Sims.  But I'll be very happy to hear

4   rebuttal.

5          MR. SIMS:  Okay, thank you.

6          THE COURT:  Okay, thank you, sir.

7          Mr. Lavine, welcome back.

8          MR. LAVINE:  Yeah --

9          THE COURT:  Good to see you.

10         MR. LAVINE:  -- thank you.  Good to see you, Your

11  Honor.  I -- I hear you loud and clear that it appears your --

12  your preference in this instance, which is another reason why

13  we're here today is understand your preferences, I guess is to

14  take the next step and have a -- tee up a discovery dispute in

15  front of you, and I just -- so should we therefore look to

16  your rules on how best to do that in terms of letter briefing

17  on the remaining issues?

18         THE COURT:  Yeah.  I mean, look, here's -- here's my

19  view on the -- the -- and I'll offer you an opportunity to

20  respond to this if you wish to, but for -- to Mr. Sims's

21  point, if the -- if Request Number 6, in their interpretation,

22  seeks documents that exceed the scope of what is permissible

23  under Rule 2004(b), then I think they can -- they can impose

24  an -- or an objection to that discovery request on that basis.

25         And obviously you have the opportunity to respond to

1   any objection that they interpose.  My preference on discovery

2   disputes as it's developing is I don't want motion practice or

3   -- or even letters.  I'd appreciate it if you reached out to

4   my Courtroom Deputy, Ms. Gadson, and let her know that there's

5   -- that there's a problem and you need the Court's time and

6   we'll very promptly set up a time to speak.

7           I'd imagine most instances, we'd be able to do that

8   within a day or two and we can hear -- hear about it over the

9   phone, and -- and if requires some sort of supplemental

10  submissions after that, we can do that.  But I think that's

11  probably the -- tge best way to -- to handle it from my

12  perspective.  But again, I don't think this is a Rule 9023 or

13  9024 issue.  I view it as basically a garden variety discovery

14  dispute --

15          MR. LAVINE:  Okay.

16          THE COURT:  -- and I would prefer us to handle it in

17  that fashion.

18          MR. LAVINE:  Thank you, Your Honor.  And so I will

19  respond to just a few points raised by counsel, and I guess we

20  -- we may be previewing here some of the dispute that is

21  percolating, as my colleague referenced.  You know, we -- we

22  have a -- a different view of Request Number 6, which we

23  understand relates to an investigation that frankly had to

24  have been in some sense related to the Debtor, because just

25  think about who the parties here are.

1          Our client are foreign representatives of a Debtor

2     in a foreign proceedings.  That Debtor in the foreign

3     proceeding was the sole investor into this investment fund,

4     Falcata.  Because they were the sole investor, in -- in

5     effect, there are many aspects of Falcata's business that are

6     particularly relevant to our client.

7          With respect to DOJ, as an example, if there's

8     evidence of wrongdoing at Point Investments at the Debtor and

9     the Debtor's prior management, foreign representatives want to

10    know about it and they're entitled to that information, both

11    as they assess claims against third parties, and also

12    understand generally what the financial picture of the Debtor

13    was and what it was and what its investments were.

14         And of course it's -- it's frustrating to us sitting

15    here in July on these issues when this request related to DOJ

16    materials, or DOJ or IRS frankly, we -- we still don't know

17    precisely what the subpoena was, but we -- as we said on

18    information and belief, think it's from some governmental

19    entity, this was a request that we first sent to the Falcata

20    parties in December.

21         And this request, we -- we think Your Honor's right

22    that the existing order is clear and unambiguous and we're not

23    here today about that.  But the same requests that we sent in

24    December were attached to their subpoenas which were attached

25    to the proposed order.  We set forth in our motion why we

1  thought it was relevant.  We effectively haven't heard

2  anything until after -- in the last couple weeks, after our

3  order was already entered, that -- that these were

4  objectionable.

5          THE COURT:  Well, are they required -- is a party

6  required to sort of respond to proposed Rule 2004 discovery on

7  a line-by-line basis when the motion comes before the Court,

8  or do they get to reserve their objections until they actually

9  have to respond to the discovery if that's what the Court

10 orders?

