## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>POINT INVESTMENTS, LTD.<br>(IN LIQUIDATION),[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 22-10261 (TMH)<br><br>Hearing Date: September 8, 2023 at 10:00 a.m. (ET)<br><br>Objection Deadline: September 1, 2023 at 4:00 p.m. (ET) |

**MOTION OF FOREIGN REPRESENTATIVES
FOR ENTRY OF AN ORDER GRANTING DISCRETIONARY
RELIEF PURSUANT TO SECTION 1521(b) ENTRUSTING THE
FOREIGN REPRESENTATIVES WITH THE DISTRIBUTION OF U.S. FUNDS TO PAY
ADMINISTRATIVE FEES AND EXPENSES OF THE DEBTOR'S LIQUIDATION**

Andrew Childe and Richard Lewis of FFP Limited, and Mathew Clingerman of Kroll Bermuda Ltd. (the "Foreign Representatives"), in their capacity as the foreign representatives of Point Investments, Ltd. (the "Debtor"), in respect of the winding up proceeding pending before the Supreme Court of Bermuda (the "Bermuda Court"), Commercial Court, Case 2020: No. 300 (the "Bermuda Proceeding"), by and through the undersigned counsel, hereby file this motion (the "Motion") seeking discretionary relief pursuant to section 1521(b) of title 11 of the United States Code (the "Bankruptcy Code") entrusting the Foreign Representatives with the distribution of $25.4 million in funds held in the United States to pay administrative expenses of the Debtor's liquidation. In support of this Motion, the Foreign Representatives submit the *Declaration of Andrew Childe in Support of Foreign Representatives' Motion to Authorize Distribution of Funds to Pay Administrative Fees and Expenses of the Debtor's Liquidation* (the "Childe Declaration"), filed contemporaneously herewith, and respectfully state as follows:

---

[1] The Debtor is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is c/o Kroll Bermuda, The Vallis Building, 4th Floor, 58 Par-La-Ville Road, Hamilton, HM 11, Bermuda.

**PRELIMINARY STATEMENT**

1. The Foreign Representatives are court-appointed, independent fiduciaries charged by the Bermuda Court with liquidating the Debtor's assets for the benefit of the Debtor's stakeholders. Upon recognition of the Bermuda Proceeding as a foreign main proceeding, this Court granted the Foreign Representatives authority to administer and realize the Debtor's assets located in the United States pursuant to section 1521(a)(5) of the Bankruptcy Code. The Foreign Representatives have since worked extensively to carry out their mandate and maximize the value of the Debtor's assets—both in in the United States and abroad—for the benefit of the Debtor's stakeholders.

2. For example, as set forth in the *Motion of Foreign Representatives for Entry of an Order (I) Approving Key Terms of Arrangement, and (II) Granting Related Relief* (the "Vista Settlement Approval Motion"), filed contemporaneously herewith, the Foreign Representatives have, among other things, engaged in extensive negotiations with Vista Equity Partners Management, LLC ("Vista"). These negotiations culminated in a comprehensive settlement of disputes whereby over $100 million is expected to be released to the Foreign Representatives in the United States following Court approval.

3. While the Foreign Representatives have made significant progress in carrying out their duties as joint liquidators, their work is far from complete. The Foreign Representatives will soon be leading a global marketing process to sell the Debtor's limited partnership interests in the Vista Funds and the Debtor's direct minority stockholder's interest in Solera Global Corp. ("Solera"), a company that is majority-owned by entities affiliated with Vista.[2] At the same time,

---

[2] The term "Vista Funds" is defined, and such funds are identified, in the Vista Settlement Approval Motion.

the Foreign Representatives will continue their duties of investigating, administering, and realizing the Debtor's other assets in the United States and abroad.

4. To fund the sale process and future efforts required to carry forward their mandate as joint liquidators, the Foreign Representatives hereby seek discretionary relief pursuant to section 1521(b) of the Bankruptcy Code. Specifically, the Foreign Representatives seek an order entrusting them with the distribution to Bermuda of $25.4 million of Debtor funds in the United States (the "Proposed Administrative Funds"), including funds to be received as a result of the Vista Settlement, for the purpose of paying the actual and budgeted administrative expenses of the Debtor's liquidation. The relief requested is appropriate because the interests of creditors in the United States will be "sufficiently protected" as required under section 1521(b) and 1522(a) of the Bankruptcy Code.