11         MR. LAVINE:  I mean, Your Honor, our position is

12 that they should have raised this because among things, we --

13 we and they both agreed it was a pertinent issue, and I'll --

14 I'll explain the reason for that.

15         THE COURT:  Mm-hmm.

16         MR. LAVINE:  By the way, Your Honor, if you prefer

17 to tee this up on a discovery dispute, we're happy to do that

18 as long as we do it extremely quickly and we can be back

19 before Your Honor in a -- in a very short term.  But let me

20 just explain.  Their objection to our motion for Rule 2004

21 discovery said there's a pending proceeding --

22         THE COURT:  Mm-hmm.

23         MR. LAVINE:  -- and we don't have to produce because

24 everything that we are asking for in Rule -- everything that

25 -- that the -- the foreign representatives are asking for in

1    Rule 2004 relates to the adversary proceeding.  Of course the

2    adversary proceeding was about the rights and obligations of

3    these two parties.  And now they're saying, actually there are

4    some requests in the Rule 2004 discovery that don't -- that

5    don't relate to anything, right, that don't relate to the

6    Debtor.

7         Well then I don't know how they made the argument

8    previously that those same requests related to the adversary

9    proceeding.  So frankly, Your Honor, we're -- we're mostly

10   frustrated that we are the sole investor in this entity and

11   we're frankly getting the runaround.

12        Moreover, you know, I -- I should add, there is --

13   there is a clear information disadvantage between the two

14   parties, and -- and here's what I mean by that.  The Debtor

15   supplied the Falcata Fund with all of its capital, and then it

16   was the Falcata General Partner who managed that capital for

17   the benefit of the Debtor.

18        And what's more, the Falcata General Partner owed

19   the Debtor fiduciary duties and continues to owe fiduciary

20   duties.  But because the Debtor is now in liquidation and the

21   foreign representatives have been appointed, the foreign

22   representatives don't have direct access to all of the

23   communications that went back and forth between the Debtor's

24   former directors and officers and the Falcata parties.

25        And in this way, the liquidators are at, as I

1  referenced, a severe information disadvantage and so they're

2  in the unfortunate position of trying to piece together what

3  happened as true outsiders.  And so in a normal kind of two-

4  party discovery dispute -- and I think you'll hear more about

5  this when we get into search terms probably on a different

6  day, but in a normal two-party discovery dispute, at least the

7  both sides know what they sent to each other because they have

8  custodians who are participants in those communications.

9         But here where the -- the foreign representatives

10  are coming in as true outsiders, they don't even have -- they

11  don't have both sides of that communication, and that's

12  another reason why some of the requests might appear broad,

13  but are perfectly relevant and appropriate in the context of

14  this discovery dispute.

15         I'll sit down in a moment, but I guess what -- what

16  we would I think like your guidance on is with respect to what

17  we ought to do about search terms, and I can -- I can give you

18  a preview of where the dispute sits now.  As you will have

19  read in our papers, the foreign representatives made a search

20  term proposal back in February.

21         The Falcata parties used a separate set of search

22  terms for their production, and they're now arguing that our

23  term -- proposed terms are unduly burdensome.  Our position is

24  that they need to support that claim of undue burden and they

25  need to do so before we start negotiating with them because

1  otherwise, we are just guessing at which terms need fixing and

2  which do not.

3          And again, that is because we can't test these

4  search terms ourselves because we don't have access to our

5  former officers and directors' email accounts in the same way

6  that it would if this were a normal two-party dispute.  And so

7  to date, the Falcata parties' position has been they're done.

8  You just -- you just heard that today.

9          But, you know, there are real disputes as to the

10  breadth, or lack thereof, in their proposed search terms and

11  -- and that's what we really need guidance on.  What -- what

12  we were hoping to get at a minimum out of this hearing is if

13  -- if Your Honor will indulge us or if you want briefing,

14  that's fine, but you know, what -- what are their obligations

15  to prove up their proposed undue burden, particularly under

16  these circumstances.

17          So, for example, we have asked for every email

18  between their side and the former directors of Point

19  Investments.  They've refused that request and have not

20  produced all of the communications with the former directors.

21  They haven't explained what burden it would take to run that

22  search.

23          Certainly it can't be privileged because that of

24  course is communications outside of the fund.  So I'll -- I'll

25  pause there, Your Honor.

1          THE COURT:  Okay.  Let me hear from Mr. Sims.  I

2    appreciate your comments, Mr. Lavine.

3          MR. LAVINE:  Thank you.

4          MR. SIMS:  Thank you, Judge. Your Honor, I just want

5    to take a moment to address some of counsel's points, and --

6    and I'll begin with the point on Document Request Number 6.