5. Indeed, the best way to protect the interests of the Debtor's stakeholders is to ensure ready access to the Debtor's liquid assets to realize the value of the Debtor's investments and to ensure that the Foreign Representative are able to effectively carry out their duties as joint liquidators in accordance with Bermuda law. The Foreign Representatives will only use the Proposed Administrative Funds to pay administrative fees and expenses, and the distributed funds will not be used to make distributions to non-administrative creditors or the Debtor's shareholder.

6. For these reasons, and those below, the Foreign Representatives respectfully submit that the Motion should be approved.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2).

8. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. Pursuant to Local Rule 9013-1(f), the Foreign Representatives confirm their consent to the entry of a final order or judgment by the Court with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

10. The statutory predicate for the relief requested herein is section 1521(b) of the Bankruptcy Code.

## RELEVANT BACKGROUND

### A. General Background

11. The Debtor is a private investment fund incorporated in Bermuda. On September 16, 2020, a petition with the Bermuda Court was filed seeking a winding up of the Debtor. The Bermuda Court appointed the Foreign Representatives as joint provisional liquidators on October 29, 2021. *See Declaration of Adam M. Lavine Pursuant to 28 U.S.C. § 1746* [D.I. 5] (the "Lavine Declaration") Ex. 2 (the "Appointment Order"). On February 18, 2022, the Bermuda Court granted an amended petition and issued an order (the "Winding Up Order")[3] providing for the Debtor to be wound up under the provisions of the Companies Act 1981 (Act) (the "Bermuda Companies Act") and granted related relief.

12. On March 29, 2022, the Foreign Representatives, on behalf of the Debtor, filed a voluntary petition for relief under Chapter 15 of the Bankruptcy Code (the "Chapter 15 Case"). A detailed description of the facts and circumstances surrounding the Chapter 15 Case is set forth in the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* [D.I. 3] (the "Verified Petition"), the

---

[3] A true and correct copy of the Winding Up Order is attached to the Foreign Representatives' Chapter 15 Petition [D.I. 1] as Exhibit 1.

4

*Declaration of Lilla Zuill Pursuant to 28 U.S.C. § 1746* [D.I. 4] (the "Zuill Declaration"), and the Lavine Declaration. Further support for this Motion is set forth in the Childe Declaration filed contemporaneously herewith.

13. On April 22, 2022, the Court entered the *Order Granting Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15* [D.I. 34] (the "Recognition Order"). Among other things, the Recognition Order "entrusted [the Foreign Representatives] with the administration and realization of all the Debtor's assets located within the territorial jurisdiction of the United States, pursuant to section 1521(a)(5) of the Bankruptcy Code." Recognition Order ¶ 7.

14. On August 15, 2022, the Bermuda Court appointed the Foreign Representatives as joint permanent liquidators of the Debtor. *See Status Report Regarding Appointment of Foreign Representatives as Permanent Liquidators of the Debtor* [D.I. 41].

15. On May 19, 2023, the Foreign Representatives commenced the process of calling for proofs of debt by noticing creditors of the Foreign Representatives' intent to declare a first and final dividend and setting June 9, 2023, as the deadline to submit proofs of debt. *See Status Report* [D.I. 84] (the "May 2023 Status Report").

16. Further background information regarding the Debtor's affairs, the Bermuda Proceeding, and the basis for this Chapter 15 Case is set forth in the Verified Petition, the Zuill Declaration, and the Lavine Declaration.