7    I'll answer one of the questions counsel had as to which

8    governmental entity was the one that issued a subpoena.  Our

9    understanding is that entity was the IRS.

10         We have met and conferred ad nauseam with the

11   foreign representatives about Document Request Number 6.  So

12   the information disadvantage that counsel references is a

13   mystery to us because we don't believe there is one at all.

14   We've stated in meet and confers that we would be producing

15   documents to the foreign representatives that comply with

16   other requests that we deemed to be proper that would overlap

17   with documents that were produced to the IRS pursuant to that

18   subpoena.

19         And -- and by way of example, some of the documents

20   that the IRS requested in the subpoena include capital calls,

21   capital commitments, listings showing general limited partners

22   in all respective agreements.  Well, we're not objecting to

23   producing those documents and those documents specifically

24   were subsumed in other requests propounded by the foreign

25   representatives.

1          We've produced those documents, and to the extent

2     that they're seeking additional documents, we're willing to

3     have that conversation.  Our understanding of the subpoena is

4     it's an ongoing criminal investigation of tax fraud as to

5     Point, Spanish Steps and other Robert Brockman entities.

6     That, to us, is a bit far afield of what the scope of 2004

7     should be.

8          2004 deals with the asset -- the assets, liabilities

9     and affairs of the Debtor.  We will concede that.  However, as

10    far as the Falcata parties involvement in that, Point is

11    invested in the fund, and the fund's single asset is

12    Xpressdocs, and we've already agreed and produced documents

13    related thereto.

14         So again, there's no information disadvantage,

15    there's no information asymmetry.  And we will continue to

16    meet and confer with the foreign representatives about

17    Document Number -- about Document Request Number 6, but we

18    don't believe that this is some issue that's been belabored

19    for months and months.

20         The only months and months have been the meet and

21    confers where we've stated consistently that these are the

22    documents that we will produce.  It's not a blanket objection

23    to the propriety of certain of the documents that were

24    contained in that subpoena, the objection is we're not going

25    to hand over just a packet of documents we've produced to this

1   governmental entity to the foreign representatives.

2          THE COURT:  And -- and that's because the packet of

3   documents that were handed over to the -- the IRS go beyond

4   the categories of documents and information relating to the

5   Debtor and its investment in the fund.

6          MR. SIMS:  That -- that is our position, Your Honor.

7          THE COURT:  But and then it goes on to say, "among

8   other things," which I suppose is -- is open-ended.

9          MR. SIMS:  Well, I mean, the -- the "among other

10  things," I -- I can -- or we can tailor that to say that the

11  scope of the document requests under the subpoena was

12  extremely broad.  It was -- it was overbroad, and we don't

13  believe that those documents -- while some of them we believe

14  are responsive and relevant to a 2004 request and we've

15  already agreed to produce those documents, some of the

16  documents that are requested here are well beyond the scope of

17  that.

18          And so that may be the catch-all phrase that we

19  chose to use, but we've been cooperative and we will continue

20  to be cooperative with the foreign representatives about those

21  specific documents within the subpoena that are responsive to

22  their other requests.  So it's -- it's just simply we're not

23  handing over the packet because the packet is, as Your Honor

24  intimated, extremely overbroad.  And that's our position --

25          THE COURT:  Right.

1           MR. SIMS:  -- on that.

2           THE COURT:  And -- and so the packet would include

3   documents relating to affiliated entities that may not have

4   had a relationship with the Debtors, is that --

5           MR. SIMS:  That --

6           THE COURT:  -- is that correct?

7           MR. SIMS:  That's our understanding, yes.

8           THE COURT:  Okay.

9           MR. SIMS:  Financial statements of -- of entities

10  that don't have any relation to the Debtor, don't have any

11  relation to Xpressdocs, the only -- the single asset in the

12  fund.  We -- we thinks it's -- it's completely overbroad in

13  scope.

14          THE COURT:  Okay.

15          MR. SIMS:  And that's -- that's the basis, the

16  fundamental basis of our objection to that request, so there's

17  not been any runaround.

18          I want to address counsel's point on search terms,

19  if I may.  The -- this has been a discussion for some weeks

20  now and we began discussing search terms with the foreign

21  representatives, I believe, as Mr. Lavine mentioned, it was

22  either late last year or early this year.  The -- the

23  description that we did not use any of their search terms is

24  just false.