**B.     The Foreign Representatives' Efforts to Administer and Realize the Debtor's Assets**

17. As detailed in the Vista Settlement Approval Motion and the Childe Declaration, the Foreign Representatives have engaged in months-long negotiations with Vista with respect to resolving a dispute over certain distributions being withheld by Vista and unpaid capital calls by

5

the Debtor's former management in connection with the Debtor's limited partnership investments in the Vista Funds. Childe Decl. ¶ 6. These negotiations have culminated in a settlement and compromise embodied in an agreement between the Foreign Representatives and Vista attached as <u>Exhibit B</u> to the Vista Settlement Approval Motion (the "<u>Vista Agreement</u>").[4] *Id*. That Vista Agreement provides for the payment of over $100 million in cash distributions to the Debtor, which amounts had been previously withheld by the Vista Funds. Vista Settlement Approval Mot. ¶ 2.

18. The Vista Agreement additionally lays the foundation for the ultimate monetization of the Debtor's interests in the Vista Funds, as well as the Debtor's minority interest in Solera. *Id*. at ¶ 3. Specifically, the Agreement provides that the parties will use commercially reasonable efforts to establish and facilitate the Debtor's sale of its limited partnership interests in the Vista Funds and its stockholder's interest in Solera in a coordinated and orderly fashion. *Id.*

19. Pursuant to the authority granted by this Court in the Recognition Order, the Foreign Representatives have sought to investigate, unwind, and monetize their other investments in the United States as well. For example, in late 2022, the Foreign Representatives successfully negotiated the repayment of a promissory note owed to the Debtor by a third-party. As the Court is aware, the Foreign Representatives are also conducting a U.S.-based investigation into the Debtor's investment in Falcata Tech Investment Fund I, L.P. The Foreign Representatives are additionally analyzing potential claims against targets in the United States.

20. Outside the United States, the Foreign Representatives are likewise analyzing potential claims against third parties. They are also continuing to administer the Bermuda claims

---

[4] In the event of any inconsistency between the descriptions in this Motion and the terms of the Vista Agreement, the terms of the Vista Agreement shall govern.

reconciliation and adjudication process that commenced in May 2023, and are also progressing the Debtor's separate ancillary proceeding commenced in Switzerland. *See Status Report* [D.I. 44].

### C. The Need to Use U.S. Funds to Pay Administrative Expenses of the Debtor

21. As detailed above, the Foreign Representatives have done significant work to administer and realize the value of the Debtor's assets for the benefit of its stakeholders. However, the Foreign Representatives have not repatriated any assets of the Debtor in the United States to Bermuda for distribution. While the Debtor has significant balance sheet assets, most are illiquid (such as the Debtor's interests in Solera and the Vista Funds). Childe Decl. ¶ 7. Absent authorization to distribute the Proposed Administrative Funds, the Foreign Representatives' continuing efforts to liquidate the Debtor's assets in the U.S. and abroad may be significantly hindered. *Id*.

### RELIEF REQUESTED

22. Pursuant to 11 U.S.C. §§ 1521(b), the Foreign Representatives request an order from the Court, substantially in the form attached hereto as **Exhibit A**, entrusting the Foreign Representatives with the distribution of the Proposed Administrative Funds, including funds expected to be received from the Vista Agreement, to pay administrative fees and expenses of the Debtor's liquidation, including, without limitation, the actual and budgeted fees and expenses of the Foreign Representatives and their professionals that are or will be incurred in connection with (i) the Bermuda Proceeding, (ii) other proceedings outside of Bermuda authorized under the Foreign Representatives' Appointment Order, and (iii) the sale process of the Debtor's interests in the Vista Funds and Solera.

### RELIEF REQUESTED SHOULD BE GRANTED

23. The Foreign Representatives have already been "entrusted with the administration and realization of all the Debtor's assets located within the territorial jurisdiction of the United

States, pursuant to section 1521(a)(5) of the Bankruptcy Code." Recognition Order ¶ 7. Although section 1521(a)(5) of the Bankruptcy Code authorizes the Foreign Representatives to *administer* and *realize* the Debtor's assets, some courts have held that this section does not authorize the Foreign Representatives to *distribute* the Debtor's assets. *See In re Agrokor d.d.*, 591 B.R. 163, 188 (Bankr. S.D.N.Y. 2018) ("Section 1521(a)(5) entrusts to the foreign representative the 'administration or realization' of the debtor's assets within the United States . . . [i]t is not to be confused with the optional relief provided by section 1521(b).").