25          We found their search terms to be completely

1    overbroad.  For example, one of their search terms was

2    "financial statements."  Well, at the point where Point

3    decided not to give over the additional funds to the fund, the

4    fund went out and sought some acquisition targets and got into

5    discussion with those acquisition targets and -- and doing the

6    due diligence with those targets, received financial

7    statements that we reviewed.

8           We've produced, notwithstanding the fact that we

9    think it's a bit overbroad and in an abundance of caution, we

10   produced those documents in our most recent productions.  So

11   the -- the notion that we were not using their search terms,

12   no, we were.  We put qualifiers.

13          So, for example, "financial statements," we used

14   "financial statements and Point," and we used other qualifiers

15   with that specific term, and I'm just providing the Court with

16   one example.  But using just "financial statements" would have

17   necessarily engendered a number of false positives and (ph

18   102527) have been extremely cost effective for our client to

19   be reviewing documents that have no relevance whatsoever to

20   their 2004 request.

21          Furthermore, this notion that we are required to

22   produce the hit report and required to run their search terms

23   -- not the search terms that we either tried to negotiate, but

24   their search terms, point blank is -- is -- I don't think it's

25   supported by any statute, any rule or any case law.

1       And the notion that we need to produce a hit report,

2   I don't think that's even right and it's premature at this

3   point because their last meet and confer, which was earlier

4   this week, we didn't even get the impression that the foreign

5   representatives reviewed all the documents we produced, so

6   there's no indicia of an inadequate production such that we

7   would need to produce any hit report.

8       So the -- the obligations that the foreign

9   representatives are imposing on us, I -- there's no support

10  for them under Delaware law, under Third Circuit law, under

11  any rule or under any statute.  I just wanted to address that.

12      The other issue that I did want to address is the

13  issue of interrogatories.  Interrogatories were also

14  propounded in connection with the foreign representatives'

15  subpoena.  So we -- we have a two-fold position there and --

16  and it's in the alternative, Your Honor, if Your Honor would

17  bear with me for a moment.

18      THE COURT:  Mm-hmm.

19      MR. SIMS:  We've maintained that propounding

20  interrogatories under Rule 2004 is -- is not proper because

21  Rule 2004 doesn't necessarily contemplate interrogatories.  It

22  does contemplate an oral examination, it does contemplate

23  document requests.  But it does not contemplate

24  interrogatories.

25      And -- and quite honestly, Federal Rule of

1    Bankruptcy Procedure 7033 is where interrogatories lie, but

2    that would be if there's an adversary proceeding.  There's no

3    adversary proceeding anymore.  So the foreign representatives

4    want it both ways and they can't have it both ways.

5         They've not noticed us or subpoenaed us for

6    depositions or specific oral examination, which it's their

7    right to do under Rule 2004, and consistent with Your Honor's

8    order.  Your Honor gave them carte blanche to -- to do just

9    that consistent with the -- the requirements under Rule 2004.

10        That being said, Your Honor, if Your Honor is not

11   inclined to find that the interrogatories on their face is

12   just improper under or within the scope of Rule 2004, we would

13   just ask for clarity that although we are allowed to object to

14   the propriety of the document requests, if Your Honor is going

15   to allow them to propound interrogatories, that we also be

16   allowed to interpose objections to those as well.

17             THE COURT:  Okay.  I understand.

18             MR. SIMS:  Thank you.

19             THE COURT:  Thank you, Mr. Sims.

20             MR. LAVINE:  Your Honor, may I be heard on --

21             THE COURT:  Yeah, sorry, I'm just taking some notes.

22             MR. LAVINE:  Thank you.

23             THE COURT:  Mr. Lavine, on that -- that last point,

24   does Rule 2004 permit propounding interrogatories?

25             MR. LAVINE:  Yes, Your Honor, it does.  Rule 2004

1    talks about examinations.  Courts have interpreted it broad

2    enough to include interrogatories.  We have cases and orders

3    in which Courts in Delaware have permitted interrogatories on

4    a Rule 2004 basis.  I'd go further and state that, you know,

5    we -- we sought relief and your order granted relief not just

6    under Rule 2004, but also under Rule -- sorry, under Statutory

7    Provision 1521.

8              1521 stands on its -- on its own as well, and we

9    believe provides a basis for interrogatories.  I come back to

10   the point that there were interrogatories attached to the

11   proposed form of order and there was no objection to those

12   interrogatories at that time.  We served these same

13   interrogatories albeit on an informal basis in December.