24. Section 1521(b) of the Bankruptcy Code provides:

> (b) Upon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the **distribution** of all or part of the debtor's assets located in the United States to the foreign representative or another person, including an examiner, authorized by the court, provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected.

11 U.S.C. § 1521(b) (emphasis added). Section 1521(b) "allows the debtor's assets to exit the United States for *distribution*." *In re Agrokor d.d.*, 591 B.R. 163 at 188; *see also In re Brit. Am. Ins. Co. Ltd.*, 488 B.R. 205, 225 (Bankr. S.D. Fla. 2013) ("[W]here the debtor has assets in the United States . . . the foreign representative must seek an order under section 1521(a)(5) to obtain the right to administer and/or realize on such assets, and must seek an order under section 1521(b) to address the distribution of such assets.").

25. Relief under section 1521(b) may be granted provided that "the court is satisfied that the interests of creditors in the United States are sufficiently protected." 11 U.S.C. § 1521(b); *see also* 11 U.S.C. § 1522(a) (providing that relief under section 1521 may be granted "only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected"); *In re Atlas Shipping A/S*, 404 B.R. 726, 741 (Bankr. S.D.N.Y. 2009) (holding that

before a Court can order the turnover of funds to a foreign representative under § 1521(b), "the Court must conclude that domestic creditors are sufficiently protected."). Determining whether creditor interests are sufficiently protected "requires a balancing of the respective parties' interests." *In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (quoting *In re AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013)).

26. In making such determinations, courts have considered three principles: (i) the just treatment of all holders of claims against the bankruptcy estate; (ii) the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the foreign proceeding; and (iii) the distribution of proceeds of the foreign estate substantially in accordance with the order prescribed by U.S. law. *See In re Markus*, 610 B.R. 64, 76 (Bankr. S.D.N.Y. 2019)*, aff'd,* 620 B.R. 31 (S.D.N.Y. 2020) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009)).

27. Here, the interests of creditors will be sufficiently protected.

**A. Creditors will be treated justly because the Proposed Administrative Funds will only be used to pay Administrative Expenses Entitled to priority**

28. As a matter of Bermuda law (just like United States law), the administrative costs of managing and liquidating the Debtor's estate are entitled to priority over the claims of unsecured creditors and other stakeholders. Specifically, section 232 of the Bermuda Companies Act provides that "[a]ll costs, charges and expenses properly incurred in the winding up, including the remuneration of the liquidator, shall be payable out of the assets of the company *in priority to all other claims*." Bermuda Companies Act, 1981, §232 (emphasis added).[5]

---

[5] In addition to paying administrative costs within the Bermuda Proceeding itself, the Foreign Representatives intend to use the Proposed Administrative Funds to pay administrative fees and expenses of proceedings outside of Bermuda that fall within the scope of the Foreign Representatives' authority under their Appointment Order. *See* Appointment Order at 3(u) (authorizing Foreign Representatives "to commence all other proceedings outside Bermuda as may be necessary to have their appointment

29. The Foreign Representatives already have approval from the Bermuda Court to retain or employ professionals and render invoices for renumeration. *See* Winding Up Order ¶ 6(b), (c), (d). The Foreign Representatives have and will continue to separately apply to the Bermuda Court for approval and payment of their fees as joint liquidators (as distinct from the fees and expenses of their professionals, which do not require separate Bermuda court approval).[6] *See* Childe Decl. ¶ 8. Thus, distribution of the Proposed Administrative Funds to Bermuda to pay actual and budgeted administrative fees and expenses does not unjustly treat creditors, and is in accordance with both Bermuda and U.S. law.