14             They responded and they didn't say that they thought

15   interrogatories were inappropriate.  Instead, they said that

16   the scope of the interrogatories were too broad.  It is

17   incredibly frustrating for us and for the foreign

18   representatives that again, now in July, we're hearing that

19   their view that they don't have to respond to interrogatories

20   at all.

21             I -- I frankly think this is an instance, Your

22   Honor, in which you have the authority to state that with

23   respect to interrogatories, you have already authorized

24   service of interrogatories.  It would be -- I think it would

25   be inconsistent with that existing order to -- to now allow

1  them to take the position that they don't have to respond to

2  interrogatories.

3          THE COURT:  Yeah, I'm just taking a moment to look

4  at the -- the order that I entered on the 2004 examination.

5          (Pause)

6          THE COURT:  Yeah, I -- I did order that

7  interrogatories would be part of the discovery, and I -- I

8  don't -- I don't recall that there was any objection raised to

9  the concept of interrogatories.  Yeah, I think consistent with

10  my previous comments, if there are objections to raise, they

11  can raise the objections, but I certainly did permit

12  interrogatories.

13          MR. LAVINE:  Thank you, Your Honor.  Just a point of

14  -- look, I -- I do think further meet and confers would be

15  productive.  We're -- we're learning new information on the

16  fly, including who served the subpoena and what it was about.

17  I will note that, you know, we -- we did not understand, as I

18  think was stated on the record and I'm not sure this is

19  accurate, but there was an ongoing criminal investigation on

20  Point and Spanish Steps and other parties.

21          We're aware of the existence of a criminal

22  indictment related to Robert Brockman who's now deceased.

23  That criminal case, because Mr. Brockman is now deceased, that

24  criminal case was dismissed, and so we're not aware of any

25  existing criminal investigation and I just want to make that

1   clear for the record.

2        Further, I think there was a statement that Robert

3   Brockman was a principal of Spanish Steps.  We also don't

4   understand that to be the case.  Spanish Steps is the owner of

5   Point Investments, Limited or was a controlling shareholder of

6   a certain class of shares.  I just thought it would be

7   important to correct the record on those specific points.

8         In terms of, again, I -- I just -- and, Your Honor,

9   if -- if you're not comfortable providing guidance today on

10  these points, that's -- that's fine and maybe we should have a

11  further conversation and come back to Your Honor to see if we

12  can resolve this offline.

13       But again, I don't understand why Falcata would have

14  financial statements of like third parties that would be

15  relevant and produced to the IRS, given the facts that we

16  understand.  The facts that we understand is that Point

17  Investments was an investor in a fund, the fund presumably has

18  financial -- its financial statements and financial statements

19  as -- as admitted of potential investment targets or maybe

20  portfolio companies.

21       We think all of that is within the scope of Rule

22  2004 so we don't understand what other financial statements or

23  documents would even be responsive to the subpoena.  That's

24  why we asked for everything that would be responsive to the

25  subpoena.  To the extent there are particular categories that

1   won't be produced because they believe it's outside the scope

2   of Rule 2004 and not related to the Debtor, I think it's

3   incumbent upon the Falcata parties to explain the specific

4   categories, almost like a privilege log if you will, that --

5   that they are saying they will not produce because of course

6   we have no -- or -- or put in in for in camera review, but

7   specifically, like we -- we don't know what we don't know.

8            And so and -- and in the meantime, we don't

9   understand why documents responsive to that subpoena wouldn't

10  be relevant to Point Investments.  Thank you, Your Honor.

11           THE COURT:  Okay.  Mr. Sims?

12           MR. SIMS:  Just very briefly, Your Honor.  Thank

13  you.

14           THE COURT:  Yes, sir.

15           MR. SIMS:  Your Honor, I just want to take this time

16  to address a few points counsel made.  With respect to Point

17  and Spanish Steps and Mr. Brockman, the Government served

18  Point as an alter ego of Mr. Brockman, and that was the basis

19  of my statement that Mr. Brockman was the head of Spanish

20  Steps because Point was the -- the controlling entity within

21  Spanish Steps.  So I just wanted to clarify that.

22           The -- the other points that counsel made with

23  respect to the interrogatories, we -- we understand that, and

24  we just want the clarification that we can object and

25  interpose written objections to those interrogatories.  I --

1    that's what we understood Your Honor to say, we just want to

2    make sure that that is -- is clear.