### B. The Bermuda Proceeding does not unduly prejudice or inconvenience U.S. creditors

30. The Bermuda Proceeding does not unduly prejudice or inconvenience U.S. claimants in processing their claims in the Bermuda Proceeding. Courts have found that claimholders in the United States are not prejudiced or inconvenienced in processing claims in a foreign proceeding where, as here, "creditors are given adequate notice of the timing and procedures for filing claims, and such procedures do not create additional burdens for a foreign creditor seeking to file a claim." *In re Oi S.A.*, 587 B.R. 253, 268 (Bankr. S.D.N.Y. 2018) (finding that U.S. claimholders were protected against any prejudice or inconvenience in processing claims in Brazilian proceeding for purposes of granting foreign representatives additional assistance under section 1507).

---

recognised and to protect the assets of the Company") and Appointment Order at 3(v) (authorizing Foreign Representatives "to bring or defend any action or other legal proceedings in the name and on behalf of the Company.").

[6] Given this case arises under Chapter 15 of the Bankruptcy Code, the Foreign Representatives are not required to file retention or fee applications or otherwise comply with the employment and compensation requirements of estate professionals under 11 U.S.C. §§ 326-331. *See* 11 U.S.C. § 103(a) (providing that only chapter 1 "sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15").

10

31. The Foreign Representatives have notified potential creditors of the timing and procedures for submitting proofs of debt in accordance with the Bermuda Companies Act and Winding-up Rules, including via filings in this Chapter 15 Case. *See* May 2023 Status Report. Moreover, Bermuda law provides foreign creditors with "the same status, the same rights and protections, and [subjects them to] the same procedures, as local creditors with respect to the filing of claims." *In re Oi S.A.*, 587 B.R. 253 at 268. Indeed, U.S. creditors are subject to the same procedures as foreign creditors under the Bermuda Companies Act. *See Declaration of Jayson Wood in Support of Foreign Representatives' Reply in Further Support of Motion for Entry of an Order Enforcing the Automatic Stay and for Damages* [D.I. 78] ¶ 5. Accordingly, the discretionary relief requested herein does not unduly prejudice or inconvenience creditors.

    **C.**    **The Distribution of the Proposed Administrative Funds Is in Substantial Accordance with U.S. Law**

32. The distribution of the Proposed Administrative Funds is substantially in accordance with the priority scheme prescribed by U.S. bankruptcy law. To be sure, section 503(b) of the Bankruptcy Code permits the allowance and payment of administrative expenses, including the "actual, necessary costs and expenses of preserving the estate … including compensation and reimbursement awarded [to estate professionals]." 11 U.S.C. § 503(b)(1)(A)(ii). Accordingly, the use of the Proposed Administrative Funds to pay priority administrative costs, including the fees and expenses of the Foreign Representatives and their professionals, substantially accords with the priority scheme under the Bankruptcy Code.

33. Moreover, the Foreign Representatives submit that the amount of the Proposed Administrative Funds is consistent with the amount of debtor professional fees that are routinely approved by U.S. bankruptcy courts in cases like this involving significant asset sales. *See e.g. In re Rentpath Holdings, Inc.*, et al., No. 20-10313 (BLS) [D.I. 82] (Bankr. D. Del. June 15, 2021)

*and In re Rentpath Holdings, Inc.,* et al., No. 20-10312 (BLS) [D.I. 814] (Bankr. D. Del. Feb. 26, 2021) (approving $5.9 million in investment banker fees, $5.3 million in financial advisor fees, and $16 million in lead bankruptcy counsel fees on a final basis following $608 million sale); *In re McDermott Int'l, Inc.,* No. 20-30336 [D.Is. 1020, 1022, 1026] (Bankr. S.D. Tex. Jan. 21, 2020) (final orders approving $8.25 million in lead bankruptcy counsel fees, $8.6 million in financial advisor fees, and $27.5 million in investment banker fees for entire case following $2.72 billion sale); *In re Westinghouse Elec. Co. LLC,* No. 17-10751 (MEW) [D.I. 3918, 4113, 4262] (Bankr. S.D.N.Y. Mar. 29, 2017) (final orders approving $29.4 million in investment banker fees and $57 million in lead bankruptcy counsel fees on a final basis following $3.76 billion sale).[7]

### D. Creditors will be sufficiently protected by remaining U.S. funds and distribution of the Proposed Administrative Funds will benefit all parties

34. The interests of creditors also will be sufficiently protected because the Proposed Administrative Funds constitute only a small portion of the Debtor's assets in the United States, which will not be distributed absent further authorization from this Court. Indeed, the Verified Petition describes the Debtor's primary assets in the United States as comprising investments valued at over $513 million. Verified Petition ¶ 30, n. 10 & 11. Those valuations were based upon the Debtor's historical unaudited financial statements, and the value of such investments is believed to have appreciated considerably since the date of those financial statements.