3              THE COURT:  Yes --

4              MR. SIMS:  Okay.

5              THE COURT:  -- and that -- that is correct, Mr.

6    Sims.

7              MR. SIMS:  Okay.  Thank you.  And one moment.

8         (Pause)

9              MR. SIMS:  And, Your Honor, with respect to the

10   criminal investigation, we do know that there's been an

11   indictment.  Our understanding is that there is some sort of

12   criminal investigation continuing.  We do not have a lot of

13   information about that.  We do have obviously the subpoena

14   that was served on our client and -- and that's pretty much

15   the extent of our knowledge.

16             And, Your Honor, we pretty much reserve argument for

17   a discovery dispute that probably will arise in the future.

18   Whether we follow motion practice or seek the Court's

19   intervention, we'll reserve our arguments for that time, but

20   we do agree in totality with Your Honor's statement at the

21   beginning of the hearing that this really is distilled down to

22   a discovery dispute.

23             We will continue to work diligently with the foreign

24   representatives to try to resolve those matters.  To the

25   extent that we cannot, Your Honor will probably be hearing

1  from us and seeking Your Honor's intervention.  Thank you.

2              THE COURT:  Okay, thank you.  Look, I'll offer a

3  comment on the search terms.  You know, in -- in my experience

4  of I received a list of search terms and, you know, run the

5  terms and see what you get.  And if something or a particular

6  search term produced results that were just overwhelming, go

7  back to the other side and say look, this is what -- this is

8  how many we're getting back, here's how we suggest that we --

9  we tailor it.

10             Then I think -- you know, my practice wasn't

11 different than anybody else's, I think it's kind of the way

12 it's done.  I won't say that there's a breakdown in

13 communication along those lines, but I -- I sense that -- that

14 maybe there hasn't been quite the back and forth that would

15 help the parties to really understand each other on, you know,

16 what the scope of what the results might be and what a

17 reasonable way would be to narrow those down.

18             So I just encourage you to -- to continue to have

19 those conversations and see if you can come to agreement on

20 what the appropriate search terms should be.  You know, I -- I

21 am here if you need me, but I get the sense that there is --

22 there are some productive conversations that -- that can and

23 will happen to -- to try to get to agreement on what the

24 search terms should be.

25             I think we've buttoned up all the -- the other

1   issues, but if I'm missing anything, please let me know.

2        (Pause)

3            THE COURT:  Nothing?

4            MR. LAVINE:  No, I -- I think that's it, Your Honor,

5   but to be clear, so will that mean that the motion filed by

6   the Falcata parties will -- will be denied?

7            THE COURT:  The -- the motion is denied.

8            MR. LAVINE:  Okay.

9            THE COURT:  But you have my guidance on the

10  discovery issues and I'm here in -- in case you need anything

11  in the future.

12           Mr. Schwartz.

13           MR. SCHWARTZ:  Thank you, Your Honor.  For the

14  record again, Eric Schwartz of Morris Nichols Arsht & Tunnell.

15  So the motion that's before you today is denied.  With your

16  guidance, I guess we'd just like to meet and confer with the

17  other side about submitting a form of order so don't end up

18  back before you on another clarification.

19           THE COURT:  Yeah, that -- that was going to be my

20  request to the parties.  I appreciate you suggesting that and

21  I'd ask that you do have that meet and confer and submit an

22  order under certification of counsel.

23           MR. SCHWARTZ:  All right.  Thank you, Your Honor.

24           THE COURT:  Okay.  Thank you, Mr. Schwartz.

25           Do we have anything else for today?

1        MR. LAVINE:  No, Your Honor.  Thank you.

2        THE COURT:  Okay.

3        MR. SIMS:  Nothing from the Falcata parties.

4        THE COURT:  Well, thank you all very much.  This has

5   been very helpful and I wish you all a good day and safe

6   travels home.  We are adjourned.

7        (Proceedings concluded at 10:39 a.m.)

8                           * * *

9

10                  **C E R T I F I C A T I O N**

11

12        I, Diane Gallagher, court approved transcriber,

13   certify that the foregoing is a correct transcript from the

14   official electronic sound recording of the proceedings in the

15   above-entitled matter on May 25, 2023 from 9:59 a.m. to 10:39

16   a.m.

17

18     /s/Diane Gallagher              August 4, 2023

19   DIANE GALLAGHER                   DATE

20   DIANA DOMAN TRANSCRIBING, LLC

21

22

23

24

25