35. Further, the amount of the Proposed Administrative Funds is based on the Foreign Representatives' current expectations regarding professional fees and expenses in connection with the Debtor's liquidation and the existing proceedings ancillary thereto, including the global sale

---

[7] The Foreign Representatives' estimate of professional fees for the sale process does not currently include any "success," "transaction" or similar fee that may be payable to an investment banker, typically from the proceeds of a sale. The Foreign Representatives reserve the right, if and as necessary, to seek further distributions of U.S. assets at a later date, to pay additional professional fees in connection with the Debtor's liquidation, including but not limited to any amounts to pay additional investment banker fees.

process of the Debtor's interests in the Vista Funds and Solera. Childe Decl. ¶ 9. All interested parties will stand to benefit from the forthcoming sale process of the Debtor's interests in the Vista Funds and Solera, and they will likewise benefit from the Foreign Representatives' future efforts to realize and administer other assets of the Debtor in the United States and abroad. *See In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 323 (Bankr. S.D.N.Y. 2019) (granting foreign representatives discretionary relief to administer, realize, and distribute approximately $240 million to investment accounts in the United States where such relief would "allow the Debtors to resolve their liquidity issues and remain in operation" and creditors were sufficiently protected because they "st[ood] to benefit from [the debtor's] increase in liquidity.").

36. For these reasons, the Foreign Representatives submit that the relief requested should be granted. Indeed, bankruptcy courts have entrusted foreign representatives with distribution of debtor property pursuant to section 1521(b) of the Bankruptcy Code during the pendency of chapter 15 cases under similar circumstances. *See e.g.*, *In re Performance Ins. Co. SPC,* No. 21-12609-AJC [D.I. 63] (Bankr. S. D. Fla. Nov. 14, 2022) (entrusting foreign representatives with the distribution of funds in the debtor's United States bank accounts for administration in foreign Cayman proceeding); *In re ENNIA Caribe Holding N.V.,* 596 B.R. 316, 318 (Bankr. S.D.N.Y. 2019) (entrusting foreign representative with approximately $240 million held in United States investment accounts for liquidity reasons); *In re Lee*, 472 B.R. 156, 180-184 (Bankr. D. Mass. 2012) (entrusting foreign representatives with administration, realization, and distribution of equity interests in United States companies pursuant to 1521(b)); *In re Atlas Shipping A/S*, 404 B.R. 726, 730 (Bankr. S.D.N.Y. 2009).

**CONCLUSION**

For these reasons, the Foreign Representatives respectfully request that the Court grant the Motion.

Dated: August 18, 2023  
       Wilmington, Delaware

Respectfully submitted,

/s/ *Stephen J. Astringer*
**KOBRE & KIM LLP**
Jacob R. Kirkham (No. 5768)
Stephen J. Astringer (No. 6375)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6451
Facsimile: (302) 518-6461
jacob.kirkham@kobrekim.com
stephen.astringer@kobrekim.com

-and-

Adriana Riviere-Badell (admitted *pro hac vice*)
Evelyn Baltodano Sheehan (admitted *pro hac vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone: (305) 967-6100
Facsimile: (305) 967-6120
adriana.riviere-badell@kobrekim.com
evelyn.sheehan@kobrekim.com

-and-

Adam M. Lavine (admitted *pro hac vice*)
John G. Conte (admitted *pro hac vice*)
800 Third Avenue
New York, New York 10022
Telephone: (212) 380-2580
Facsimile: (212) 488-1220
adam.lavine@kobrekim.com
john.conte@kobrekim.com

*Counsel to the Foreign Representatives*